**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| William Kent Dean, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-3112-SEM-TSH |
| | ) | |
| Wexford Health Sources, Inc., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ANSWER AND AFFIRMATIVE DEFENSES TO THIRD AMENDED COMPLAINT**</u>

Defendant, Lisa Mincy, by and through her attorney, Kwame Raoul, Attorney General for the State of Illinois, hereby provides her Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint [Doc. 72], stating as follows:

## INTRODUCTION

1.      On December 19, 2015, Mr. Dean began urinating blood.  Soon after, he began passing large blood clots when he urinated, causing him significant pain.  Despite the alarming nature of these symptoms, his condition was not diagnosed until April 14, 2016, when Mr. Dean learned he had kidney cancer, and that a tumor had started growing and blood clots had formed in his inferior vena cava, the large blood vessel carrying blood from his kidneys to his heart.

**RESPONSE:  Defendant admits that Plaintiff's medical records indicate that he was diagnosed with kidney cancer on April 14, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

2.      Now, Mr. Dean suffers from Stage IV metastatic kidney cancer.  Mr. Dean's cancer could have, and should have, been detected long before it advanced to this stage.  The very first

1

time Mr. Dean complained of these symptoms during a visit to the Health Care Unit ("HCU") at Taylorville Correctional Center ("Taylorville") in December 2015, Defendant Dr. Abdur Nawoor recognized immediately that kidney cancer was a possible cause of Mr. Dean's symptoms. Yet Dr. Nawoor and the other Defendants repeatedly ignored Mr. Dean's complaints of large and painful blood clots in his urine; failed to conduct adequate diagnostic testing; and failed to provide Mr. Dean with an outside referral despite signs that the HCU did not have the diagnostic tools needed to diagnose Mr. Dean's condition. Mr. Dean did not receive adequate diagnostic testing for nearly three months and was not diagnosed for nearly four months after his initial visit to the HCU. And although an outside specialist eventually determined that surgery was necessary immediately, Defendants failed to schedule surgery in a timely fashion, and Mr. Dean did not receive the surgery until July 2016—more than three months after diagnosis and seven months after the onset of his symptoms. By that time, the cancer had also spread to Mr. Dean's liver, his lymph nodes, and possibly his lungs.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he currently has Stage 4 metastatic kidney cancer. Defendant denies that she ignored Plaintiff's complaints regarding pain or blood clots and denies that she failed to schedule surgery in a timely fashion. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

3. Defendants should have ordered or conducted adequate diagnostic testing, authorized an outside referral, and authorized surgery for Mr. Dean much earlier than they did. Had they done so, Mr. Dean's cancer would not have spread to the extent that it did, and his prognosis today would be more favorable. But because of Defendants' failure to refer Mr. Dean promptly for adequate diagnostic testing or to arrange promptly for his surgery, Mr. Dean suffered months of prolonged and unnecessary pain and suffering while the cancer spread from his kidney to his inferior vena cava, lymph nodes, liver, and lungs.

**RESPONSE: Defendant denies that she was responsible for authorization or referral to a specialist and/or for surgery. Defendant denies that she caused Plaintiff to suffer and denies that her actions resulted in the spreading of cancer. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

4. Even after surgery, despite their knowledge of Mr. Dean's grave diagnosis, Defendants delayed approving his cancer medications. Defendants delayed approving Mr. Dean's first round of post-surgery drug treatment for a month, and then further delayed approving his second round of drug treatment for weeks. Defendants then attempted to convince Mr. Dean to stop receiving treatment altogether. Because of Defendants' delays, Mr. Dean spent months receiving ineffective treatment—or no treatment at all—for his cancer.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant denies that she ever attempted to convince Plaintiff to stop receiving treatment, and denies that she delayed or otherwise caused Plaintiff to receive ineffective treatment – or no treatment – for his cancer. Defendant**

lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

5. Defendants' delays in authorizing Mr. Dean's outside referral, diagnostic testing, surgery, and drug treatments were due to their deliberate indifference to Mr. Dean's serious medical condition and constituted a significant departure from the applicable standards of medical care. Defendants' deliberate indifference violated Mr. Dean's Eighth Amendment right to be free from cruel and unusual punishment, and Mr. Dean seeks redress of this right under 42 U.S.C. § 1983. Because of Defendants' actions, as well as Defendant Wexford's policies and procedures related to these actions, Mr. Dean not only experienced prolonged and unnecessary pain and suffering, but also a more serious diagnosis and a diminished life expectancy.

**RESPONSE: Defendant denies that she delayed any authorizations and denies that she had any responsibility for such authorizations. Defendant denies acting with deliberate indifference and denies a violation of any of Plaintiff's constitutional rights whatsoever. Defendant denies that her actions caused Plaintiff to experience prolonged and unnecessary pain and suffering and denies that her actions caused a more serious diagnosis and diminished life expectancy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

**PARTIES**

6. Plaintiff William Kent Dean is a citizen of the United States and a resident of Taylorville, Illinois. Mr. Dean is currently in the custody of the Illinois Department of Corrections ("IDOC") as an inmate at Taylorville. Mr. Dean has been in IDOC custody since 2010. Mr. Dean has been an inmate at Taylorville since 2014.

**RESPONSE: Defendant admits the allegations contained in this paragraph.**

7. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation formed under the laws of the state of Florida with its principal place of business in Pittsburgh, Pennsylvania. At all relevant times, Wexford had a contractual relationship with IDOC. Pursuant to that contractual relationship, IDOC, an agency of the state of Illinois, delegated responsibility for providing reasonable medical care to inmates in IDOC custody to Wexford. As an IDOC agent exercising delegated governmental functions, Wexford is a state actor under 42 U.S.C. § 1983.

**RESPONSE: Defendant admits that at the time that Plaintiff received medical treatment at Taylorville Correctional Center, Wexford had a contract with the Illinois Department of Corrections of the State of Illinois to provide healthcare services at Illinois prisons. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

8. Defendant Dr. Abdur Nawoor is a physician employed by Wexford. At all times relevant to this action, Dr. Nawoor served as a general physician at Taylorville. Because of Mr. Dean's status as an inmate at Taylorville, Dr. Nawoor was responsible for Mr. Dean's medical care.

**RESPONSE: Defendant admits that Dr. Nawoor is a physician employed by Wexford as the Medical Director at Taylorville Correctional Center. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

9. Defendant Dr. Rebecca Einwohner is a nephrologist employed by Wexford. At all times relevant to this action, Dr. Einwohner served as a physician for Wexford. Although Dr. Einwohner does not work on-site at Taylorville, she sees and treats inmates from Taylorville at a renal teleclinic. Because of Mr. Dean's status as an inmate at Taylorville, Dr. Einwohner was responsible for Mr. Dean's medical care, and specifically for any kidney problems he experienced.

**RESPONSE: Defendant admits that Dr. Einwohner is a nephrologist employed by Wexford and treats inmates at Taylorville Correctional Center by renal teleclinic. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

10. Defendant Nurse Kathy Galvin is a nurse employed by Wexford. At all times relevant to this action, Nurse Galvin served as Director of Nursing at Taylorville. Because of Mr. Dean's status as an inmate at Taylorville, Nurse Galvin was responsible for Mr. Dean's medical care.

**RESPONSE: Defendant admits that Nurse Kathy Galvin was a nurse employed by Wexford as the Director of Nursing at Taylorville Correctional Center. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

11. Defendant Lisa Mincy was the Healthcare Unit Administrator at Taylorville from December 16, 2015, to January 16, 2017, and at all times relevant to this action. Because of Mr. Dean's status as an inmate at Taylorville, Mincy was responsible for Mr. Dean's medical care while she was employed as the Healthcare Unit Administrator at Taylorville.

