E-FILED
Friday, 25 October, 2019 09:59:57 PM
Clerk, U.S. District Court, ILCD

EXHIBIT N

# Report of Adam R. Metwalli, M.D.

*William Kent Dean v. Wexford Health Sources, Inc.*

**Central District of Illinois, Case No. 17-cv-3112**

September 6, 2019

**Dean v. Wexford *et al.***                                                **Report of Adam R. Metwalli, M.D.**

## Qualifications and Experience

I am the Chief of Urology in the Department of Surgery at Howard University Hospital in Washington, D.C., and a Professor in the Howard University College of Medicine. I am a urologic oncologist, specializing in cancers of the kidney, prostate, bladder, penis, and testis. Before joining the Division of Urology at Howard University Hospital in 2018, I was the primary kidney cancer surgeon at the Urologic Oncology Branch of the National Cancer Institute at the National Institutes of Health (NIH). Before joining the NIH, I practiced for three years in private practice as the only fellowship-trained urologic oncologist in a large urology group in Baltimore, Maryland. While at the NIH, I expanded the use of robotic surgery in the treatment of multifocal kidney cancer and for repeat and salvage renal surgery. I have spoken numerous times across the United States and around the world on the surgical management of kidney cancer.

I have also published over 50 research manuscripts in peer-reviewed journals and contributed to dozens more as a participant in the Cancer Genome Atlas Research Network. I am also actively involved in clinical trials research as a principal and associate investigator.

I have been awarded the Ruth L. Kirschstein National Research Service Award Research Training Grant from 2005 to 2006; the American Urological Association/Praecis Pharmaceuticals Gerald P. Murphy Scholar Award; and the Pfizer Scholar in Urology.

I earned my medical degree from Wake Forest University School of Medicine. I completed a surgical internship at the University of Louisville Hospital and a urology residency at the Oklahoma University Health Sciences Center. I have also completed fellowships in urologic oncology at the University of Texas MD Anderson Cancer Center and at the Urologic Oncology Branch of the National Cancer Institute. I am an active member of the Society of Urologic Oncology and the American Urological Association, and I am a board member for the Genitourinary Malignancies DC Regional Oncology Project.

1

Dean v. Wexford *et al.*                                    Report of Adam R. Metwalli, M.D.

My complete qualifications and experience are detailed in my *curriculum vitae*, attached.

**Expert Fees and Prior Testimony**

My fee for consultation, medical record review, and testimony, which I have discounted in recognition of the lawyers' pro bono representation in this matter, is $350 per hours plus travel expenses. I have not previously testified as an expert witness by deposition or at trial.

**Documents Reviewed and Basis for Opinions**

I have reviewed the documents listed in the attached appendix.

Based upon this review and my training and experience, I am providing an opinion as to the appropriateness of the actions defendants took to provide timely, medically appropriate care to William Kent Dean to treat his kidney cancer, and the effects for Mr. Dean's health of the defendants' actions.

My investigation is ongoing and my opinions are subject to amendment.

**Analysis and Opinions**

***The delay from Mr. Dean's symptoms to his surgery was a departure from the standard of care that caused his health condition to worsen.*** The delay of six to seven months from December 23, 2015, when Mr. Dean first complained of painless gross hematuria, *see* IDOC Taylorville Med Recs 001340-41, to the surgery that was performed July 19, 2016, to remove his cancerous kidney, *see* Cancer Care Specialists Med Recs 000232-35; DEAN-SPRINGFIELD-000006-07, was a departure from the standard of care that more likely than not added morbidity—that is, worsened his condition. At minimum, the thrombus in his inferior vena cava would have progressed during that time. *See* Cancer Care Specialists Med Recs 000232-35; DEAN-SPRINGFIELD-000007. If he had been treated more promptly, he likely would not have needed the sternotomy, cardiac surgery, hypothermic arrest, and bypass. The delay therefore

2

**Dean v. Wexford** *et al.*                                    Report of Adam R. Metwalli, M.D.

caused Mr. Dean considerable pain and suffering and presented new risks to his health and life, in the form of the complex and invasive surgery he required, that were avoidable.

