# EXHIBIT 38

Page 1

1           THE UNITED STATES DISTRICT COURT

2         FOR THE CENTRAL DISTRICT OF ILLINOIS

3                 SPRINGFIELD DIVISION

4  _____

5  WILLIAM KENT DEAN,        )
                             )
6            Plaintiff,      )
                             )
7     vs.                    ) No. 17-CV-3112
                             )
8  WEXFORD HEALTH SOURCES, INC., )
   DR. ABDUR NAWOOR, DR. REBECCA )
9  EINWOHNER, NURSE KATHY GALVIN, )
   and LISA MINCY,           )
10                           )
            Defendants.      )
11 _____

12

13        Deposition Upon Oral Examination

14                    Of

15        RICHARD R. KOSIEROWSKI, MD

16 _____

17

18              9:41 A.M.

19            October 21, 2019

20         19445 International Boulevard

21             Seattle, Washington

22

23

24  REPORTED BY:  Cynthia A. Kennedy, RPR, CCR

RICHARD KOSIEROWSKI, M.D.                    October 21, 2019

Page 2

1                  APPEARANCES

2

3  FOR THE PLAINTIFF:

4       WILLIAM M. STROM
        Attorney at Law
5       Jenner & Block, LLP
        353 N. Clark Street
6       Chicago, IL 60654
        wstrom@jenner.com
7

8

9  FOR THE DEFENDANT:

10      JOSEPH RUPCICH
        Cassiday Schade, LLP
11      111 North 6th Street, Suite 200
        Springfield, IL 62701
12      (217) 572-1714
        jrupich@cassiday.com
13

14

15 FOR LISA MINCY:

16      JEREMY TYRRELL  (via telephone)
        Assistant Attorney General
17      Office of the Illinois Attorney General
        500 South Second Street
18      Springfield, IL 62706
        jtyrrell@atg.state.il.ius
19

20

21

22

23

24

RICHARD KOSIEROWSKI, M.D.                                October 21, 2019

Page 3

```
 1              I N D E X
 2
 3
 4  EXAMINATION                           PAGE
 5  BY MR. STROM                            5
 6  BY MR. RUPCICH                        277
 7
 8
 9
10
11      WITNESS INSTRUCTED NOT TO ANSWER
12            Page   Line
13             (None)
14
15
16
17
18          DOCUMENTS REQUEST
19            Page   Line
20             (None)
21
22
23
24
```

Page 104

1  A.  I couldn't quote you the distinction.

2  Q.  Based on your clinical experience and
3 judgment, what would you expect the distinction to be?

4  A.  The differential can be different for
5 microscopic. Certainly it's -- you know, the question
6 is at what point is microscopic clinically
7 insignificant, whereas macroscopic is always
8 clinically significant.

9  Q.  Would you expect the -- I'm going to
10 withdraw that. Never mind.

11      Next paragraph, "Given that stone recurrence
12 was the most likely cause of the hematuria and
13 Mr. Dean refused a urine strain, which could have
14 provided a definitive diagnosis, the decision to
15 proceed with renal ultrasound was a reasonable first
16 step in the workup."

17      First question, whose workup?

18  A.  Mr. Dean's.

19  Q.  Performed by whom?

20  A.  By Dr. Nawoor.

21  Q.  Dr. Nawoor?

22  A.  Nawoor, okay.

23  Q.  When you say "It could have provided a
24 definitive diagnosis," what do you mean?

RICHARD KOSIEROWSKI, M.D.                          October 21, 2019

Page 105

1   A.    That if you have hematuria and you retrieve
2   a stone, fairly likely to assume that the stone caused
3   the hematuria.
4         Does it end there? No. But it'll at least
5   tell you that you've solved the problem for today.
6   Q.    So a definitive diagnosis is a more likely
7   than not diagnosis?
8   A.    Yeah.
9   Q.    And I understand that the urine strain is
10  kind of like, for lack of a better way of putting it,
11  using a coffee filter?
12  A.    (Witness nods head up and down.)
13        MR. RUPCICH: Yes?
14        THE WITNESS: Yes.
15        MR. STROM: Thank you.
16        THE WITNESS: Sorry.
17  BY MR. STROM:
18  Q.    And so you've said retrieving a stone as in
19  one turns up in that straining process, that provides
20  that more likely than not diagnosis?
21  A.    It at least tells you he has kidney stones.
22  Whether it was the cause of hematuria is another
23  question.
24  Q.    Okay. So what do you mean by a definitive

RICHARD KOSIEROWSKI, M.D.                October 21, 2019

Page 106

1  diagnosis?
2   A.   You have a stone that is abnormal.  You have
3  a stone in a patient.  You've defined stone -- defined
4  new pathology.
5   Q.   So a definitive diagnosis here means
6  presence of a stone.
7   A.   Yes.
8   Q.   It does not necessarily mean cause of
9  hematuria.
10  A.   Correct.
11  Q.   The sentence concludes, "The decision to
12 proceed with renal ultrasound was a reasonable first
13 step in the workup."
14       According to what standard of care?
15  A.   My clinical judgment and knowledge of most
16 correctional institutions.
17  Q.   So it's appropriate to the standard of care
18 of a PCP or extender in the correctional setting?
19  A.   Yes.
20  Q.   Is it the standard of care for someone who's
21 not in the correctional setting?
22  A.   Maybe.
23  Q.   Why do you say maybe?
24  A.   Again, what are your -- what are your

