E-FILED
Friday, 20 December, 2019  03:35:53 PM
Clerk, U.S. District Court, ILCD

**THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| WILLIAM KENT DEAN, | |
| Plaintiff, | |
| v. | Case No. 17-CV-3112 |
| WEXFORD HEALTH SOURCES, INC., DR. ABDUR NAWOOR, DR. REBECCA EINWOHNER, NURSE KATHY GALVIN, and LISA MINCY, | Judge Sue E. Myerscough |
| | Magistrate Judge Tom Schanzle-Haskins |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO WEXFORD'S SEVENTH MOTION IN LIMINE**

Wexford's Seventh Motion in Limine (Dkt. 137-1) seeks a complete prohibition on evidence, arguments, or references to information contained in reports prepared by court-appointed experts in the *Lippert* litigation.  This motion must be denied.  The *Lippert* reports are the most reliable and relevant evidence in this case on Wexford's policies and customs for collegial review. They are extensively documented reports prepared by neutral, court-appointed experts as part of a significant and hotly litigated federal class-action suit over the constitutionality of Illinois prison health care.  There can be no serious question about their probative value and reliability.

That they are the best evidence in this case about Wexford's policies and customs on collegial review is entirely due to the discovery abuse Wexford has engaged in, including failing to produce documents that are known to have existed, failing to produce relevant communications to and from defendants about Mr. Dean's health until after it had already filed for summary judgment or literally days before trial, and witnesses who were unprepared to testify.

Thus, Wexford's motion must be denied on three separate grounds. First, portions of the so-called Shansky Report are plainly admissible for non-hearsay purposes, most notably Wexford's notice and knowledge of the unconstitutional customs Mr. Dean has alleged in this case. Similarly, portions of the Puisis Report are admissible for non-hearsay purposes as "state of mind" evidence and should be available to use for cross-examination and potential admission into evidence as they directly rebut inaccurate and misleading testimony that Wexford will try to introduce with respect to the collegial review process. For those reasons alone, Wexford's motion must be denied as to the *Lippert* reports. Second, even if they are hearsay (and good reasons exist to conclude otherwise), both reports are admissible for their truth under at least two exceptions to the rule against hearsay, primarily the so-called residual exception for "trustworthy" evidence which is "more probative" than any other evidence the party has been able to obtain by "reasonable means." Third, in fact, neither of the *Lippert* reports are hearsay because there is ample evidence and legal support that they were adopted or authorized by Wexford. In sum, for each of these three reasons, Mr. Dean respectfully requests that this Court enter an order denying Wexford's Seventh Motion in Limine.

## **BACKGROUND**

### I.      The *Lippert* **Reports.**

The *Lippert* reports are two reports produced by court-appointed experts in a class-action litigation which concerned the constitutionality of the healthcare system in Illinois prisons. *See Lippert v. Ghosh*, No. 10-cv-04063 (N.D. Ill.). The litigation has resulted in a consent decree between the plaintiffs and IDOC requiring substantial changes to the provision of healthcare in Illinois prisons and an independent monitor to ensure compliance. *See* Consent Decree (Dkt. 1238), *Lippert v. Ghosh*, No. 10-cv-04063 (N.D. Ill. May 9, 2019). This litigation produced two

separate reports by two separate, independent, court-appointed experts, portions of which Mr. Dean seeks to admit or otherwise use in this litigation.

The first report, authored by Dr. Ron Shansky and thus often referred to as the "Shansky Report," was completed in December 2014.  *See* Ex. B, Ron Shansky, M.D., *Final Report of the Court Appointed Expert*, December 2014 (Dkt. 339), *Lippert v. Ghosh*, No. 10-cv-04063 (N.D. Ill. May 14, 2015).[1]  Dr. Shansky was appointed by the court under Federal Rule of Evidence 706, which empowers the court to appoint its own expert witnesses.  *See* Ex. C, Agreed Order Appointing Expert (Dkt. 244), *Lippert v. Ghosh*, No. 10-cv-04063 (N.D. Ill. Dec. 19, 2013).  The Order appointing Dr. Shansky explicitly charged him with writing a report to "assist the Court in determining whether [IDOC] was providing health care services to the offenders in its custody that meet the minimum constitutional standards of adequacy."  *Id.* ¶¶ 1a, 5a.  The Order further provided that Dr. Shansky's report must "propose solutions" for "systemic deficiencies in IDOC health care" that he identified.  *Id.*

The Order appointing Dr. Shansky specifically provided that Wexford Health Sources *shall* have the opportunity to participate in the initial meeting with Dr. Shansky during which Dr. Shansky, the parties, and Wexford would "discuss how the investigation [would] be conducted." *Id.* ¶¶ 3a, 9.  The Court's Order also provided that Wexford *shall* "receive a copy of" Dr. Shansky's draft report and "have the opportunity to submit written comments regarding" the report, as well as to receive a copy of the Final Confidential Report.  *Id.* ¶ 9.  The Order provided only that no "[p]arty shall be bound by any of the *opinions* contained in" Dr. Shansky's Final Report.  *Id.* ¶ 5d (emphasis added).  Nothing in the Order precluded the use of the Report in other litigation.

