# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM KENT DEAN,<br><br>              Plaintiff,<br><br>     v.<br><br>WEXFORD HEALTH SOURCES, INC., DR. ABDUR NAWOOR, DR. REBECCA EINWOHNER, NURSE KATHY GALVIN, and LISA MINCY,<br><br>              Defendants. | Case No. 17-CV-3112<br><br>Judge Sue E. Myerscough<br><br>Magistrate Judge Tom Schanzle-Haskins |

**DECLARATION OF NATHANIEL WACKMAN IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO WEXFORD'S SEVENTH MOTION IN LIMINE**

I, Nathaniel Wackman, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1. I am a lawyer in the law firm Jenner & Block LLP, located at 353 North Clark Street, Chicago, Illinois 60654-3456, and one of the counsel for the plaintiff William Kent Dean in this action. I am a member in good standing of the bar of the State of Illinois. I am admitted to practice law in the United States District Court for the Central District of Illinois and am in good standing with this Court.

2. I submit this declaration and attached documents in support of Plaintiff's Response In Opposition to Wexford's Seventh Motion In Limine.

3. I am familiar with the facts and circumstances set forth herein based upon personal knowledge and/or a review of our file in this matter.

4. On October 16, 2018, Mr. Dean served a request for production on Wexford which sought, among other things:

- **Request No. 6**: "Any and all communications, including, but not limited to, letters, emails, text-messages, voice-messages, and/or voicemails to or from any of the Defendants that discuss, reference, refer to, or relate to Plaintiff William Kent Dean and/or his medical condition since December 1, 2015."

- **Request No. 7**: "Any and all meeting minutes, collegial review minutes, reports, or other similar documents that discuss, reference, refer to, or relate to Plaintiff William Kent Dean and/or his medical condition since December 1, 2015."

Dean 1st RFP to Wexford Defs. ¶¶ 6-7.

5. Following the early December 2018 deposition of Dr. Nawoor, counsel for Mr. Dean made a specific request in an email for records which Dr. Nawoor discussed in his deposition: "[N]otes or records he said that he input into a computer to communicate with Wexford in [the] Pittsburgh office" as described in his deposition at pages 68-70. Email from W. Strom to J. Rupcich (Dec. 20, 2018 2:26 PM); *see also* Wexford MSJ Ex. A, Nawoor Tr. 70:5-15 (Dr. Nawoor explaining his duties as regards entering labs or tests, including "any lab that needs to be put on the computer for Pittsburgh to approve, we do that, and every Wednesday we have collegial").

6. Counsel for Mr. Dean followed up on this request on January 26, 2019 with another email to counsel for Wexford covering "outstanding discovery requests" including the "[r]ecords created from Dr. Nawoor's computer inputs regarding Mr. Dean's treatment, referred to on pp. 68-70 of his deposition transcript." Email from W. Strom to J. Rupcich (January 26, 2019 3:16 PM).

7. On March 27, 2019, Wexford served responses to Mr. Dean's original October 2018 document requests. In response to Mr. Dean's Request No. 6 relating to communications, Wexford represented that its "Investigation is ongoing. Defendants will supplement this response." In response to Mr. Dean's Request No. 7 for documents relating to Mr. Dean or his medical condition, Wexford produced 173 pages of "utilization management notes" which appear to be computer screenshots of the utilization management notes already produced by IDOC. These notes are produced by the utilization management nurse in Pittsburgh following approval at

2

collegial review and are not generally reviewed by Dr. Ritz after their creation. Wexford MSJ Ex. F, Ritz Tr. 66:17-67:21. Wexford did not represent that its investigation was ongoing as regarded Request No. 7 or that it intended to supplement its response to that Request with any additional records concerning Mr. Dean or his medical condition. Wexford's Resp. Dean's 1st RFP ¶¶ 6-7.

8. On July 30, 2019, counsel for Mr. Dean emailed Wexford's counsel seeking information about when Wexford would "be able to provide responses or documents" to "previously requested discovery that is still outstanding according to our records." Email from N. Wackman to J. Rupcich (July 30, 2019 10:58 PM). These requests included Mr. Dean's Request No. 6 for communications and Mr. Dean's December 2018 request for Dr. Nawoor's computer inputs. *Id.*

9. On August 14, 2019 counsel for Mr. Dean sent yet more correspondence requesting that Wexford "produce any responsive documents as soon as possible or otherwise respond to these requests." Letter from N. Wackman to J. Rupcich (August 14, 2019). Having received no response on August 14, Mr. Dean's counsel raised the correspondence and the outstanding requests on August 15 when Wexford's counsel and Mr. Dean's counsel were both present at a deposition. Wexford's counsel told Mr. Dean's counsel to put the outstanding discovery into a new Rule 34 request, despite the fact that all of the outstanding discovery was encompassed by Mr. Dean's original October 2018 discovery request. Letter from J. Pelz to J. Rupcich (August 20, 2019).