**RESPONSE: Defendant admits that she served as Health Care Unit Administrator ("HCUA") at Taylorville Correctional Center from December 16, 2015, to January 16, 2017. Defendant denies the remaining allegations in this paragraph.**

## JURISDICTION AND VENUE

12. Mr. Dean brings his federal civil rights claims pursuant to 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

**RESPONSE: Defendant admits that subject matter jurisdiction exists.**

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Dean's claims occurred in the Central District of Illinois.

**RESPONSE: Defendant admits that venue is proper in the Central District of Illinois.**

## FACTUAL ALLEGATIONS

14. Mr. Dean suffers from kidney cancer that has spread to his inferior vena cava, his lymph nodes, his liver, and possibly his lungs. Mr. Dean's cancer could have been treated more effectively if Defendants had responded to Mr. Dean's initial complaints with attention and urgency. Instead, Defendants ignored his complaints and delayed seeking proper diagnostic tests or treatment. Mr. Dean's condition was allowed to worsen over a period of several months while Defendants failed to provide him with any treatment at all. Mr. Dean now faces a worse prognosis and is unlikely to make a full recovery because Defendants, through their inadequate medical care and deliberate indifference to Mr. Dean's serious medical need, failed to take reasonable steps—including ordering sufficient diagnostic testing, referring Mr. Dean to an outside specialist, promptly scheduling his surgery, and quickly approving his medications—to diagnose and treat Mr. Dean's cancer in an effective and expeditious manner. Wexford's policies and procedures caused this failure.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he suffers from kidney cancer that has spread to his inferior vena cava, his lymph nodes, and his liver. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that cancer has spread to Plaintiff's lungs. Defendant denies the remaining allegations contained in this paragraph.**

### Wexford's Policies and Procedures

15. Under its contract with the State of Illinois, Wexford is obligated to ensure that all medical services are provided to IDOC inmates in accordance with medically accepted American Correctional Association standards of care. On information and belief, Wexford has adopted policies or procedures that, rather than ensure quality and timely care, instead result in reduced and delayed access to care and/or inadequate care. These policies and procedures cause substantial delays in approving, scheduling, and providing outside treatment; a lack of communication among care providers; and the diffusion of responsibility across care providers and administrators such that no one acts or feels ultimately responsible or accountable for any patient's health. As a result,

Wexford physicians, nurses, and administrators are not prepared or able to care properly for inmates who have critical and urgent health care needs. Mr. Dean is one such inmate.

**RESPONSE: Defendant admits Wexford Health Sources, Inc., has a contract with the State of Illinois to provide certain medical services to offenders in the custody of the Illinois Department of Corrections. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

16.     Wexford's policies and procedures additionally interfere with its physicians' independent and clinical judgment in diagnosing and treating their patients. On information and belief, Wexford physicians are encouraged to spend minimal amounts of time with patients, lack the decisionmaking authority to order medically indicated tests and procedures, and/or have little incentive or ability to ensure their patients' treatment needs are met once their cases have been referred to Wexford's Utilization Management team—especially with respect to patients' needs for those tests and procedures labeled "non-formulary" by Wexford. Utilization Management and other care team members are able to override the recommendations of the treating physician, often with no explanation or even communication of their decision. Such policies and procedures result in the neglect of the actual medical needs of countless inmates, including Mr. Dean.

**RESPONSE:  Defendant denies the allegations in this paragraph.**

17.     Wexford has maintained these policies despite unequivocal findings that they fall short of providing inmates with the care they need. In 2014, a team of experts appointed by the U.S. District Court for the Northern District of Illinois investigated a representative sample of IDOC facilities to determine whether the health care services in those facilities met the minimum constitutional standards of adequacy. The experts found that the process in place for identifying a need for, approving, and providing specialty care suffered "breakdowns in almost every area," including substantial delays in care and the absence of any follow up with the patients. Many instances of patient morbidity and mortality were directly linked to these breakdowns. Wexford was aware of the results of this investigation yet made no meaningful changes to its policies and procedures. In fact, a report released by a second court-appointed team of experts in October 2018 found no improvement from the first report in the provision of specialty consultations and services

and declared Wexford's process for approving specialty care to a "patient safety hazard" that should be abandoned.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Wexford's Financial Incentives to Minimize Outside Referrals**

18.    On information and belief, Wexford's contract with IDOC contains financial incentives that encourage Wexford to reduce outpatient referrals and hospitalizations of inmates in outside facilities. Wexford's procedure for approving referrals is extensive and requires several stages of approval before an inmate can be approved for outside care. Wexford's treatment policies similarly encourage conservative care to cut costs, which causes their employees to withhold necessary medical care from inmates with serious medical conditions requiring diagnostic testing, outside care, or costly medications. Mr. Dean is one such inmate.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

19.    On information and belief, the delays in conducting sufficient diagnostic testing, referring Mr. Dean to an outside specialist, scheduling his surgery, and approving his medications were motivated in part by the financial incentives of Wexford's contract with IDOC to minimize outside referrals and by Wexford's policies and procedures requiring several stages of approval before an inmate can be approved for diagnostic testing, outside care, or costly medications.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Defendants Fail to Properly Diagnose Mr. Dean's Condition**

20.    Mr. Dean first experienced symptoms of kidney cancer on December 19, 2015, when he began urinating blood. Soon after, he began passing large blood clots when he urinated. The blood clots were extremely painful to pass.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

21.     On December 23, 2015, Mr. Dean visited the HCU at Taylorville to seek treatment for these symptoms. A nurse noted Mr. Dean was experiencing hematuria—the presence of blood in the urine—and referred him to Defendant Dr. Nawoor. While meeting with Mr. Dean, Dr. Nawoor told Mr. Dean that the cause of his symptoms was either kidney stones or cancer.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that on December 23, 2015, Plaintiff visited the HCU at Taylorville, that a nurse noted that Plaintiff was experiencing hematuria, and that Plaintiff met with Dr. Nawoor. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

22.     Dr. Nawoor ordered blood and urine tests for Mr. Dean. The results showed that his hemoglobin levels had dropped significantly since October 2015 but otherwise appeared normal. Mr. Dean was advised to drink water and return to the HCU if his symptoms worsened.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that Dr. Nawoor ordered blood tests for Plaintiff, which showed that his hemoglobin levels were below the reference range. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

23.     Dr. Nawoor diagnosed Mr. Dean with kidney stones. No treatment plan was made, and no medications were prescribed. Nothing was done to eliminate kidney cancer as a possible diagnosis.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

**Defendants Delay Referring Mr. Dean to an Outside Specialist**

24.    In the period from December 24, 2015, until March 2016, Mr. Dean repeatedly complained to Wexford treatment providers, including Defendants Dr. Nawoor, Dr. Einwohner, Nurse Galvin, and Mincy about the blood clots in his urine, and repeatedly requested a referral to an outside specialist. Mr. Dean visited the HCU at least six times, either for sick call or because he was sent to the HCU by correctional officers who were alarmed after seeing his blood clots in the toilet. Mr. Dean additionally had two renal teleclinic appointments with Dr. Einwohner. Mr. Dean received at least four blood tests and four urine tests during this time. Despite clear evidence that Mr. Dean's symptoms were not improving, and that the blood and urine tests were not able to diagnose Mr. Dean's condition, Defendants failed to act to diagnose or treat Mr. Dean's symptoms properly. What follows is a summary of these events.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he was in the HCU multiple times from December 24, 2015, until March 2016, and that Plaintiff was seen by Dr. Nawoor and Dr. Einwohner during that period. Defendant admits that Plaintiff received numerous tests during this time. Defendant admits that she first met with Plaintiff once in early 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

25.    On January 7, 2016, Mr. Dean saw Dr. Einwohner at the renal teleclinic and described his symptoms to her. Dr. Einwohner told him he probably had kidney stones, but that she was not sure. Dr. Einwohner requested a collegial review of Mr. Dean's case.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he saw Dr. Einwohner on January 7, 2016, for a renal telemed appointment. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

26.     The collegial review took place on January 13, 2016, and the participating physicians concluded that Mr. Dean should receive an on-site renal ultrasound.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that on January 13, 2016, Dr. Ritz recommended a renal ultrasound.**

27.     Mr. Dean received a renal ultrasound on February 2, 2016. The results showed "no mass lesions or hydronephrosis" and "normal flow [of blood] on Doppler[.]" The lack of hydronephrosis—the swelling of the kidneys caused by obstructed urine flow—is not consistent with a diagnosis of kidney stones.