*__The delay from diagnosis to surgery was a departure from the standard of care that increased risks to Mr. Dean's health.__* Furthermore, the delay between his diagnosis on April 12, 2016, *see* IDOC Taylorville Med Recs 001095-96, and the July 19 surgery, *see* DEAN-SPRINGFIELD-000006-07, was also a departure from the standard of care that harmed Mr. Dean. Delays of more than 12 weeks between diagnosis and surgery have been shown to result in worse outcomes with respect to cancer-specific survival and overall survival for urologic cancers.[1234] Once he was cleared by a cardiologist for surgery as of May 6, 2016, *see, e.g.*, IDOC Taylorville Med Recs 001124, his surgery should have gone forward promptly to avoid such a delay as could increase risks to his health. Mr. Dean will die from his kidney cancer. But defendants failed to meet their duty to him as health care providers when they did not act to advocate for him to ensure his timely diagnosis and surgical treatment, and their failures caused Mr. Dean's prognosis to worsen.

---

[1] Chang SS, Hassan JM, Cookson MS, Wells N, Smith JA Jr. Delaying radical cystectomy for muscle invasive bladder cancer results in worse pathological stage. J Urol. 2003 Oct;170(4 Pt 1):1085-7.

[2] Boeri L, Soligo M, Frank I, Boorjian SA, Thompson RH, Tollefson M, Quevedo FJ, Cheville JC, Karnes RJ. Delaying Radical Cystectomy After Neoadjuvant Chemotherapy for Muscle-invasive Bladder Cancer is Associated with Adverse Survival Outcomes. Eur Urol Oncol. 2019 Jul;2(4):390-396. doi: 10.1016/j.euo.2018.09.004. Epub 2018 Sep 28.

[3] Abel EJ, Spiess PE, Margulis V, Master VA, Mann M, Zargar-Shoshtari K, Borregales LD, Sexton WJ, Patil D, Matin SF, Wood CG, Karam JA. Cytoreductive Nephrectomy for Renal Cell Carcinoma with Venous Tumor Thrombus. J Urol. 2017 Aug;198(2):281-288. doi: 10.1016/j.juro.2017.03.011. Epub 2017 Mar 6.

[4] Lenis AT, Burton CS, Golla V, Pooli A, Faiena I, Johnson DC, Salmasi A, Drakaki A, Gollapudi K, Blumberg J, Pantuck AJ, Chamie K. Cytoreductive nephrectomy in patients with metastatic renal cell carcinoma and venous thrombus-Trends and effect on overall survival. Urol Oncol. 2019 Sep;37(9):577.e9-577.e16. doi: 10.1016/j.urolonc.2019.03.009. Epub 2019 Mar 28.

3

**Dean v. Wexford** *et al.*                                                      Report of Adam R. Metwalli, M.D.

***The records show that defendants' conduct departed from the standard of medical care.*** The records provided to date raise serious questions about the biology of Mr. Dean's cancer that in all events highlight the problems with defendants' conduct. If the imaging performed in about a year before his first complaints of bloody urine on December 23, 2015, *see* IDOC Taylorville Med Recs 001340, was in fact negative for a tumor—that is, if no signs of cancer were present at that time—then his was a biologically aggressive tumor, and avoiding the six-to-seven-month delay from first complaints of hematuria to surgical treatment may not have prevented the development of metastasis. But in this case, defendants' conduct, and failure to expedite diagnosis and treatment, caused Mr. Dean's tumor to grow aggressively, and unchecked, for several months. On the other hand, if the tumor was there in the previous imaging studies and missed, then defendants failed in their duty to detect and treat Mr. Dean's cancer at an earlier date than originally thought. Moreover, I would expect a patient with Mr. Dean's history of kidney stones, as detailed in his medical records, to have had multiple imaging studies done over the years, which would reveal more about the nature of his prison physicians' negligence. I understand that these imaging studies are being made available to Mr. Dean's lawyers and can be made available to me, and I anticipate supplementing my opinions and analysis based on a review of these images and the contemporaneous documentary records.

**Dean v. Wexford** *et al.*                                    **Report of Adam R. Metwalli, M.D.**

Respectfully submitted,

/s/ Adam R. Metwalli, M.D.

———————————————

Adam R. Metwalli, M.D.

5