Page 125

1  Q.  Are you aware of ultrasounds other than the
2  one described in your report of February 2nd, 2016,
3  that Mr. Dean received while -- has received in his
4  medical history?
5  A.  Not that I'm aware of.
6  Q.  Are you aware of any that he received while
7  in IDOC care?
8  A.  The one.
9  Q.  The one that he received on February 2nd,
10 2016?
11 A.  Yes.
12 Q.  So you're not -- there's no indication that
13 he received ultrasound for his previous bouts of
14 hematuria, correct?
15 A.  I'm not aware of it.
16 Q.  Or for detecting his previous bouts of
17 kidney stones, right?
18 A.  Again, I'm not -- I'm not aware of it.
19 Q.  Why not?  I mean why didn't he receive
20 ultrasound in those circumstances?
21 A.  Well, at one point, he was de novo.  And de
22 novo in a patient with no comorbidities, a CT scan is
23 a better bang for the buck.
24     So at some point, CTs would be -- would have

RICHARD KOSIEROWSKI, M.D.                                October 21, 2019

Page 126

1  been good.  And if the CT showed a stone, there's

2  little need to -- little additional information to be

3  obtained from an ultrasound once you have a good CT

4  study.  If you have a good ultrasound, you will still

5  need at some point a CT.

6      Q.    Is that only for de novo patients that you

7  say that?

8      A.    Certainly for de novo.

9      Q.    Only for de novo?

10     A.    Not only.

11     Q.    So in the case of hematuria from a patient

12  who has previously had kidney stones, is CT imaging

13  the standard of care?

14     A.    At some point, if he had hematuria and we

15  retrieved the stone, and we proved that this bout was

16  due to a kidney stone, would he have needed cystoscopy

17  and upper track evaluation again?  Yes.  Time frame

18  would be different.

19     Q.    How would the time frame be different?

20     A.    It would be elective.  You rule out the most

21  serious things first.  If you have already have a

22  reason for it, you need not look that hard.  You can't

23  forget about it, but you need not do those studies

24  immediately.

RICHARD KOSIEROWSKI, M.D.                               October 21, 2019

Page 127

1   Q.   I see.  So the timing of the CT scan,
2  cystoscopy, can be delayed if there is a history of
3  kidney stones.
4   A.   If you retrieve the kidney stone.
5   Q.   If you retrieved the kidney stones because
6  it's been expelled from the body or it's been
7  surgically removed?
8   A.   I'm talking about expelled from the body.  I
9  don't want to get into the surgical part of it.
10   Q.   So what about under circumstances where the
11  immobile -- the stationery kidney stone or perhaps not
12  the same one, but in the same location appears over
13  multiple bouts of hematuria over multiple bouts of
14  complaints or not complaints of flank pain.
15        Under those circumstances, is the time frame
16  to follow up with CT and cystoscopy also discretionary
17  or...
18        I'm sorry, that was not a very well-worded
19  question.
20   A.   No, it was not.
21   Q.   I can try again.
22        So if I understand you correctly, your
23  testimony is that, and your opinion is that, if there
24  is a history of kidney stones --

RICHARD KOSIEROWSKI, M.D.                                October 21, 2019

Page 284

1         C E R T I F I C A T E

2

3  STATE OF WASHINGTON  )
                        ) SS.
4  COUNTY OF KITSAP     )

5        I, the undersigned Washington Certified Court
   Reporter, pursuant to RCW 5.28.010 authorized to
6  administer oaths and affirmations in and for the State
   of Washington, do hereby certify:
7
         That the annexed and foregoing deposition
8  consisting of pages 1 through 285 of the testimony of
   each witness named herein was taken stenographically
9  before me and reduced to typed format under my
   direction;
10
         I further certify that according to CR 30(e)
11  the witness was given the opportunity to examine, read
   and sign the deposition after the same was
12  transcribed, unless indicated in the record that the
   review was waived;
13
         I further certify that all objections made at
14  the time of said examination to my qualifications or
   the manner of taking the deposition or to the conduct
15  of any party have been noted by me upon each said
   deposition;
16
         I further certify that I am not a relative or
17  employee of any such attorney or counsel, and that I
   am not financially interested in the said action or
18  the outcome thereof;

19         I further certify that each witness before
   examination was by me duly sworn to testify the truth,
20  the whole truth and nothing but the truth;

21

22

23

24

RICHARD KOSIEROWSKI, M.D.                                October 21, 2019

Page 285

1        I further certify that the deposition, as
transcribed, is a full, true and correct transcript of
2   the testimony, including questions and answers, and
all objections, motions, and exceptions of counsel
3   made and taken at the time of the foregoing
examination and was prepared pursuant to Washington
4   Administrative Code 308-14-135, the transcript
preparation format guidelines;
5
        I further certify that I am sealing the
6   deposition in an envelope with the title of the above
cause and the name of the witness visible, and I am
7   delivering the same to the appropriate authority;

8        I further advise you that as a matter of firm
policy, the Stenographic notes of this transcript will
9   be destroyed three years from the date appearing on
this Certificate unless notice is received otherwise
10  from any party or counsel hereto on or before said
date;
11       IN WITNESS WHEREOF, I have hereunto set my
hand and affixed my official seal this 29th day of
12  October 2019.

13

14

15
                    _____
16
              CYNTHIA A. KENNEDY, RPR, CCR
17              Certified Court Reporter in
              the State of Washington
18              License No. 3005

19

20

21

22

23

24