---

[1]  Mr. Dean attaches excerpts of the Shansky Report, similar to what he would seek to use or admit at trial, to this Motion.

Furthermore, as Wexford's Motion makes clear (Wexford's Mot. at 4-5), the Order specifically provides that Dr. Shansky is prohibited from testifying by deposition or at trial in any other cases concerning the subjects of his investigation or report.

As is relevant to Mr. Dean's case, Dr. Shansky's Final Report concluded that "scheduled offsite services" and the collegial review process were nothing short of a disaster: "During our review of records, we found breakdowns in almost every area, starting with delays in identification of the need for the offsite services, delays in obtaining an authorization number, delays in being able to schedule an appointment timely, delays in obtaining offsite paperwork and delays or the absence of any follow-up visit with the patient."  Ex. B, Shansky Report, PTX194-0029.

As a recommendation to resolve these systemic deficiencies, the Shansky Report recommended that "[p]resentation to collegial review by the Medical Director must occur within one week." *Id.* at 31. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

The second report, authored by Dr. Mike Puisis, was completed in October 2018.  Dr. Puisis' duties were the same as Dr. Shansky's: assist the court in evaluating whether IDOC's medical care met "minimum constitutional standards of adequacy" and produce a report.  Ex. D, Second Order Appointing Expert ¶¶ 1a, 5a (Dkt. 593), *Lippert v. Ghosh*, No. 10-cv-04603 (N.D.

Ill. Dec. 8, 2017).  As is relevant in Mr. Dean's case, the Puisis Report concluded that "the specialty

care process of collegial review is a patient safety hazard and should be abandoned until such time

that patient safety is ensured."  Ex. E, Mike Puisis, D.O., et al., *Statewide Summary Report*

*Including Review of Statewide Leadership and Overview of Major Services, Report of the 2nd*

*Court Appointed Expert* at 62 (Dkt. 767), *Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill.).[2]  The

Puisis Report described a portion of its investigation into the collegial review process:

> We listened in on one of these collegial review conference calls and spoke to staff
> about the calls at other sites. The calls are brief. One scheduling clerk said
> sometimes the calls are canceled because the utilization physician believes all
> referrals are appropriate. The same clerk said that typically the calls take 10
> minutes. The call we witnessed had no clinical collegial discussion about individual
> cases but was more of an approval process in which the utilization physician states
> approval or recommends getting another test before the approval is made.

> *Id.*

The Order appointing Dr. Puisis made no mention of Wexford and did not accord it the

right to participate in meetings with Dr. Puisis or comment on his draft report.  *See* Ex. D, Second

Order Appointing Expert.

## II.     Mr. Dean's Use of the Reports.

Mr. Dean has questioned Wexford's 30(b)(6) witness on collegial review and utilization

management on the Shansky Report.  *See* Wexford MSJ Ex. F, Ritz 30(b)(6) Tr. 54:19-55:22.  Mr.

Dean questioned Wexford's utilization management director for Illinois, Dr. Stephen Ritz, about

both reports.  *See* Wexford MSJ Ex. G, Ritz Tr. 53:19-63:11  Mr. Dean cited to and used both

reports in his response to Wexford's contention interrogatory requiring Mr. Dean to explain the

factual bases for his contention that Wexford was deliberately indifferent.  *See* Wexford MSJ Ex.

---

[2]     Mr. Dean attaches excerpts of the Puisis Report, similar to what he would seek to use or admit at trial, to this Motion.

M, Dean Resp. to Wexford's Interrog. 13 (at p. 20).  Finally, Mr. Dean cited to and used the Shansky Report in his response to Wexford's summary judgment motion.  *See* Dean MSJ Resp. at 33-35 (Dkt. 111); Additional Undisputed Material Facts (Dkt. 111-1) ¶¶ 115-19.