10. At the August 16 30(b)(6) deposition of Dr. Stephen Ritz, Wexford's utilization management director for Illinois and Wexford's 30(b)(6) witness on the topic of utilization management (of which collegial review is a part), Dr. Ritz testified about "launch reports" which are documents produced after a collegial review which contain a "targeted completion date" by which a medical service approved at collegial review is to be approved. Wexford MSJ Ex. F, Ritz

3

30(b)(6) Tr. 55:19-57:24. These had not been previously produced to Mr. Dean, even though they were encompassed by Request No. 7 which sought all "collegial review minutes, reports, or other similar documents" relating to Mr. Dean. Dean 1st RFP to Wexford Defs. ¶ 7. Mr. Dean's counsel made an oral request for these documents at the close of the 30(b)(6) deposition. Wexford MSJ Ex. F, Ritz 30(b)(6) Tr. 61:7-62:11.

11. At his August 16 individual deposition, Dr. Ritz testified that before collegial reviews he receives a spreadsheet containing notes for each particular collegial review case. Wexford MSJ Ex. G, Ritz Tr. 41:3-43:21. Dr. Ritz said that this spreadsheet is attached to an email from the utilization management nurse. *Id.* Dr. Ritz testified that he reviewed this spreadsheet prior to the collegial reviews. *Id.* 43:22-24. Based on Dr. Ritz's testimony, Wexford should have in its possession an email and a spreadsheet containing notes on Mr. Dean for every single collegial review at which his care was approved. No such documents have been produced with respect to key collegial reviews involving Mr. Dean in 2016 and 2017.

12. Fact discovery closed in this case following the Rule 30(b)(6) depositions of Wexford on August 16, 2019. *See* July 16, 2019 Minute Entry.

13. Four days after Dr. Ritz's depositions, on August 20, counsel for Mr. Dean followed up with yet another letter to Wexford's counsel, identifying the outstanding discovery requests and seeking immediate production of them. Letter from J. Pelz to J. Rupcich (August 20, 2019). Since Wexford's counsel was on vacation when Mr. Dean's August 20 letter was originally sent, Mr. Dean's counsel resent it to counsel on August 27, 2019. Email from N. Wackman to J. Rupcich (August 27, 2019 9:08 AM).

14. Counsel for Mr. Dean and counsel for Wexford spoke by phone on August 28, 2019 regarding the outstanding discovery requests. In regards to Mr. Dean's Request No. 6, they agreed

4

(to the extent it was in any doubt before) that Wexford should produce communications, including emails, to or from "Dr. Nawoor, Dr. Einwohner, and Kathy Galvin" as well as Dr. Roderick Matticks, Wexford's Illinois medical director, and Dr. Ritz. Email from J. Rupcich to W. Strom (August 29, 2019 12:56 PM).

15. On August 29, counsel for Wexford responded to Mr. Dean's August 27 letter. Email from J. Rupcich to N. Wackman (August 29, 2019 2:53 PM). Wexford's counsel disputed that the outstanding discovery requests were encompassed in Mr. Dean's original October 2018 Request for Production, but agreed to treat them as such in order "to continue to move this case forward." *Id.* Wexford's counsel represented that Dr. Nawoor was not referencing computer inputs during his deposition, but instead "non-formulary labs and medication requests" which were already within Mr. Dean's chart, thus rendering that request moot. *Id.* Wexford's counsel further represented that he had requested the "launch reports" and would provide them. As to communications, Wexford's counsel referred Mr. Dean's counsel to an email he had sent earlier in the day. *Id.* But all the earlier email did was agree that Wexford was under an obligation to produce communications of the Wexford defendants—it did not refer to any timetable to do so. Email from J. Rupcich to W. Strom (August 29, 2019 12:56 PM).

16. On August 30, Mr. Dean served expert reports from Dr. Bruce Barnett and Dr. Nivedita Dhar on the defendants. On September 6, Mr. Dean served an expert report from Dr. Adam Metwalli on the defendants.

17. On September 6, 2019, Wexford served Mr. Dean with a request for production seeking 27 categories of documents to be produced by October 9, 2019. Wexford's RFP Directed to Plaintiff by Defendant. That same day, Wexford served Mr. Dean with 20 contention

interrogatories also due on October 9, 2019.  Interrogs. Directed to Plaintiff by Defendant Wexford Health Sources, Inc.