**RESPONSE: Defendant admits the allegations contained in this paragraph.**

28.     On February 8, 2016, Mr. Dean saw Dr. Einwohner at the renal teleclinic. She again referred his case for collegial review.

**RESPONSE: Defendant admits the allegations contained in this paragraph.**

29.     Mr. Dean visited the HCU for sick call on February 10, 2016. Dr. Nawoor ordered a urine test and told Mr. Dean that he needed a CT scan. On information and belief, Dr. Nawoor requested a CT scan for Mr. Dean, but Wexford never responded to this request.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he saw Dr. Nawoor on February 10, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

30.     On February 10, 2016, Mr. Dean's case was discussed at a collegial review. The physicians decided to refer Mr. Dean to an outside urologist for a cystoscopy. The referral was scheduled for the second week of March 2016.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

31.     Mr. Dean visited the HCU for sick call on February 26, 2016, after experiencing heavier blood clots than usual in his urine. Dr. Nawoor ordered a blood test and recommended rescheduling Mr. Dean's urology appointment for an earlier date. On information and belief, no actions were taken to reschedule Mr. Dean's urology appointment.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he was seen by Dr. Nawoor on February 26, 2017. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, but denies that she was responsible for scheduling or rescheduling Plaintiff's appointments.**

#### Mr. Dean Receives a Referral and is Diagnosed

32.     On March 10, 2016, Mr. Dean was sent to see Dr. William Severino, a urologist, at the Springfield Clinic in Springfield, Illinois. Dr. Severino ordered a CT scan, as well as other diagnostic tests, for Mr. Dean, and scheduled them for the next month.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he was seen by Dr. Severino, an urologist, at Springfield Clinic on March 10, 2016, and that Plaintiff received a CT scan the following month. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

33.     On March 30, 2016, Mr. Dean saw Dr. Einwohner at the renal teleclinic. Dr. Einwohner was primarily concerned about iron deficiency and did not address the blood clots Mr. Dean continued to pass. Although Mr. Dean was still experiencing symptoms and had not yet

received a diagnosis, Dr. Einwohner told him that she was going to consider this incident over, and that he should go to sick call if he had any problems.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he was seen by Dr. Einwohner for a renal telemed appointment on March 30, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

34.    On April 1, 2016, Mr. Dean visited the HCU for sick call. Dr. Nawoor stated he hoped to move up Mr. Dean's upcoming appointment with Dr. Severino. On information and belief, nothing was done to schedule an earlier appointment.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he was seen by Dr. Nawoor on April 1, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, but denies that she was responsible for scheduling or rescheduling Plaintiff's appointments.**

35.    Mr. Dean went to the Springfield Clinic for a CT scan on April 12, 2016. He returned to the Springfield Clinic on April 14, 2016, to receive his results. On April 14, Dr. Severino informed him that the CT scan showed he had kidney cancer and that a tumor had grown into Mr. Dean's inferior vena cava. At this point, Dr. Severino did not detect any metastases but noted it was difficult to discern how far the tumor extended into the inferior vena cava. Dr. Severino told Mr. Dean that he needed surgery as soon as possible, emphasizing that it needed to be within a few weeks. Dr. Severino stated that Mr. Dean had a 35 percent chance of living five years if he had the surgery soon and the cancer stayed confined, but that if he did not have the surgery at all, he would not live as long as a year.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he received a CT scan on April 12, 2016, and that he met with Dr. Severino on April 14, 2016,**

to review the CT scan results. Defendant admits that the CT scan showed a right kidney mass with vena cava thrombosis. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

36.     Dr. Severino's office contacted the Taylorville HCU and informed them that "plans were being set into motion" for Mr. Dean's surgery, and that a heart surgeon would need to assist. Dr. Nawoor was informed of Dr. Severino's diagnosis and recommendations.

**RESPONSE:  Defendant admits the allegations contained in this paragraph.**

37.     Taylorville Correctional Officers Ross and Stirett accompanied Mr. Dean to his April 14, 2016 appointment with Dr. Severino and were present when Dr. Severino told Mr. Dean that he needed surgery immediately.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that Correctional Officer Stirett escorted Plaintiff to his April 14, 2016, appointment with Dr. Severino. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

### Defendants Fail to Schedule Mr. Dean's Surgery

38.     Mr. Dean did not undergo surgery until July 19, 2016—more than three months after Dr. Severino told him he needed surgery immediately.  Defendants ignored Dr. Severino's instructions, failing to schedule a date for Mr. Dean's surgery until after Mr. Dean formally complained.  What follows is a summary of the events taking place after Mr. Dean was told he needed surgery, but before he had the procedure.

**RESPONSE: Defendant admits that Plaintiff underwent surgery on July 19, 2016. Defendant denies that remaining allegations contained in this paragraph.**

39.    On April 18, 2016, Mr. Dean visited the HCU for sick call.  Mr. Dean asked about his surgery, but Dr. Nawoor did not have any updates on when it would be scheduled.

**RESPONSE:  Defendant admits that Plaintiff's medical records indicate that he saw Dr. Nawoor on April 18, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

40.    Mr. Dean's medical records reflect that the surgery was approved at a collegial review on April 20, 2016.  Nevertheless, Defendants failed to schedule the procedure.  On April 25, 2016, Mr. Dean's wife contacted the HCU to inquire about the delay in scheduling Mr. Dean's surgery.  Nurse Galvin confirmed the operation had been approved, but not scheduled, and did not provide Mr. Dean's wife with a reason for the delay.

**RESPONSE:  Defendant denies that she was responsible for scheduling Plaintiff's procedure. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

41.    On May 4, 2016, Mr. Dean's wife contacted the HCU again to inquire about the delay in scheduling Mr. Dean's surgery.  Nurse Galvin told her the operation had been scheduled.  On information and belief, the operation had not yet been scheduled at that time.

**RESPONSE:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

42.    On May 9, 2016, Mr. Dean visited the HCU for sick call.  Dr. Nawoor noted that Mr. Dean would need another CT scan of his chest prior to his surgery, and that he would need to discuss this with Dr. Severino.

**RESPONSE:  Defendant admits that Plaintiff's medical records indicate that he saw Dr. Nawoor on May 9, 2016, and that Dr. Nawoor would discuss the surgery with Dr.**

Severino.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

43.     On May 16, 2016, Mr. Dean filed an Emergency Offender's Grievance with the IDOC. In the grievance, Mr. Dean described the "great pain" and "physical and mental suffering" he had endured for the past five months, and requested that his surgery be scheduled immediately. Mr. Dean received a response to his emergency grievance on May 18, 2016, in which he was told that according to Defendant Nurse Galvin, a surgeon had been contacted to schedule a date and they were currently awaiting a response.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

44.     On May 19, 2016, and May 24, 2016, Mr. Dean's wife contacted the Taylorville Warden to ask about Mr. Dean's surgery.  On May 25, 2016, she contacted Lisa Mincy at the HCU.  Mincy told her Mr. Dean's surgery had not yet been scheduled.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

45.     On May 26, 2016, Mr. Dean saw Dr. Einwohner at the renal teleclinic.  Dr. Einwohner, despite being Mr. Dean's kidney doctor, did not know about his recent kidney cancer diagnosis.  He asked her about his surgery, but she told him that she was unable to assist in scheduling it.  Dr. Einwohner focused on Mr. Dean's iron deficiency and referred Mr. Dean back to Dr. Nawoor.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he saw Dr. Einwohner on May 25, 2016, for a renal telemed appointment, and that she referred**

Plaintiff to Dr. Nawoor for low iron. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