### III.    Wexford's Discovery Abuse on Collegial Review Topics.

Wexford has engaged in significant discovery abuse in this case, specifically on collegial review topics.  Mr. Dean's need to use the Shansky and Puisis Reports is directly tied to that abuse.  This discovery abuse has deprived Mr. Dean of timely access to relevant documents.  In some instances, Wexford has completely failed to produce documents that almost certainly exist or existed at some point.  Wexford's discovery abuse has deprived Mr. Dean of the ability to confront witnesses with documents contradicting Wexford's testimony about the ways its policies and practices work.  Because Mr. Dean has not been able to fully develop facts about the systemic breakdowns in the collegial review and utilization management process and how they affected Mr. Dean in discovery in this case, the use of the Shansky and Puisis Reports  is particularly appropriate to ensure that the jury is made aware of how the collegial review process really works and Wexford's long-standing knowledge of the deficiencies in the process.  A full history of the discovery abuses in this case is explained in the declaration attached to this Motion as Exhibit A.

The result of Wexford's discovery abuses is that Mr. Dean was unable to develop a full factual record on Wexford's utilization management and collegial review processes.  This problem, in part, can be cured by additional examination of Dr. Ritz, Dr. Nawoor, and, perhaps, Nickolas Little at trial.  But it is clear that, with respect to the collegial review process, documents to demonstrate what actually is discussed either: (1) are deliberately never created; (2) are not maintained; or (3) have not been produced in response to document requests seeking communications or "collegial  review minutes, reports, or other similar documents" related to Mr.

Dean and his medical condition.  *See* Pl.'s 1st Set of Requests for Prod. of Docs. to Wexford Defs. ¶ 7 (Oct. 16, 2018).  As a result, an inaccurate picture of the collegial review process could be presented to the jury.[3]

## LEGAL STANDARD

A motion in limine is only properly granted if the evidence in question is "clearly inadmissible for *any* purpose."  *Abernathy v. E. Ill. R.R. Co.*, 2017 WL 4330376, at *1 (C.D. Ill. Sept. 26, 2017) (Myerscough, J.) (emphasis added).  If the evidence the motions seeks to exclude is admissible for some purpose or the Court cannot "determine admissibility in advance of trial," the motion should be denied.  *Id.*

## ARGUMENT

Both of the *Lippert* reports are admissible on three separate grounds.  First, both reports are admissible for non-hearsay purposes.  The Shansky Report is admissible to demonstrate Wexford's notice and knowledge of the unconstitutional customs Mr. Dean has alleged in this case.  The Puisis Report is admissible as "state of mind" evidence and to rebut Wexford's expected presentation that collegial review is efficient and well-run and serves a valid medical purpose.  Second, even if hearsay, both the Shansky and Puisis Reports are admissible for their truth under at least two hearsay exceptions, most importantly the "new" Rule 807 residual exception.  Third, both reports are not hearsay and are admissible because they are statements of a party opponent: the Shansky Report was both "adopted" and "authorized" by Wexford by its conduct after the

---

[3]   Separately, Mr. Dean intends to move the court for either an admission on behalf of Wexford that can be presented to the jury that it created no documents documenting collegial review discussions about Mr. Dean or an adverse inference instruction that it failed to maintain or produce them and the jury is entitled to draw an inference that the documents were unfavorable to Wexford.

Shansky Report's filing, while the Puisis Report was "adopted" by Wexford's silence.  In short, Wexford's Seventh Motion in Limine must be denied.

## I.      Both reports are admissible for non-hearsay purposes.

The Shansky Report is admissible for non-hearsay purposes.  Most importantly, the Report is admissible to demonstrate Wexford's notice or knowledge of problems with collegial review. *Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, 2015 WL 183912, at *9 (C.D. Ill. Jan. 13, 2015) (describing "statements intended to show . . . notice[] or knowledge of a party" as "non-hearsay" (brackets omitted)).

Dr. Ritz testified that the Shansky Report's conclusions were well-known at Wexford and he was present at high-level meetings with Wexford's senior leadership where they were discussed.  Wexford MSJ Ex. G, Ritz Tr. 54:14-22, 55:10-56:7.



; *see also Daskalea v. District of Columbia*, 227 F.3d 433, 442-43 (D.C. Cir. 2000) (Garland, J.) ("[A] 'paper' policy cannot insulate a municipality from liability where there is evidence, as there was here, that the municipality was deliberately indifferent to the policy's

violation."). Wexford's notice of and knowledge of the extent of the collegial review problems is thus directly relevant to showing its knowledge of an unconstitutional practice or custom.

Similarly, the Shansky Report is admissible for the non-hearsay purpose of showing that Nurse Mincy and Wexford's employee-defendants had knowledge of and were subjectively aware that there were "breakdowns" in the area of collegial review and off-site scheduling and that delays were a threat to patient safety. Dr. Ritz testified in his individual deposition that he would expect most people on the "Illinois contract" to be familiar with the Shansky Report's existence. Wexford MSJ Ex. G, Ritz Tr. 54:19-22. It is reasonable to believe that the individual defendants in this case were aware of the report, or at least its conclusions as to the problems with collegial review, and thus the Report is highly relevant to determining their "subjective knowledge" in the deliberate indifference inquiry.