18.     On September 20, 2019, Mr. Dean made a partial production in response to Wexford's document requests, turning over close to 600 pages of documents related to Mr. Dean's expert witnesses.  Dean Resp. to Wexford's RFP Nos. 19-27.  Mr. Dean made this early production to allow Wexford the opportunity to confront his experts at their depositions with the full range of documents and information.  Mr. Dean's counsel presented these experts for deposition on September 23 (Dr. Dhar), September 26 (Dr. Barnett), and September 30 (Dr. Metwalli).

19.     On October 9, 2019, Mr. Dean responded to Wexford's interrogatories in an answer that was 41 pages in length.  *See* Wexford MSJ Ex. M, Dean Resp. to Wexford's Interrogs.  On this same day, Mr. Dean also responded to the remainder of Wexford's requests for production, which included requests that Mr. Dean produce "[a]ll documents Plaintiff intends to introduce as evidence at trial" and "[a]ll documents that support" Plaintiff's contention that "Defendant Wexford was deliberately indifferent."  Wexford's RFP Directed to Plaintiff by Defendant.

20.     Two days after responding to these voluminous requests, on October 11, 2019, Mr. Dean's counsel once again raised the long-outstanding discovery with Wexford's counsel.  Email from W. Strom to J. Rupcich (Oct. 11, 2019 1:57 PM).  In particular, Mr. Dean's counsel noted that Wexford had yet to produce communications responsive to Request No. 6, as well as the collegial review launch reports responsive to Request No. 7.  In response, Wexford's counsel replied "[t]his email is confusing" before addressing a topic unrelated to Request Nos. 6 and 7.  Email from J. Rupcich to W. Strom (Oct. 11, 2019 2:00 PM).

21.     Mr. Dean's counsel once again raised the issue of outstanding discovery requests on October 16, 2019—*exactly* one year from the date Mr. Dean served his original requests for

6

production. Email from W. Strom to J. Rupcich (Oct. 16, 2019 4:39 PM). Counsel for Wexford replied that same day that he was in possession of "the balance of the emails" responsive to Request No. 6 but his staff was still "sorting" them. Email from J. Rupcich to W. Strom (Oct. 16, 2019 4:51 PM).

22. Expert discovery closed on October 18, 2019. *See* October 3, 2019 Text Order.

23. A week later, on October 23, 2019, Mr. Dean's counsel followed up again, inquiring about the status of production of the Request No. 6 communications and the Request No. 7 collegial review launch reports. Email from W. Strom to J. Rupcich (Oct. 23, 2019 5:19 PM).

24. Wexford's counsel responded two days later on October 25 that the collegial review launch reports would be sent that day, but that Wexford was "still having trouble with the ESI but hope to have it sorted and produced today." Email from J. Rupcich to W. Strom (Oct. 25, 2019 7:11 AM). That same day, Wexford's counsel followed up saying "I have the emails and we have gotten them off the CD" but noting that he "was not able to go through disc 2 today due to other matters." Email from J. Rupcich to W. Strom (Oct. 25, 2019 9:50 PM).

25. On October 25, Wexford also filed for summary judgment. *See* Dkt. 100.

26. On October 30, 2019, Wexford finally produced communications responsive to Request No. 6. The communications produced by Wexford were a total of 99 pages of emails and attachments. Generally the emails are from 2018 onward, though there are a few emails from 2015 and 2017 included in the production. There does not appear to be a single email from 2016, the year when Mr. Dean was diagnosed with cancer and underwent a highly complex cancer surgery. Furthermore, the only collegial review spreadsheets or weekly collegial review emails produced appear to be for January 2, 2019; December 5, 2018; November 14, 2018; September 12, 2018;

September 5, 2018; and March 21, 2018. The key collegial reviews relevant to Mr. Dean and this case occurred mostly in 2016 and 2017.

27.     The emails that were produced include an email where Dr. Ritz and other Wexford personnel, while deciding whether to approve Mr. Dean's $15,000/month chemotherapy treatment Opdivo, discuss whether "[h]ospice care may be possibly more appropriate" than paying for the medicine. PTX181-0004. Similarly, the launch reports that were produced include the launch report for Mr. Dean's cancer surgery which shows a "targeted completion date" of May 21, 2016, a date that Wexford missed by almost two months. PTX179-0001.

28.     On December 3, 2019, Mr. Strom reached out to Wexford's counsel to inquire whether the second ESI disc referenced in Wexford's counsel's October 25 email had been produced. After a meet and confer on December 4, 2019, Wexford produced an additional disc of communications responsive to Request No. 6 on December 5, 2019. According to Wexford's counsel, it advertently was not produced with the prior October 30 communications production. The disc did not work.