46.     By June 2016, Mr. Dean's surgery still had not been scheduled, despite the fact that the procedure had been approved more than a month before. Around this time, Mr. Dean spoke with Correctional Officer Stirett. Correctional Officer Stirett expressed surprise that Mr. Dean had not yet had the surgery based on what he had heard Dr. Severino tell Mr. Dean on April 14, 2016, about the importance of the surgery.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, but denies that she was responsible for scheduling or rescheduling Plaintiff's appointments.**

47.     Due to the amount of time that had elapsed since Mr. Dean's diagnosis, the surgeons were unable to proceed with Mr. Dean's surgery relying on the results of the April 12, 2016 CT scan. The surgeons ordered a new CT scan so that they would be able to operate with a more current and accurate understanding of Mr. Dean's condition. Mr. Dean received this CT scan on June 8, 2016, and the results showed "widespread metastatic disease to liver increased in severity," and that the tumor in the inferior vena cava extended much further than they originally thought. Dr. Severino told Mr. Dean that, based on the results of this CT scan, his chances of dying during surgery were high, but that without the surgery, he would die within the next five years. The cardiothoracic surgeon who would be assisting Dr. Severino similarly told Mr. Dean that it was going to be a dangerous surgery but that he hoped for the best.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he received a CT scan on June 8, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

48. The CT scan results also showed nodules on Mr. Dean's lungs, for which cancer could not be ruled out. On information and belief, nothing has been done to date to diagnose or treat these lung nodules.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

49. On June 11, 2016, Mr. Dean's surgery was again approved at a collegial review. Mr. Dean's medical records do not reflect on which date Defendants acted to schedule his surgery, but the surgery still would not take place for more than a month after this second approval at collegial review was granted.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

50. On July 19, 2016, Mr. Dean had surgery for his kidney cancer. The surgery lasted approximately 10 hours. Dr. Severino described the surgery as an "extremely difficult" case. Dr. Severino removed Mr. Dean's kidney, and the cardiothoracic surgeon removed the tumor and the clot caused by the cancer that was in the inferior vena cava. Due to the growth of the tumor in Mr. Dean's inferior vena cava, Mr. Dean required a cardiopulmonary bypass and was put in deep hypothermic arrest. Dr. Severino noted that Mr. Dean did "extremely well" but that "unfortunately the tumor was socked in." No biopsies were taken of Mr. Dean's liver, lymph nodes, or lung nodules during surgery or otherwise during Mr. Dean's hospitalization for the July 19 surgery. Mr. Dean was discharged from the hospital on July 28, 2016.

**RESPONSE: Defendant admits that plaintiff had surgery on July 19, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

51.     On August 11, 2016, Mr. Dean saw Dr. Severino for a follow-up appointment. Dr. Severino told him he was at extremely high risk for recurrence if he did not already have metastatic disease and referred him to an oncologist. Dr. Nawoor told Mr. Dean that his oncology referral had been approved on August 17, 2016.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he saw Dr. Severino on August 11, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

52.     On August 26, 2016, Mr. Dean went to a cancer specialist, Dr. Perry Guaglianone, at the Cancer Care Center of Decatur. Dr. Guaglianone ordered a CT scan and noted that a liver biopsy might be needed. At this point, Dr. Guaglianone expected that Mr. Dean's cancer was at least at Stage III.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he saw Dr. Guaglianone on August 26, 2016. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

53.     On September 9, 2016, Mr. Dean went to Decatur Memorial Hospital for the CT scan, which showed possible metastases in his liver and lungs. By the time he returned to Taylorville, the hospital had called Dr. Nawoor to inform him that Mr. Dean had bilateral pulmonary embolism clots in his inferior vena cava and needed emergency care. Mr. Dean was hospitalized for ten days. Dr. Guaglianone delayed the liver biopsy until Mr. Dean's condition improved.

**RESPONSE: Defendant admits that Plaintiff's medical records indicate that he went to Decatur Memorial Hospital for CT scans on September 9, 2016, and that he was suffering**

from pulmonary embolisms and was hospitalized. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

54. Mr. Dean finally received a biopsy of his liver on October 3, 2016. The results confirmed that Mr. Dean's cancer had metastasized to his liver, and that his cancer had advanced to Stage IV.

RESPONSE: Defendant admits that Plaintiff's medical records indicate that he received a liver biopsy on October 3, 2016, and that he currently has Stage IV cancer. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

### Defendants Fail to Authorize Necessary Drug Treatments

55. Dr. Guaglianone emphasized the necessity of effective treatment to Mr. Dean's survival: With effective treatment, Mr. Dean could live many years, but with no treatment, he would die within a year. Mr. Dean has undergone three rounds of drug treatment for his cancer. In spite of Dr. Guaglianone's admonitions, two of the three medications were subject to lengthy delays by Wexford in approving the new medication. The third medication was approved promptly; the instant lawsuit had been filed just three weeks prior. What follows is a summary of these delays.

RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

56.     On October 19, 2016, Dr. Guaglianone prescribed Votrient, a tyrosine kinase inhibitor marketed to treat metastatic kidney cancer, for Mr. Dean. Defendant Wexford did not approve the medication until November 14, 2016, and Mr. Dean did not receive his first dosage until November 18, 2016. Mr. Dean received no treatment at all during the period from October 19 to November 18 in spite of Dr. Guaglianone's admonition that with no treatment, Mr. Dean would die within a year.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

57.     On February 10, 2017, Mr. Dean was sent for another CT scan. The results of this CT scan were returned on March 2, 2017, and showed that Mr. Dean's cancer had gotten worse. Dr. Guaglianone decided to switch Mr. Dean's treatment, and prescribed Opdivo, a human monoclonal antibody marketed to treat kidney cancer and non-small cell metastatic lung cancer. Wexford again delayed approving the drug for Mr. Dean's treatment.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

58.     The delay in receiving the CT results, combined with Wexford's delay in approving the medications, caused Mr. Dean to spend almost six weeks receiving ineffective treatment or no treatment at all, despite Dr. Guaglianone's admonition about the importance of effective treatment to Mr. Dean's life expectancy.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

59. Around the time that Mr. Dean was prescribed Opdivo, both Dr. Nawoor and Nurse Galvin attempted to convince Mr. Dean to sign a release form that would allow Wexford to stop his cancer treatments. Dr. Nawoor said they would instead give him medication for his pain. Mr. Dean refused to stop his cancer treatments. They also attempted to convince him to sign a Do Not Resuscitate ("DNR") form. Mr. Dean refused to sign the DNR.

**RESPONSE: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.**

60. On March 16, 2017, Mr. Dean filed an emergency grievance with IDOC, requesting prompt approval of his treatment with Opdivo. He did not receive a response to this grievance until two weeks later, by which point Mr. Dean had begun receiving Opdivo, and the grievance was rendered moot.

**RESPONSE: Defendant admits that Plaintiff filed an emergency grievance on March 16, 2017, requesting "[i]mmediate approval and treatment." Defendant admits that the grievance was rendered moot because Plaintiff was informed on March 20, 2017, that his treatment had been approved. Defendant denies that Plaintiff did not receive a response to the grievance until two weeks later, and states that the final response from the Chief Administrative Officer was issued on March 27, 2017.**

61. On April 21, 2017, Mr. Dean's pro se complaint was docketed by this Court, instituting the present lawsuit.

**RESPONSE: Defendant admits the allegations contained in this paragraph.**

62. On May 4, 2017, Mr. Dean received another CT scan. The results were returned by May 12, 2017, and showed that the Opdivo had successfully treated the cancer in Mr. Dean's lymph nodes but that it had been ineffective against the cancer in Mr. Dean's liver. Dr. Guaglianone then prescribed Torisel, a kinase inhibitor marketed to treat advanced kidney cancer, which was approved within an hour.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

**Defendants Galvin and Mincy Affirmatively Delay Mr. Dean's Diagnosis and Treatment**

63. On information and belief, nurses and administrators at the Taylorville HCU, and especially Nurse Galvin, frequently made decisions that conflicted with and overruled those of Dr. Nawoor because Dr. Nawoor had begun working at Taylorville only recently, relatively speaking, and the nurses were more experienced with Taylorville's practices. At times, Nurse Galvin and Mincy overruled Dr. Nawoor's diagnoses, treatment decisions, and recommendations for his patients.