Likewise, the Puisis Report should also be admitted as evidence of the defendants' state of mind. *See Sokn*, 2015 WL 183912, at *9 (evidence of "state of mind" a permissible non-hearsay purpose). The Puisis Report concluded that the Shansky Report caused no major changes in the provision of constitutional health care to Illinois prisoners. That conclusion is relevant to show that the defendants' state of mind was subjective awareness of the health care breakdowns and yet they still took no steps to ameliorate them.

Finally, portions of the Puisis Report should be available to use for cross-examination as they directly rebut inaccurate and misleading testimony that Wexford will try to introduce with respect to the collegial review process. Specifically, Wexford will undoubtedly attempt to characterize the collegial review process as an efficient medical initiative. As described above, and more fully in the Declaration attached hereto, Wexford's discovery abuses have hamstrung Mr. Dean's ability to refute Wexford's characterization of collegial review with documents or

testimony.  But this characterization is belied by both of the Reports, which indicate that collegial review has little to do with medicine and is indeed a "patient safety hazard."

In sum, at the very least, the Shansky and Puisis Reports should be admitted for their multiple non-hearsay purposes.

### II.  Both reports are admissible under the hearsay exception for public records and the residual exception.

Alternatively, even if this Court considers one or both reports to be hearsay, both reports are properly admitted as either public records under Rule 803(8) or under the residual exception found in Rule 807.

### A.  Both reports are public records under Rule 803(8)(A)(iii).

Both reports are properly admitted under the hearsay exception for "factual findings from legally authorized investigation."  Fed. R. Evid. 803(8)(A)(iii).  Under this exception, evaluative reports containing opinions and conclusions are admissible as "factual findings."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).  Under Seventh Circuit precedent, a "legally authorized investigation" can be conducted by a non-governmental entity so long as they are acting as the "equivalent of government investigators."  *United States v. Blackburn*, 992 F.3d 666, 672 (7th Cir. 1993); *see also United States v. Doyle*, 130 F.3d 523, 546-47 (2d Cir. 1997) ("Rule 803(8)(B) can encompass statements of non-governmental parties who act as agents for the government under duties imposed by law.").  *Wilson v. Wexford Health Source*'s one sentence finding that the "Lippert report" is not a public record ignores this earlier-in-time Seventh Circuit authority holding that non-governmental entities can create public records.  932 F.3d 513, 522 (7th Cir. 2019) (as cited in Wexford's Mot. 3).  As the Seventh Circuit had held, an earlier-in-time and "fully considered" panel decision "governs" over a contradictory, later-in-time decision which merely "adopted the district court's opinion."  *Nat'l Cycle, Inc. v. Savoy Reins. Co. Ltd.*, 938 F.2d 61, 64

10

(7th Cir. 1991) ( "One panel may not overrule another . . . ."). Thus, *Blackburn*—not *Wilson*—governs here. Courts have regularly found reports by non-governmental actors to be "legally authorized" when they are acting at the direction of a governmental body, such as the legislature or a court. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 858-59 (9th Cir. 1999) ("citizens' committee appointed by the City Council"); *Am. Pegasus SPC v. Clear Skies Holding Co.*, 2015 WL 10891937, at *8 (N.D. Ga. Sept. 22, 2015) (liquidators appointed and subject to oversight of court); *United States v. Davis*, 826 F. Supp. 617, 621-622 (D.R.I. 1993) (contractor acting at direction of EPA; "[C]ourts have held that . . . closely managed investigations satisfy the 'report of a public agency' requirement under [Rule] 803(8).").

As previously described, both Dr. Shansky and Dr. Puisis were acting as the equivalent of government investigators when they produced their reports. They were acting at the appointment of the court as its own expert, charged with investigating the subject matter of the *Lippert* suit, and at all times subject to the court's oversight. Both Dr. Shansky and Dr. Puisis had broad investigative authority, which made them like an extension of the court and unlike a party. For instance, both experts were entitled to "timely access to all files" which were not privileged and in IDOC's possession. *See, e.g.*, Ex. C ¶ 4e; Ex. D, ¶ 4e. Both experts were also entitled to visit any IDOC facility on short notice and to have access to both staff and inmates at those facilities. Ex. C ¶¶ 4c, 4e; Ex. D ¶¶ 4c, 4e. In sum, both reports are public records under Rule 803(8)(A)(iii) and should be admitted for their truth.