29.     On December 6, 2019, the last business day before trial is set to begin on December 9, Wexford's counsel provided Mr. Dean's counsel with the contents of the disc in a PDF via email. It contains 525 pages of documents. As of the filing of this response, Mr. Dean's counsel has not yet had a chance to fully review or evaluate the disc's contents, however, a preliminary review reveals that it, too, contains highly responsive emails where a Wexford employee writes that Mr. Dean would "benefit more from palliative care at this time, then aggressive treatment with the background of multiple organ metastases and other chronic co-morbidities" immediately after being informed about Mr. Dean's Votrient prescription, including that it costs $10,000 per month. Email from S. Ritz to B. Adams (Nov. 3, 2016 9:53 AM).

30. Mr. Dean deposed two witnesses who were present at the collegial reviews where Mr. Dean's care was discussed and approved: Dr. Nawoor and Dr. Ritz. Neither doctor had clear or meaningful recollection of the collegials involving Mr. Dean. Dr. Ritz explicitly testified that he had no recollection of *any* collegial review involving Mr. Dean. Wexford MSJ Ex. G, Ritz Tr. 67:22-68:8.

31. Beyond those two witnesses, Mr. Dean noticed a 30(b)(6) deposition of a Wexford representative to testify on three topics:

- All policies and procedures for utilization management, as well as how those policies and procedures were applied to Mr. Dean and the circumstances of Mr. Dean's interaction with utilization management.

- Since December 1, 2015, all policies, procedures, protocol, practices, and/or other materials written by, relied upon, or used by utilization management personnel employed by Wexford related to utilization management considerations for patient referrals for the following conditions: flank pain, suspicion of internal bleeding, hematuria, kidney stones, urinary tract infection, bladder infection, bladder cancer, kidney or renal cancer, and metastasis.

- How the cost-of-care and other financial considerations factor in utilization management medical decisionmaking, as well as when utilization management medical decisionmakers are made aware of financial or budgetary consideration, including if and when financial or budgetary considerations were involved in the utilization management decisionmaking in Mr. Dean's case.

32. Wexford designated Dr. Stephen Ritz on these three topics. Dr. Ritz prepared through only a single meeting with counsel. Wexford MSJ Ex. F, Ritz 30(b)(6) Tr. 7:10-13. He testified that he had never even seen the 30(b)(6) notice and topics prior to his deposition. *Id.* 6:9-13. He answered that he did not know or did not recall on basic questions related to utilization management and collegial review such as:

- When did Wexford adopt utilization management? *Id.* 8:7-8

- Who within Wexford made the decision to adopt utilization management? *Id.* 8:12-14.

9

- How did Wexford evaluate utilization management prior to its adoption? *Id.* 8:15-19.

- What was the targeted completion date for Mr. Dean's surgery? *Id.* 40:7-10.

- Why did Wexford add the one week collegial review minimum to the 2016 guidelines? *Id.* 43:11-16.

- Why did Wexford add an "immediate collegial review provision" to its 2016 guidelines? *Id.* 44:22-45:3.

- Why did Wexford add a provision that off-site appointments needed to be scheduled within 10 business days to its 2016 guidelines? *Id.* 46:4-11.

- Whether it is possible to send a collegial review launch report without a targeted completion date? *Id.* 57:17-20.

33.  Furthermore, because Wexford had not yet produced the Request No. 6 communications documents, Mr. Dean was unable to ask witnesses about certain documents or confront them with documents where they testified inconsistently with the documentary record. For instance, Dr. Ritz testified that cost plays no role in Wexford's "final analysis and approval" of non-formulary drugs. Wexford MSJ Ex. G, Ritz Tr. 104:7-10. However, included in the communications produced by Wexford on October 30, 2019 and December 6, 2019 are email chains documenting non-formulary reviews that Dr. Ritz conducted where the cost of Mr. Dean's chemotherapy drugs was explicitly discussed. PTX 181-0005-6; Email from S. Ritz to B. Adams (Nov. 3, 2016 9:53 AM).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 6, 2019                                           */s/ Nathaniel K.S. Wackman*

## CERTIFICATE OF SERVICE

I, Nathaniel K.S. Wackman, an attorney, certify that on December 6, 2019, I caused the foregoing **Declaration of Nathaniel Wackman in Support of Plaintiff's Response in Opposition to Wexford's Seventh Motion in Limine** to be served on all counsel of record listed via the Court's ECF system and email.

/s/ Nathaniel K.S. Wackman

*An attorney for Plaintiff William Kent Dean*