**RESPONSE: Defendant denies that she made decisions that conflicted with or overruled the diagnoses, treatment decisions, and/or recommendations of Dr. Nawoor. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

64. On information and belief, Nurse Galvin and Mincy were aware of Mr. Dean's symptoms, saw the results of his blood and urine tests, and knew or should have known that Mr. Dean's requests to see an outside specialist had been denied. Nurse Galvin and Mincy knew or should have known that failure to treat Mr. Dean's symptoms would cause him harm, and that diagnostic tests available within the HCU had been inadequate to properly diagnose Mr. Dean's condition. Neither Nurse Galvin nor Mincy took any action to secure Mr. Dean an appointment with an outside specialist before the referral was approved at the collegial review, after it was approved, or after Dr. Nawoor determined it would be advisable to schedule an earlier appointment. On information and belief, Nurse Galvin and Mincy took action to forestall Dr. Nawoor's recommendation to schedule an earlier appointment.

**RESPONSE: Defendant denies the allegations against her contained in this paragraph. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations against Defendant Galvin.**

65. On information and belief, Nurse Galvin and Mincy were aware that Mr. Dean required immediate surgery, and that the surgery had been ordered by a specialist. Nurse Galvin and Mincy knew or should have known that failure to promptly schedule his surgery would cause him harm, yet neither took any steps to schedule his surgery or to ascertain why his surgery had not yet been scheduled. On information and belief, Nurse Galvin and Mincy took action that prevented Mr. Dean's surgery from being scheduled.

**RESPONSE: Defendant admits that she was aware that Dr. Severino had ordered a surgery for Plaintiff, but denies the remaining allegations against her contained in this paragraph. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations against Defendant Galvin.**

**Defendants Were Deliberately Indifferent**

66.     Defendants responded to Mr. Dean's serious medical condition with deliberate indifference.  Defendants callously disregarded the signs that Mr. Dean was suffering from a serious medical condition that could not be diagnosed or adequately treated within the confines of the HCU at Taylorville.  Defendants failed to order diagnostic testing or refer Mr. Dean to an outside specialist, failed to promptly schedule his surgery, and failed to gain timely approval for his cancer medications.  Defendants consistently delayed Mr. Dean's diagnosis and treatment, failed to treat Mr. Dean's symptoms despite his worsening condition, and ignored Dr. Severino's directive that Mr. Dean be sent to surgery immediately.  Mr. Dean was forced to file an emergency grievance before the surgery was scheduled.  During each of these delays, Mr. Dean's cancer continued to spread and his prognosis worsened.  Even after surgery, Mr. Dean continued to experience delays in receiving approval for his medications despite his urgent need for effective treatment.

**RESPONSE:  Defendant denies the allegations contained in this paragraph.**

67.     That Defendants' delay in referring Mr. Dean to an outside specialist was due to Defendants' deliberate indifference is further evidenced by Defendants' ability and willingness to refer Mr. Dean for outside care at other times.  For example, in August 2016, after the HCU optometrist found a few microscopic drops of blood in Mr. Dean's eye, Defendants approved a referral and sent Mr. Dean to an outside specialist within one day.  Similarly, in 2014, Dr. Einwohner quickly referred Mr. Dean to an outside specialist after he presented with traces of blood in his urine.  Yet, in March and May of 2016, Dr. Einwohner disregarded Mr. Dean's symptoms and told him that she considered the incident over, referring him back to Dr. Nawoor for further treatment.

**RESPONSE:  Defendant denies the allegations contained in this paragraph.**

68.     That Defendants' delay in approving Mr. Dean's cancer medications was due to their deliberate indifference is further evidenced by their ability and willingness to quickly approve Mr. Dean's third round of drug treatment with Torisel. The timing of this approval occurred on May 12, 2017—just three weeks after Mr. Dean filed the instant lawsuit on April 21, 2017.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof. Defendant denies that she was responsible for delay in approval and denies that she acted with deliberate indifference. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

### Mr. Dean Has Been Seriously Injured by Defendants' Deliberate Indifference

69.     Mr. Dean's kidney cancer could have been diagnosed and treated more effectively if Defendants had not responded to Mr. Dean's symptoms with deliberate indifference. Defendant Dr. Nawoor first mentioned kidney cancer as a possible diagnosis during Mr. Dean's initial visit to the HCU, but adequate diagnostic testing was not conducted for almost three months. During this time, Mr. Dean received no medication or other treatment for his symptoms.

**RESPONSE: Defendant denies that she acted with deliberate indifference and denies the remaining allegations against her. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

70.     Defendants delayed in ordering diagnostic testing, delayed in referring Mr. Dean to an outside specialist, delayed in scheduling his surgery, and delayed approval of his cancer medications. These delays allowed the cancer to grow and spread beyond where it would have but for Defendants' deliberate indifference. But because Defendants failed to promptly take steps to diagnose Mr. Dean and failed to schedule Mr. Dean's surgery until after his cancer spread, Mr. Dean now faces a worse prognosis and is unlikely to make a full recovery.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

71.     If not for Defendants' deliberate indifference toward Mr. Dean's serious medical condition, Mr. Dean's cancer would not have grown into Mr. Dean's inferior vena cava. If

Defendants had not ignored Mr. Dean's repeated complaints and requests for an outside specialist, instead of continuing to administer ineffective blood and urine tests while providing no treatment at all, Mr. Dean likely would have been diagnosed before the tumor had started to grow beyond his kidney. But because Defendants delayed, the tumor did grow into Mr. Dean's inferior vena cava, and Mr. Dean was forced to undergo a more complicated and riskier surgery than would have otherwise been necessary.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

72.     If not for Defendants' deliberate indifference toward Mr. Dean's serious medical condition, Mr. Dean's cancer would not have spread to his liver and lymph nodes. If Defendants had followed Dr. Severino's instructions to send Mr. Dean to surgery immediately instead of delaying its scheduling for months, the surgery would have taken place before the cancer spread further. If Mr. Dean's surgery had taken place before the cancer had spread beyond his kidney, Mr. Dean's prognosis would have been improved.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

73.     If not for Defendants' deliberate indifference toward Mr. Dean's serious medical condition and urgent need for effective treatment, Mr. Dean would not have spent up to seven months receiving ineffective or no cancer medications. If Defendants had not delayed approving the first two rounds of drug treatment Mr. Dean was prescribed, Dr. Guaglianone would have been able to prescribe new medications much earlier, making it more likely that Mr. Dean would have received effective treatment sooner.

**RESPONSE: Defendant denies that she was responsible for Plaintiff's cancer medications or for any approval thereof, and denies that she was deliberately indifferent toward Plaintiff. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.**

**COUNT I**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Dr. Abdur Nawoor)**

74. The allegations of paragraphs 1 through 73 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 73 are incorporated herein by reference.**

75. Dr. Nawoor, while acting under color of state law, performed his duties in a manner that evidenced deliberate, reckless and/or callous indifference to Mr. Dean's serious medical need for diagnosis and treatment of his kidney cancer, thus depriving Mr. Dean of his rights protected by the Eighth Amendment of the United States Constitution.

76. Dr. Nawoor was deliberately indifferent to Mr. Dean's serious medical need when he repeatedly failed to effectively treat Mr. Dean's symptoms, including large and painful blood clots in his urine. Despite clear evidence that Mr. Dean needed treatment and that the blood and urine tests available within the HCU were not adequate to diagnose Mr. Dean's condition, Dr. Nawoor continued to order the same ineffective tests and failed to order or provide any treatment to address Mr. Dean's symptoms.