**B. Both reports are admissible under Rule 807's residual exception.**

Both reports should be admitted under Rule 807 because they are the most probative and important evidence now available in this case about the failures and shortcomings of Wexford's collegial review process. Thus the reports are tailor-made for admission under Rule 807, which

was revised effective December 1, 2019, and now provides for admission of hearsay evidence when "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," so long as it is also "supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement."

   1. **The Shansky and Puisis Reports are more probative evidence of Wexford's collegial review policies and customs than any evidence produced in this litigation.**

The Shansky and Puisis Reports are the most probative evidence of Wexford's unconstitutional collegial review policies and customs than any Mr. Dean has been able to obtain. As described in the attached Declaration, Wexford has engaged in a pattern of discovery abuse since at least October 2018 that has stymied Mr. Dean's best efforts. Wexford refused to produce defendants' communications about Mr. Dean's health and some records of the collegial review process for over a year by ignoring written inquiries about Mr. Dean's requests. When these communications and records were finally produced, fact discovery had been closed for two-and-a-half months and all of the fact witness depositions had long since been completed. Indeed, Wexford had filed for summary judgment five days *before* they were produced, meaning that Wexford had sought to end this case on the merits before it turned over a single email communication responsive to Request No. 6 of Mr. Dean's Requests for Production, *see* Pl.'s 1st Set of Requests for Prod. of Docs. to Wexford Defs. (Oct. 16, 2018), or the requested "launch reports" as well as other collegial review records under Request No. 7, *see id.* Furthermore, Wexford produced another large batch of communications just days before trial on December 5, 2019, and, due to technical deficiencies in the production medium, Mr. Dean's counsel were unable to access it at all until December 6, 2019.

Moreover, Wexford's discovery abuse was not limited to document productions.  Neither Dr. Nawoor nor Dr. Ritz had clear or meaningful recollection of the collegial reviews involving Mr. Dean, and Dr. Ritz explicitly testified that he had no recollection of *any* collegial review involving Mr. Dean.  Wexford MSJ Ex. G, 67:22-68:8.  Wexford's 30(b)(6) designee on utilization management and collegial review was woefully unprepared to answer even basic questions about collegial review and its policies.

The discovery abuse is ongoing.  To this day, Wexford has not produced to Mr. Dean the collegial review spreadsheets and cover emails for collegial reviews during 2016 and 2017 that are plainly encompassed by his original Requests Nos. 6-7—as Wexford itself has conceded by implication when it produced a limited number of copies of these spreadsheets from 2018 in response to these same Requests.  Spreadsheets from 2016 and 2017 almost surely existed, because Dr. Ritz testified that he reviewed them prior to a collegial review.  Wexford MSJ Ex. G, Ritz Tr. 41:3-43:21.  These spreadsheets would have revealed the information provided to Dr. Ritz prior to his decision to approve or deny a medical treatment at collegial review.  Furthermore, to this day, Wexford has not produced any records indicating whether Mr. Dean was discussed in detail at any of the relevant collegial reviews.  Instead, Wexford has only produced the "utilization management notes" which contain little more information than the fact that a service was approved or denied.  Take, for instance, the highly significant January 13, 2016 collegial.  Dr. Einwohner suggested this collegial following Mr. Dean's presentation with hematuria and recommended the collegial approve a urology evaluation and "re-imaging"—the standard of care.  *See* PTX086-0002.  Yet at collegial review, Dr. Ritz and Dr. Nawoor overruled her, sending Mr. Dean to an ultrasound, a procedure below the standard of care.  *See* PTX091-0001.  The utilization management notes, however, only contain the fact that an ultrasound was approved, with no indication whether there

was discussion about the decision (let alone any medically defensible reason) to approve an ultrasound instead of a CT scan. *Id.*

At bottom, Wexford either: (1) does not create records related to what would be talked about or what was talked about during the relevant collegial reviews; (2) failed to maintain such records and no longer has the ability to produce them; or (3) failed to produce them in response to Mr. Dean's document requests. These failures are compounded by the inability of Wexford's witnesses to recall even any general details about Mr. Dean's collegial reviews, as well as the inadequate preparation of Wexford's 30(b)(6) witness.

Finally, Mr. Dean's use of the findings of the Shansky investigation must necessarily refer to, use, and admit the Report since, as Wexford points out in its Motion in Limine, Dr. Shansky is prohibited by federal court order from testifying about his investigation or its findings in any other litigation. *See* Wexford's Mot. at 4-5.