77. Dr. Nawoor was deliberately indifferent to Mr. Dean's serious medical condition when he disregarded Dr. Severino's instruction that Mr. Dean undergo surgery immediately and when he failed to schedule Mr. Dean's surgery for over three months.

78.    Dr. Nawoor delayed in referring Mr. Dean to an outside specialist, delayed in scheduling a date for Mr. Dean's surgery, and delayed in obtaining approval for Mr. Dean's cancer medications.  These delays exacerbated Mr. Dean's condition and deviated so far from clearly established medical standards as to evidence deliberate indifference to Mr. Dean's serious medical needs.

79.    As a direct and proximate cause of Dr. Nawoor's deprivation of his Eighth Amendment rights, Mr. Dean suffered physical and mental injuries, including, but not limited to, months of unnecessary and prolonged pain and suffering, a more serious diagnosis, and a diminished life expectancy.

80.    Because of these injuries, Mr. Dean is entitled to damages under 42 U.S.C. § 1983.

**RESPONSE:  Count I is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 75–80.**

## COUNT II
### Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983
### (Against Dr. Rebecca Einwohner)

81.    The allegations of paragraphs 1 through 73 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 73 are incorporated herein by reference.**

82.    Dr. Einwohner, while acting under color of state law, performed her duties in a manner that evidenced deliberate, reckless and/or callous indifference to Mr. Dean's serious medical need for diagnosis and treatment of his kidney cancer, thus depriving Mr. Dean of his rights protected by the Eighth Amendment of the United States Constitution.

83.     Dr. Einwohner was deliberately indifferent to Mr. Dean's serious medical need when she repeatedly failed to effectively treat—or treat at all—Mr. Dean's symptoms, including large and painful blood clots in his urine. Despite clear evidence that Mr. Dean needed treatment and that the blood and urine tests available within the HCU were not adequate to diagnose Mr. Dean's condition, Dr. Einwohner continued to order the same ineffective tests and failed to order or provide any treatment to address Mr. Dean's symptoms. Dr. Einwohner ultimately declined to address Mr. Dean's symptoms even though they had not improved, instead referring him back to Dr. Nawoor.

84.     Dr. Einwohner was deliberately indifferent to Mr. Dean's serious medical condition when she ignored his symptoms, disregarded Dr. Severino's instruction that Mr. Dean undergo surgery immediately, and failed to schedule Mr. Dean's surgery for over three months.

85.     Dr. Einwohner delayed in referring Mr. Dean to an outside specialist, delayed in scheduling a date for Mr. Dean's surgery, and delayed in obtaining approval for Mr. Dean's cancer medications. These delays exacerbated Mr. Dean's condition and deviated so far from clearly established medical standards as to evidence deliberate indifference to Mr. Dean's serious medical needs.

86.     As a direct and proximate cause of Dr. Einwohner's deprivation of his Eighth Amendment rights, Mr. Dean suffered physical and mental injuries, including, but not limited to, months of unnecessary and prolonged pain and suffering, a more serious diagnosis, and a diminished life expectancy.

87.     Because of these injuries, Mr. Dean is entitled to damages under 42 U.S.C. § 1983.

**RESPONSE: Count II is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 82–87.**

**COUNT III**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Nurse Kathy Galvin)**

88.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 73 are incorporated herein by reference.**

89.     Nurse Galvin, while acting under color of state law, performed her duties in a manner that evidenced deliberate, reckless and/or callous indifference to Mr. Dean's serious medical need for diagnosis and treatment of his kidney cancer, thus depriving Mr. Dean of his rights protected by the Eighth Amendment of the United States Constitution.

90.     Nurse Galvin was deliberately indifferent to Mr. Dean's serious medical need when she repeatedly failed to effectively treat Mr. Dean's symptoms, including large and painful blood clots in his urine. Despite clear evidence that Mr. Dean needed treatment and that the blood and urine tests previously ordered by Dr. Nawoor and Dr. Einwohner could not diagnose Mr. Dean's condition, Nurse Galvin prevented timely changes to the diagnostic measures used and the treatment provided to Mr. Dean. When Dr. Nawoor urged a prompt outside referral, Nurse Galvin interfered with this recommendation, causing periods of inaction and delay in Mr. Dean's treatment. Nurse Galvin was familiar with Mr. Dean's symptoms and test results and knew or should have known that this failure to provide treatment and subsequent delay in treatment would cause him harm.

91.     Nurse Galvin was deliberately indifferent to Mr. Dean's serious medical condition when she disregarded Dr. Severino's instruction that Mr. Dean undergo surgery immediately and when she failed to schedule Mr. Dean's surgery for over three months.

92.     Nurse Galvin delayed in referring Mr. Dean to an outside specialist, delayed in scheduling a date for Mr. Dean's surgery, and delayed in obtaining approval for Mr. Dean's cancer medications.  These delays exacerbated Mr. Dean's condition and deviated so far from clearly established medical standards as to evidence deliberate indifference to Mr. Dean's serious medical needs.

93.     As a direct and proximate cause of Nurse Galvin's deprivation of his Eighth Amendment rights, Mr. Dean suffered physical and mental injuries, including, but not limited to, months of unnecessary and prolonged pain and suffering, a more serious diagnosis, and a diminished life expectancy.

94.     Because of these injuries, Mr. Dean is entitled to damages under 42 U.S.C. § 1983.

**RESPONSE: Count III is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 89–94.**

**COUNT IV**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Lisa Mincy)**

95.     The allegations of paragraphs 1 through 73 are incorporated herein by reference.

**RESPONSE: Defendant incorporates her responses to paragraphs 1 through 73 herein by reference.**

96.     Mincy, while acting under color of state law, performed her duties in a manner that evidenced deliberate, reckless and/or callous indifference to Mr. Dean's serious medical need for diagnosis and treatment of his kidney cancer, thus depriving Mr. Dean of his rights protected by the Eighth Amendment of the United States Constitution.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

97.     Mincy was deliberately indifferent to Mr. Dean's serious medical need when she repeatedly failed to assist Mr. Dean in obtaining effective treatment for his symptoms, including large and painful blood clots in his urine. Despite clear evidence that Mr. Dean needed treatment and that the blood and urine tests previously ordered by Dr. Nawoor and Dr. Einwohner could not diagnose Mr. Dean's condition, Mincy prevented timely changes to the diagnostic measures used and the treatment provided to Mr. Dean. When Dr. Nawoor urged a prompt outside referral, Mincy interfered with this recommendation, causing periods of inaction and delay in Mr. Dean's treatment. Mincy was familiar with Mr. Dean's symptoms and test results and knew or should have known that this failure to provide treatment and subsequent delay in treatment would cause him harm.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

98.     Mincy was deliberately indifferent to Mr. Dean's serious medical condition when she disregarded Dr. Severino's instruction that Mr. Dean undergo surgery immediately and when she failed to schedule Mr. Dean's surgery for over three months.

**RESPONSE: Defendant denies the allegations contained in this paragraph.**

99.     Mincy delayed in referring Mr. Dean to an outside specialist, delayed in scheduling a date for Mr. Dean's surgery, and delayed in obtaining approval for Mr. Dean's cancer medications. These delays exacerbated Mr. Dean's condition and deviated so far from clearly established medical standards as to evidence deliberate indifference to Mr. Dean's serious medical needs.

**RESPONSE: Defendant denies the allegations contained in this paragraph, and denies that as HCUA she was responsible for Plaintiff's referral to an outside specialist, for scheduling Plaintiff's appointments or surgery, or for approval of Plaintiff's cancer medications.**

100.    As a direct and proximate cause of Mincy's deprivation of his Eighth Amendment rights, Mr. Dean suffered physical and mental injuries, including, but not limited to, months of unnecessary and prolonged pain and suffering, a more serious diagnosis, and a diminished life expectancy.