Wexford's discovery abuses, therefore, have left Mr. Dean hamstrung as he attempts to prove that Wexford's collegial review process, including in Mr. Dean's case, is a device to "reduce offsite care costs" and serve Wexford's business interests instead of any legitimate medical interest. *See* PTX 101-0001 (Wexford's website describing "Collegial Review" as a "process designed to reduce offsite care costs"). The result is that the most probative evidence of the systemic failures of Wexford's collegial review process are contained in the portions of the Shansky and Puisis Reports which discuss collegial review. Under Rule 807, Mr. Dean should be able to use and admit portions of those Reports dealing with collegial review.

**2. The Shansky and Puisis Reports are supported by "sufficient guarantees of trustworthiness" as required under "new" Federal Rule of Evidence 807.**

Both reports are supported by "sufficient guarantees of trustworthiness," as also required by "new" Rule 807. They were generated by neutral medical experts appointed by the court under

14

Rule 706 to assist in assessing the medical issues in the case and thus were not written to assist any particular party. As is evident from even a cursory review of the reports, they are exceedingly thorough and well-documented. Moreover, as described above, Wexford had the opportunity to participate in meetings about how the Shansky investigation would be conducted and was able to provide written comments on a draft of the Shansky Report. IDOC was allowed to do the same with the Puisis Report. These steps helped to guarantee the Reports' trustworthiness.

Furthermore, as the advisory committee note makes clear, the touchstone of the inquiry under the "new version" of Rule 807 is "corroborating evidence." Fed. R. Evid. 807, advisory committee's note (eff. Dec. 1, 2019). While Mr. Dean does not have the documentary or testimonial corroboration that he should due to Wexford's discovery abuses, the Shansky Report's conclusion that there were "breakdowns" in the collegial review process is corroborated by, for instance, the fact that it took 12 and 20 days for Mr. Dean's CT scan and cystoscopy to be approved after his urologist, Dr. Severino, ordered them. The Puisis Report's conclusion that, in practice, Wexford's collegial reviews are brief and serve only the business purpose of communicating approval and denials is corroborated by Dr. Ritz's deposition testimony. According to Dr. Ritz, the medical purpose of collegial review is "to allow doctor-to-doctor discussion regarding the management of cases." Wexford MSJ Ex. G, Ritz Tr. 51:20-24. But "most cases" are approved with no discussion at all. Wexford MSJ Ex. G, Ritz Tr. 41:24-42:4; 49:6-50:8. The "approval aspect" of collegial review serves primarily a business purpose. Wexford MSJ Ex. G, Ritz Tr. 52:15-53:15.

*Wilson v. Wexford Health Sources* does not foreclose admission through Rule 807 for two reasons. 932 F.3d at 522 (as cited in Wexford's Mot. 3). First, *Wilson*'s apparent holding that the residual hearsay exception was not an "appropriate" route to admit the *Lippert* report was based

on the "old," repealed version of Rule 807.  By contrast, the "new" Rule 807 omits the former requirements that there be "*equivalent circumstantial* guarantees of truthworthiness," that the hearsay be offered as "evidence of a material fact," and that admitting the hearsay would "best serve the purposes of these rules and the interests of justice."  Fed. R. Evid. 807 (repealed Dec. 1, 2019) (emphasis added); *see* Fed. R. Evid. 807 advisory committee's note (eff. Dec., 1, 2019). *Wilson* itself contains no analysis of the Rule 807 issue, and neither do any of the cases it cites in support.  For this reason, it is impossible to know whether any of the provisions of Rule 807 that barred the *Lippert* report in *Wilson* are in the "new" Rule.  Because *Wilson*'s holding on Rule 807 was based on a Rule which has been substantially changed and there is no way of knowing whether the Seventh Circuit's ruling turned on the changed portions, *Wilson* should not bind this case, which is decided under the "new" Rule 807.

Furthermore, the longstanding pattern of discovery abuse distinguishes this case from *Wilson*.  Rule 807's requirement that the hearsay evidence be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts" is a highly fact-bound and context-specific inquiry.  Fed. R. Evid. 807(a)(2).  The Shansky and Puisis Reports may not have satisfied that "more probative" criteria in *Wilson*, but here— where Mr. Dean's best efforts in discovery have gone begging—they certainly do.

In sum, the Shansky and Puisis Reports satisfy both parts of Rule 807 and should be admitted for the their truth under that Rule or at least allowed for non-hearing purposes such as state of mind or for cross-examination.

### III.     Neither report is hearsay because they are statements of an opposing party.

Federal Rule of Evidence 802 prohibits the admission of hearsay only.  But neither the Shansky nor Puisis Reports are hearsay because they are statements of a party opponent.  *See* Fed.