**RESPONSE:  Defendant denies the allegations contained in this paragraph.**

101.    Because of these injuries, Mr. Dean is entitled to damages under 42 U.S.C. § 1983.

**RESPONSE:  Defendant denies the allegations contained in this paragraph.**

**COUNT V**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Wexford Health Sources, Inc.)**

102.    The allegations of paragraphs 1 through 94 are incorporated herein by reference.

**RESPONSE:  Defendant's responses to paragraphs 1 through 94 are incorporated herein by reference.**

103. At all relevant times, Wexford was under contract with the State of Illinois, through IDOC, to provide healthcare to inmates at Taylorville, including Mr. Dean. In this capacity, Wexford acted under color of state law and was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by Wexford and IDOC employees who were medical care providers to inmates incarcerated at Taylorville.

104. Wexford had policies and procedures that discouraged outpatient care and surgical treatment. Dr. Nawoor, Dr. Einwohner, Nurse Galvin, Mincy, and other Wexford personnel acted pursuant to these policies and procedures when they repeatedly failed to refer Mr. Dean to an outside specialist, when they failed to promptly schedule his surgery, when they failed to timely gain approval for Mr. Dean's cancer treatments, and when they attempted to convince him to abandon treatment altogether. These failures amounted to deliberate indifference to Mr. Dean's serious medical needs.

105. As a direct and proximate cause of Wexford's policies and procedures that violated Mr. Dean's Eighth Amendment rights, Mr. Dean suffered physical and mental injuries, including, but not limited to, months of unnecessary and prolonged pain and suffering, a more serious diagnosis, and a diminished life expectancy.

106. Because of these injuries, Mr. Dean is entitled to damages under 42 U.S.C. § 1983.

**RESPONSE: Count V is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 103–106.**

**COUNT VI**
**Respondeat Superior:**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**(Against Wexford Health Sources, Inc.)[1]**

107. The allegations of paragraphs 1 through 94 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 94 are incorporated**

**herein by reference.**

... ... ........... ......... . .......... . ... ............ ...... .. ...........

108. Wexford, through its agents, apparent agents, and/or employees, accepted Mr. Dean as a patient. At all relevant times, these agents, apparent agents, and/or employees were acting within the scope of their employment with Wexford and had a duty to exercise due care and caution in the treatment of patients, including Mr. Dean.

109. At all relevant times, Wexford, through its agents, apparent agents, and/or employees acting within the scope of their employment or agency relationship, failed to exercise due care and caution in its diagnosis and treatment of Mr. Dean's cancer. Wexford's agents and employees received clear and persistent signs that further testing was necessary to diagnose Mr. Dean's condition but failed to provide for the requisite diagnostic testing. Wexford's agents and employees also knew or should have known that an outside referral was necessary for Mr. Dean to receive adequate diagnostic testing. Similarly, Wexford's agents and employees knew or should have known that Mr. Dean needed surgery immediately, but failed to schedule the surgery for months. Wexford's agents and employees also failed to give timely approval for Mr. Dean's cancer medications, despite his urgent need for effective treatment.

110. As a direct and proximate cause of the negligent acts and omissions of Wexford's agents and employees, Mr. Mr. Dean suffered severe physical and mental injuries.

111. Because of these injuries, Mr. Dean is entitled to damages.

112.    Wexford is vicariously liable for the negligent acts and omissions of its agents, apparent agents, and/or employees in their failure to exercise due care and caution in their diagnosis and treatment of Mr. Dean's cancer, including Defendants Dr. Nawoor, Dr. Einwohner, and Nurse Mincy.

**RESPONSE:  Count VI is not directed to Defendant Mincy. Defendant denies she was an employee of Wexford Health Sources, Inc., during the times relevant to this action. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraphs 108–112.**

**COUNT VII**
**Medical Malpractice – Illinois Law**
**(Against Dr. Abdur Nawoor)**

113.    The allegations of paragraphs 1 through 80 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 80 are incorporated herein by reference.**

114.    At all relevant times, it was the duty of Dr. Nawoor to exercise due care and caution in the treatment of his patients, including Mr. Dean.

115.    Despite this duty, Dr. Nawoor failed to exercise the care that a reasonably careful doctor ordinarily would have used under the circumstances, and he was therefore negligent in his treatment of Mr. Dean. Dr. Nawoor knew during the first visit at which Mr. Dean complained of blood in his urine that the cause was either kidney stones or cancer. Dr. Nawoor knew or should have known that the results of Mr. Dean's renal ultrasound were not consistent with a diagnosis of kidney stones. Dr. Nawoor received clear and persistent signs that further testing was necessary to diagnose Mr. Dean's condition but failed to provide for the requisite diagnostic testing. Dr. Nawoor also knew or should have known that an outside referral was necessary for Mr. Dean to receive adequate diagnostic testing. And following Mr. Dean's eventual diagnosis of cancer, Dr. Nawoor knew or should have known that Mr. Dean needed surgery immediately but failed to schedule the surgery for months. Dr. Nawoor also failed to gain timely approval of Mr. Dean's cancer medications despite Mr. Dean's urgent need for effective treatment.

116.    As a direct and proximate cause of Dr. Nawoor's negligent acts and omissions, Mr. Dean suffered severe physical and mental injuries.

117.    Because of these injuries, Mr. Dean is entitled to damages.

118.    The medical records pertaining to Mr. Dean have been reviewed by a licensed and actively practicing physician, who has determined that there is a reasonable and meritorious cause for the filing of a medical malpractice claim against Dr. Nawoor. (*See* Ex. A, Affidavit of William M. Strom.)

**RESPONSE: Count VII is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 114–118.**

### COUNT VIII
### Medical Malpractice – Illinois Law
### (Against Dr. Rebecca Einwohner)

119.    The allegations of paragraphs 1 through 73 and 81 through 87 are incorporated herein by reference.

**RESPONSE:  Defendant's responses to paragraphs 1 through 73 and 81 through 87 are incorporated herein by reference.**

120.    At all relevant times, it was the duty of Dr. Einwohner to exercise due care and caution in the treatment of her patients, including Mr. Dean.

caution in the treatment of her patients, including Mr. Dean.

121.    Despite this duty, Dr. Einwohner failed to exercise the care that a reasonably careful doctor ordinarily would have used under the circumstances, and she was therefore negligent in her treatment of Mr. Dean.  Dr. Einwohner knew or should have known that the results of Mr. Dean's renal ultrasound were not consistent with a diagnosis of kidney stones.  Dr. Einwohner received clear and persistent signs that further testing was necessary to diagnose Mr. Dean's condition but failed to provide for the requisite diagnostic testing.  Dr. Einwohner also knew or should have known that an outside referral was necessary for Mr. Dean to receive adequate diagnostic testing. Dr. Einwohner ignored Mr. Dean's continuing and worsening symptoms and declined to provide further treatment.  Additionally, Dr. Einwohner knew or should have known that Mr. Dean needed surgery immediately upon his diagnosis, but still failed to schedule the surgery for months.

122.    As a direct and proximate cause of Dr. Einwohner's negligent acts and omissions, Mr. Dean suffered severe physical and mental injuries.

123.    Because of these injuries, Mr. Dean is entitled to damages.

124. The medical records pertaining to Mr. Dean have been reviewed by a licensed and actively practicing physician, who has determined that there is a reasonable and meritorious cause for the filing of a medical malpractice claim against Dr. Einwohner. (*See* Ex. A, Affidavit of William M. Strom.)

**RESPONSE: Count VIII is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 120–124.**

### COUNT IX
### Medical Malpractice – Illinois Law
### (Against Nurse Kathy Galvin)

125. The allegations of paragraphs 1 through 73 and 88 through 94 are incorporated herein by reference.

**RESPONSE: Defendant's responses to paragraphs 1 through 73 and 88 through 94 are incorporated herein by reference.**

126. At all relevant times, it was the duty of Nurse Galvin to exercise due care and caution in the treatment of her patients, including Mr. Dean.