R. Evid. 801(d), d(2).  Under Rule 801(d)(2)(B), a statement that a "party manifested it adopted to believe to be true" is admissible as an opposing party's statement.  Similarly, under Rule 801(d)(2)(C), a statement made "by a person whom the party authorized to make a statement on the subject" is admissible as an opposing party's statement.  The Seventh Circuit has described these "definitional exemptions" from the rule against hearsay as "extraordinarily broad" and has highlighted the advisory committee's note "calling for generous treatment of this avenue to admissibility."  *Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013) (internal quotation marks omitted) (citing Fed. R. Evid. 801(d)(2) advisory committee's note).  The traditional concerns of the hearsay doctrine are of less concern when evaluating an opposing party's statements because "the party against whom the statements are offered generally can take the stand and explain, deny, or rebut the statements."  *Id.*

**A.** ████████████████████████████████████████████
████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ ███████████████

███████████████ ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ ██████████████████ █████████████

███████████████████████████████████████████████

█████████ ███████████████████████ ██████████████

███████████████████████████████████████████████



█████████████████████████████████████████████████████████ *See Hoffman v. Dewitt Cnty.*, 176 F. Supp. 3d 795, 808 (C.D. Ill. 2016) (Myerscough, J.).[4]

████████████████████████████████████████████████

████████████████████████████████████████ ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████ As described in the attached Declaration, Wexford had an obligation to properly prepare its 30(b)(6) witness to testify on a topic ████████ ███████ which was plainly encompassed by a 30(b)(6) topic requiring testimony about "[s]ince December 1, 2015, all policies . . . used by utilization management personnel employed by Wexford related to utilization management considerations for patient referrals."[5]  It should not now be able to hide behind its failure to meet this obligation.  *See Wachovia Secs., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547-48 (N.D. Ill. 2008) (describing obligation to prepare 30(b)(6) witnesses to "fully" and "completely" answer "the questions posed by [the discovering party] as to the relevant subject matters"). ████████████████████████████████████████

███████████████████████████████████████████

---

[4]  *Hoffman* was a retaliation case, but applied the common-sense principle that when one event occurs "on the heels" of a related and potentially triggering event, it justifies an inference of causation.  176 F. Supp. 3d at 808.

[5]  Wexford's 30(b)(6) designee on this topic testified that he had never before seen the 30(b)(6) deposition notice and done nothing more than speak with counsel once in order to prepare.  *See* Wexford MSJ Ex. F, Ritz 30(b)(6) Tr. 6:9-7:13.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ As courts in this circuit have

previously explained, "[t]he way to determine if a party has manifested an adoption or belief in the

truth of the [statements] is whether the surrounding circumstances tie the possessor and the

[statement] together in some meaningful way." *Id.* at 744-45 (quoting *Laborers' Pension Fund v.

Certified Midwest Constr., Inc.*, 1998 WL 792470, at *6 (N.D. Ill. Nov. 9, 1998)) (internal

quotation marks omitted). ████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████" *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d

1113, 1120 (9th Cir. 2015). ██████████████████████████████████

███████████████████████████████████    ██████████████████████████████

██████████   ███████████████████████████████████████████████████. *See,*

*e.g.*, *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268-69 (10th Cir. 1998); *Pilgrim*

*v. Trs. of Tufts Coll.*, 118 F.3d 864, 869-70 (1st Cir. 1997), *abrogated on other grounds as*

*recognized in Crowley v. LL Bean, Inc.*, 303 F.3d 387, 405-06 (1st Cir. 2002); *In re Gen. Motors*

*LLC*, 2015 WL 8578945, at *3 (S.D.N.Y. Dec. 9, 2015). ████████████████████████

███████████████████████████████████████████████████████████

██████████████████ *See United States v. Harvey*, 117 F.3d 1044, 1050 (7th Cir. 1997).

████████████████████████   ████████████████████   ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████    ██████████████████

██████████████████████████████████████████

███████████████████

This case is the same. ████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

In sum, the Shansky Report is admissible under Rule 801(d)(2)(B).

**B. The Shansky Report is admissible under Rule 801(d)(2)(C) because Wexford "authorized" its findings.**

As described above, Wexford had significant input into Dr. Shansky's investigation (the ability to attend the initial meeting where it would be discussed "how the investigation [would] be conducted") as well as the writing of his report (the ability to receive a draft of the report and submit comments).  This participation constitutes Wexford's "authorization" of Dr. Shansky's "statement" on the subject of collegial reviews, making the report admissible under Rule 801(d)(2)(C).

Wexford's participation and degree of input in Dr. Shansky's investigation and report is analogous to Wexford employing Dr. Shansky as an expert in a prior litigation.  In that situation, a number of courts have held that the report or testimony of an opposing party's expert in a prior litigation may be used as the statement of an opposing party.  *See, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1018 (9th Cir. 2008); *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 WL 3894444, at *11 (N.D. Ill. Sept. 30, 2010).