127. Despite this duty, Nurse Galvin failed to exercise the care that a reasonably careful nurse ordinarily would have used under the circumstances, and she was therefore negligent in her treatment of Mr. Dean. Nurse Galvin received clear and persistent signs that further testing was necessary to diagnose Mr. Dean's condition but failed to provide for the requisite diagnostic testing. Nurse Galvin also knew or should have known that an outside referral was necessary for Mr. Dean to receive adequate diagnostic testing. Similarly, Nurse Galvin knew or should have known that Mr. Dean needed surgery immediately upon his diagnosis, but still failed to schedule the surgery for months. Nurse Galvin also failed to gain timely approval of Mr. Dean's cancer medications, despite his urgent need for effective treatment.

128.    As a direct and proximate cause of Nurse Galvin's negligent acts and omissions, Mr. Dean suffered severe physical and mental injuries.

129.    Because of these injuries, Mr. Dean is entitled to damages.

130.    The medical records pertaining to Mr. Dean have been reviewed by a licensed and actively practicing physician, who has determined that there is a reasonable and meritorious cause for the filing of a medical malpractice claim against Nurse Galvin.  (*See* Ex. A, Affidavit of William M. Strom.)

**RESPONSE: Count IX is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 126–130.**

### COUNT X
### Respondeat Superior:
### Medical Malpractice – Illinois Law
### (Against Wexford Health Sources, Inc.)

131.    The allegations of paragraphs 1 through 94 and 113 through 130 are incorporated herein by reference.

**RESPONSE:  Defendant's responses to paragraphs 1 through 94 and 113 through 130 are incorporated herein by reference.**

132.    Wexford, through its agents, apparent agents, and/or employees, accepted Mr. Dean as a patient.  At all relevant times, these agents, apparent agents, and/or employees were acting within the scope of their employment with Wexford and had a duty to exercise due care and caution in the treatment of patients, including Mr. Dean.

133.    At all relevant times, Wexford, through its agents, apparent agents, and/or employees acting within the scope of their employment or agency relationship, failed to exercise due care and caution in its diagnosis and treatment of Mr. Dean's cancer. Wexford's agents and employees received clear and persistent signs that further testing was necessary to diagnose Mr. Dean's condition but failed to provide for the requisite diagnostic testing. Wexford's agents and employees also knew or should have known that an outside referral was necessary for Mr. Dean to receive adequate diagnostic testing. Similarly, Wexford's agents and employees knew or should have known that Mr. Dean needed surgery immediately, but failed to schedule the surgery for

months.    Wexford's agents and employees also failed to give timely approval for Mr. Dean's cancer medications, despite his urgent need for effective treatment.

134.    As a direct and proximate cause of the negligent acts and omissions of Wexford's agents and employees, Mr. Mr. Dean suffered severe physical and mental injuries.

135.    Because of these injuries, Mr. Dean is entitled to damages.

136.    Wexford is vicariously liable for the negligent acts and omissions of its agents, apparent agents, and/or employees in their failure to exercise due care and caution in their diagnosis and treatment of Mr. Dean's cancer, including Defendants Dr. Nawoor, Dr. Einwohner, and Nurse Mincy.

**RESPONSE:  Count X is not directed to Defendant Mincy. Defendant denies she was an employee of Wexford Health Sources, Inc., during the times relevant to this action. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraphs 132–136.**

**Institutional Negligence – Illinois Law**
**(Against Wexford Health Sources, Inc.)**

137.    The allegations of paragraphs 1 through 94 and 113 through 130 are incorporated herein by reference.

**RESPONSE:  Defendant's responses to paragraphs 1 through 94 and 113 through 130 are incorporated herein by reference.**

138.    At all relevant times, Wexford, as a health care provider, owed a duty to maintain adequate treatment policies and a duty to review and supervise the care of its patients, including Mr. Dean.

139.    Despite this duty, Wexford failed to exercise the care that a reasonably careful health care institution would have used under the circumstances, and it was therefore negligent in its care of Mr. Dean.  Wexford knew or should have known that its policies and procedures for approving specialty care and/or outside consultations, approving non-formulary tests and medications, and scheduling outside care constituted barriers to timely care and threats to patient health and safety.  Wexford knew or should have known that its policies and procedures were likely to, and in fact did, cause delays in the approval and scheduling of Mr. Dean's diagnostic

testing, outside referrals, and surgery, in his diagnosis, and in the administration of his cancer medications despite Mr. Dean's urgent need for a timely diagnosis and effective treatment.  Yet Wexford adopted such policies and procedures and insisted that its employees comply.

140. Wexford additionally failed to promulgate and followed the policies, procedures, and practices to select, staff, and supervise its employees, including nurses, treating physicians, and supervising physicians, that a reasonably careful health care institution would have promulgated and followed under the circumstances, and it was therefore negligent in its care of Mr. Dean. Wexford knew or should have known that its policies, procedures, and practices for selecting, staffing, and supervising its employees would likely result in, and in fact did result in, delays or negligent oversight in the diagnostic, surgical, pharmaceutical, and other medical care to IDOC inmates including Mr. Dean. Wexford's staff selection, staffing, and supervision policies, procedures, and practices unreasonably delayed Mr. Dean's diagnostic testing, outside referrals, and surgery, in his diagnosis, and in the administration of his cancer medications despite Mr. Dean's urgent need for a timely diagnosis and effective treatment. Yet Wexford adopted these policies, procedures, and practices nevertheless.

141. As a direct and proximate cause of Wexford's negligent acts and omissions, Mr. Dean suffered severe physical and mental injuries.

142. The medical records pertaining to Mr. Dean have been reviewed by a licensed and actively practicing physician, who has determined that there is a reasonable and meritorious cause for the filing of an institutional negligence claim for medical malpractice against Wexford Health Sources, Inc.. (*See* Ex. A, Affidavit of William M. Strom.)

**RESPONSE: Count XI is not directed to Defendant Mincy. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraphs 138–142.**

## PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief whatsoever.

## JURY DEMAND

Defendant demands a trial by jury in this matter.

## AFFIRMATIVE DEFENSES

1.      At all times relevant herein, Defendant acted in good faith in the performance of her official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is therefore protected from suit by the doctrine of qualified immunity.

2.      Plaintiff's claims for relief that accrued more than two years prior to the initiation of this case and not subject to any tolling are barred by the statute of limitations.

3.      Plaintiff is a person incarcerated within the Illinois Department of Corrections at the time of filing this lawsuit.  Plaintiff has failed to exhaust his administrative remedies regarding the allegations in this lawsuit.  Therefore, his claims are barred by the Prison Litigation Reform Act. 42 U.S.C. § 1997; *See also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests this honorable Court dismiss Plaintiff's Third Amended Complaint and deny Plaintiff any relief whatsoever.

Respectfully submitted,

Lisa Mincy,

Defendant,

Jeremy C. Tyrrell #6321649
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Telephone: (217) 785-4555
Facsimile: (217) 782-8767
Email: jtyrrell@atg.state.il.us

Kwame Raoul, Attorney General,
State of Illinois,

Attorney for Defendant,

By:___s/Jeremy C. Tyrrell___
        Jeremy C. Tyrrell
        Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

William Kent Dean,              )
                            )
       Plaintiff,           )
                            )
       v.                  )           No. 17-3112-SEM-TSH
                            )
Wexford Health Sources, Inc., *et al.*  )
                            )
       Defendants.     )

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019, the foregoing document, *Answer and Affirmative Defenses to Third Amended Complaint*, was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Chloe E. Holt | cholt@jenner.com |
| Craig Christopher Martin | cmartin@jenner.com |
| William McHenry Strom | wstrom@jenner.com |
| Nathaniel K. Wackman | nwackman@jenner.com |
| Daniel Stephen Fornoff | dfornoff@cassiday.com |
| Patrick E. Halliday | phalliday@cassiday.com |
| Joseph N. Rupcich | jrupcich@cassiday.com |

s/Jeremy C. Tyrrell
Jeremy C. Tyrrell #6321649
Assistant Attorney General