20

This conclusion does not change due to the fact that Wexford was not a party in the *Lippert* case at the time Dr. Shansky was appointed. Indeed, Wexford's non-party status underscores its authorization of Dr. Shansky. It was under no obligation to participate in Dr. Shansky's investigation, yet affirmatively chose to do so. By contrast, several years later, Wexford appears to have not participated at all in investigation of Dr. Puisis. This difference demonstrates why Wexford's participation in the Shansky Report should make that report its "authorized" statement.

### C. The Puisis Report is admissible under Rule 801(d)(2)(B) because Wexford adopted it by its silence.

As recounted above, the Puisis Report delivers a scathing critique of Wexford's collegial review process, calling it a "patient safety hazard" which must be "abandoned." Ex. C, Puisis Report at 62. Wexford was well aware of these conclusions: Dr. Ritz testified in his individual deposition that he was familiar with Dr. Puisis' conclusion about collegial review and had discussed it with his supervisor, as well as Wexford's lawyers. *See* Wexford MSJ Ex. G, Ritz Tr. 59:17-62:14. In response to the Puisis Report, however, Wexford, a non-party to the litigation, filed no brief or set of objections with the Court. It never sought to intervene in the *Lippert* litigation. It filed no objection to the consent decree, which was in part based on the conclusions of the Puisis Report about the progress (or lack thereof) that the Illinois prison system had made in providing healthcare since the Shansky Report. *See, e.g.*, *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Penn.*, 701 F.3d 938, 952-58 (3d Cir. 2012) (reversing district court and authorizing nonclass members to intervene for purpose of objecting to class action settlement of a class action that might affect their interests). It also appears to have made no public statements refuting Dr. Puisis' conclusions. Nor does it appear that Wexford asked IDOC to lodge any comments with Dr. Puisis on this conclusion. Instead, Wexford's only institutional reaction, according to Dr. Ritz,

was to "monitor what [IDOC] did with respect to the settlement process."  Wexford MSJ Ex. G, Ritz Tr. 62:5-14.

The statement of another person can be "adopted" by an opposing party if the party had the "opportunity to deny the statement" but did not do so in circumstances where the person would deny the statement if it was untrue.  *United States v. Ward*, 377 F.3d 671, 675-76 (7th Cir. 2004). Utilization management and collegial review are key components of Wexford's business, ones which it touts on its website.  *See* PTX101-001.  Dr. Puisis' report quite publicly and prominently referred to them as a "patient safety hazard."  It is reasonable to expect that Wexford would have made some attempt—by formal filing with the court, by public statement, by comment on the draft report, or otherwise—to "protest" that conclusion if it thought it to be "untrue."  *Ward*, 377 F.3d at 675-76 (quoting Fed. R. Evid. 801(d)(2)(b) advisory committee's note).  Because it did not, the Puisis Report is properly adopted against Wexford.[6]

## **CONCLUSION**

For the foregoing reasons, Mr. Dean respectfully requests that the Court deny Wexford's Seventh Motion in Limine, (Dkt. 117-1).

---

[6]   As described above, the Puisis Report's discussion of its collegial review investigation itself contains hearsay because it quotes a conversation with a scheduling clerk.  Yet that scheduling clerk is almost certainly a Wexford employee and so the clerk's statements are themselves statements of an opposing party because they are statements of a "party's agent or employee." Fed. R. Evid. 801(d)(2)(D).

Dated:  December 6, 2019                    Respectfully Submitted,

                                    /s/ Craig C. Martin

Craig C. Martin
Joel T. Pelz
William M. Strom
Nathaniel K.S. Wackman
Chloe E. Holt
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL  60654
(312) 222-9350
cmartin@jenner.com
jpelz@jenner.com
wstrom@jenner.com
nwackman@jenner.com
cholt@jenner.com


*Attorneys for William Kent Dean*

**CERTIFICATE OF SERVICE**
**AND COMPLIANCE WITH TYPE VOLUME LIMITATIONS**

I, William M. Strom, hereby certify that on December 6, 2019, I caused the foregoing **Plaintiff's Response in Opposition to Wexford's Seventh Motion in Limine** to be served on all counsel of record listed via the Court's ECF system and by electronic mail.

I further certify, pursuant to CDIL-LR 7.1(B)(4)(b)(1), that this memorandum in response to a motion complies with the type volume limitations set forth in that section because it contains 6,902 words, inclusive of all headings, footnotes, and quotations, but exclusive of the caption, signature block, and certificates, according to the word count feature in Microsoft Word.

_____/s/ William M. Strom_____
William M. Strom
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL  60654
(312) 222-9350
nwackman@jenner.com

*Attorney for William Kent Dean*