042447/19344/JNR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

WILLIAM KENT DEAN,

        Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., DR.
ABDUR NAWOOR and UNKNOWN
HEALTHCARE EMPLOYEES,

        Defendants.

Case Number 17-cv-3112

Judge Sue E. Myerscough

Magistrate Judge Tom Schanzle-Haskins

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE MOTION FOR REMITTITUR, AND MOTION FOR SETOFF

NOW COME the Defendants, DR. ABDUR NAWOOR, DR. REBECCA EINWOHNER, and WEXFORD HEALTH SOURCES, INC., by their attorneys, CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial, or in the Alternative, Motion for Remittitur, and Motion for Setoff state as follows:

### I.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

**A.    Legal Standard for Judgment as a Matter of Law**

Under Rule 50, once "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. Pro. 50(a). If the court denies the Motion for Judgment as a Matter of Law (JMOL), "the

movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. Pro. 50(b).

**B.    Defendants Nawoor, Einwohner, and Wexford are Entitled to Judgment as a Matter of Law on Plaintiff's Eighth Amendment Claim**

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff identified no particular action or inaction that independently constituted deliberate indifference by Dr. Nawoor, instead relying on the entirety of his conduct between December 23, 2015, and May 4, 2017. Doc. 72. Between December 23, 2015, and March 10, 2016, Dr. Nawoor encouraged hydration (12-11-19 transcript, pg. 47), ordered blood tests (12-11-19 transcript, pg. 39), requested a urine strain (Trial Transcript, Vol. 6, 962), obtained approval for an ultrasound (12-11-19 transcript, pg. 25), obtained approval for a urology consultation (12-11-19 transcript, pg. 66), and called the urologist to move Plaintiff's urology appointment from March 21, 2016, to March 10, 2016 (Trial Transcript Vol. 6, pg. 69 and Defendants' Exhibit 1, pg. 1351).

From the time of Plaintiff's cancer diagnosis in April to surgery on July 19, 2016, Dr. Severino was in charge, ordering additional diagnostic tests, recruiting surgeons, and deciding the surgery date. Dr. Nawoor and his staff called Dr. Severino's office, inquiring about scheduling Plaintiff's surgery. (Trial Transcript Vol. 4, pg. 588-89; Vol. 7, pg. 1136; Defendants' Exhibit 2, pg. 96.) A doctor who refers a patient to a specialist and relies on the

specialist's treatment recommendations cannot have the required mental state unless he knows the specialist's plan of care is so blatantly inappropriate to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition. *Sherrod*, 223 F.3d at 619. Despite calling two urologists at trial, Plaintiff offered no evidence Severino's plan of care was blatantly inappropriate. Dr. Severino testified the time that elapsed from diagnosis to surgery was reasonable for such a complex procedure. (Severino deposition, pg. 39.)

Following surgery, Plaintiff's care was managed by medical oncologist Dr. Perry Guaglianone, who testified at trial. He said everything he had recommended for Plaintiff's care had been done. (Guaglianone deposition, pg. 76-77.)

Following her January 7, 2016, tele clinic encounter, Dr. Einwohner emailed Dr. Ritz, prompting a collegial review on January 11, 2016, for consideration of additional imaging and urology consultation. (Trial Transcript December 12, 2019, pg. 31; Plaintiff's exhibit 61 at 61; Trial Transcript Vol. 5, pg. 812-13.) Dr. Einwohner followed up with the utilization management nurse to ensure Plaintiff's case was scheduled for collegial review discussion. (Trial Transcript December 12, 2019, pg. 37.) This collegial review resulted in a renal ultrasound.

When Dr. Einwohner saw Plaintiff on February 8, 2016, she wrote "case for collegial Wed." (Plaintiff's Exhibit 61 at 59.) The case was discussed in collegial on February 10, 2016, and Plaintiff was approved for urology. (Trial Transcript Vol. 5, pg. 820; Defendants Exhibit 1, pg. 1074.) Dr. Einwohner verified with the utilization management nurse after the February 10, 2016, collegial review that Plaintiff was approved for urology and cystoscopy and CT. (Trial Transcript December 12, 2019, pg. 50-51.)

Plaintiff's deliberate indifference claim questioned Defendants' clinical judgment, argued they could have done more in a shorter timeframe, and alleged they ordered the wrong diagnostic test. However, both took actions to move Plaintiff from symptoms to diagnosis. The quality of care is for state malpractice cases. *See Estelle*, 429 U.S. 97; *Whiting v. Wexford,* 839 F.3d 658 (7th Cir. 2016); *Duckworth v. Ahmad,* 532 F.3d 675 (7th Cir. 2008); (Trial Transcript, Vol. 2, pg. 393) (Dr. Metwalli says whether to order an ultrasound involves exercise of clinical judgment).

As argued more fully below, absent the erroneous admission of the *Lippert* reports, Plaintiff lacked evidence of deliberate indifference by Wexford policymakers to a known or obvious risk its policy would lead to constitutional violations. Instead, the evidence showed Wexford's utilization management department approved all requests and that of the alleged 207 day delay between first presentation and July 19, 2016, surgery, the total time it took for Wexford to receive and approve the numerous requests was just 23 days. The balance was attributable to scheduling approved services through outside providers.

**C.      Defendants Are Entitled to Judgment As a Matter of Law On Compensatory Damages for Loss of a Normal Life/Decreased Life Expectancy and Future Medical Care and Supplies**

Plaintiff failed to prove these elements of damages and Defendants are entitled to judgment as a matter of law. Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001). Compensatory damages must be rationally related to the evidence. *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009).

Over Defendants' pretrial Motion in Limine (doc. 170) and arguments at trial (Trial Transcript Vol. 7, pg. 1223), the Court allowed Plaintiff to seek damages for decreased life expectancy and future medical care and supplies, despite no evidence to support these damages.

The testimony on life expectancy was entirely speculative and undeveloped, amounting to the proposition that earlier cancer diagnosis generally leads to better overall survival. (Trial Transcript, Vol. 2, 385-86.) However, Dr. Metwalli gave no opinion to a reasonable degree of medical certainty that an earlier diagnosis for Plaintiff would have had any impact on his life expectancy. Plaintiff had to prove this through evidence of life expectancy at various cancer stages and testimony to a reasonable degree of medical certainty Plaintiff could have been treated more successfully at an earlier stage. *See e.g., Hemminger v. LeMay*, 2014 IL App (3d) 120392 (Ill. App. Ct. 3d Dist. January 21, 2014); *Holton v. Memorial Hospital* 176 Ill. 2d 95, 107, 679 N.E.2d 1202 (1997). Plaintiff produced no such evidence. The jury should not have considered this element of damages and judgment as a matter of law is required.

Similarly, the jury awarded Plaintiff $300,000 for future medical care and supplies without evidentiary support. Plaintiff introduced no evidence of (1) the cost of medication Plaintiff is taking or (2) how long he is expected to live based on actuarial tables or other evidence. Plaintiff's counsel acknowledged guessing in closing argument when asking for $1,800,000 in future medical expenses. (Trial Transcript, Vol. 7, pg. 1330.) The jury should not have considered this element of damages and judgment as a matter of law is required.

**D.    Dr. Nawoor, Dr. Einwohner, and Wexford are Entitled to Judgment as a Matter of Law on Punitive Damages**

The evidence was insufficient to support an award of punitive damages. Punitive damages are intended to punish reprehensible conduct. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001). Punitive damages are permissible under the U.S. Constitution, but "there are procedural and substantive constitutional limitations on these awards." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Courts should be especially concerned by the award of punitive damages because "[a]lthough these awards

serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding." *Id.* at 417. For Eighth Amendment 42 U.S.C. § 1983 claims, a plaintiff must show Defendant's conduct was "motivated by evil motive or intent, or [that] it involve[ed] reckless or callous indifference to the federally protected rights of others" to recover punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, no evidence existed Defendants were motivated by evil motive or intent, or engaged in callous or reckless indifference to Plaintiff's Constitutional rights. As argued more fully *supra,* Defendants are entitled to judgment as a matter of law on the Eighth Amendment claims. They are similarly entitled to judgment as a matter of law on punitive damages, as the standards are the same. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004).

## II.    DEFENDANTS ARE ENTITLED TO A NEW TRIAL

**A.    Legal Standard**

A party may move for a new trial within 28 days of judgment. Fed. R. Civ. Pro. 59. A new trial may be granted where the "verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid-America Tablewares v. Mogi Trading Co.*, 100 F.3d 1353, 1368 (7th Cir. 1996). A motion for a new trial should be granted where "the verdict is against the manifest weight of the evidence or if a prejudicial error occurred." *Romero v. Cincinnati Inc.,* 171 F.3d 1091, 1096 (7th Cir. 1999). The introduction of inadmissible evidence at trial requires a new trial if that error amounted to "prejudicial error," and the issue was preserved through a timely objection. A prejudicial error is

one that had a "substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

## B.    The Court's Evidentiary Rulings Denied Defendants a Fair Trial

Even if an evidentiary ruling is erroneous, a new trial is warranted "only if the error had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.,* 666 F.3d 422, 440 (7th Cir. 2012) "Where there are several errors, each of which is harmless in its own right, a new trial may still be granted if the cumulative effect of those otherwise harmless errors deprives a litigant of a fair trial." *Jordan v. Binns*, 712 F.3d 1123, 1137 (7th Cir. 2013); *see also Christmas v. City of Chi.*, 682 F.3d 632, 643 (7th Cir. 2012).

### 1.    Admission of the *Lippert* Reports Was Error

The Court, over Defendants' pretrial Motion in Limine (doc. 170) and trial objections, admitted two expert reports from an unrelated case, *Lippert v. Godinez,* NDIL 10-4603. (*See* Plaintiff's trial Exhibits 193-194.) This was error and unfairly prejudiced Defendants. Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid . 403 advisory committee's notes on 1972 Proposed Rules (cited in *Old Chief v. United States*, 519 U.S. 172, (1997)). "The amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. '[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012).

First, the Puisis report from *Lippert* is irrelevant to notice. The Third Amended Complaint alleged events between December 2015 and May 4, 2017. Doc. 72. The Puisis report

is dated October 2018. (*See* Plaintiff's exhibit 193.) The Court admitted the 2018 Puisis report for notice to Wexford "that court-appointed experts had reported systemic problems with the process for obtaining offsite diagnostic tests and offsite care, the same issues in this case." Doc. 190 at 3.   Defendants argued that opinions from 2018 could not serve as notice for events that preceded it.   Counsel stated: "Again there's one from 2018 [Puisis], one from 2014 [Shansky]. The one from 2018 [Puisis] can't be notice of events that occurred in 2015, 2016, 2017." (Trial Transcript, vol. 3, pg. 418.)   Plaintiff conceded notice was not appropriate and responded: "The second report, the 2018 report, *is reviewing the conduct in the 2015 to 2017 time which is the relevant period here*." (Emphases added).

In its Order denying Defendants' Motion in Limine, the Court acknowledged the Puisis report was "*authored after the events in this case*" but stated "*in part covered the relevant time here*." (Emphases added).   Doc. 109 at 2.   The Court acknowledged the 2018 Puisis report provided no notice to Wexford in 2015 or 2016 but instead was offered to retrospectively critique Wexford's conduct in 2015, 2016, and 2017---in other words, as substantive criticism of Wexford's actions, even though precedent forbids such use.

Second, substantive use of the *Lippert* reports has been uniformly rejected. *Diaz v. Chandler*, 2016 U.S. Dist. LEXIS 35450 (N.D. Ill. Mar. 18, 2016).   The Seventh Circuit favorably cited *Diaz* in *Wilson v. Wexford Health Sources, Inc*, 932 F.3d 513, 522 (7th Cir. 2019), when it noted that numerous plaintiffs had attempted to introduce the 2014 *Lippert* report but it had "been excluded each time as inadmissible hearsay." *See also Gaston v. Ghosh*, 2017 U.S. Dist. LEXIS 195234 (N.D. Ill. 2017).

To support admitting the *Lippert* reports for notice, the Court cited *Daniel v. Cook Cnty.*, 833 F.3d 728 (7th Cir. 2016).   *Daniel's* dicta is distinguishable.   First, Cook County was a party

to the litigation from which the DOJ report, consent decree, and monitor report arose and had opportunity to contest the findings and conclusion within that litigation before ultimately arriving at a consent decree with a monitor. Here, Wexford was dismissed from *Lippert* before either the Shansky or Puisis reports were filed. In its Rule 706 Orders appointing Shansky and Puisis, the *Lippert* Court prohibited them from testifying in other matters. *Lippert,* Docs. 244, 593. Defendants had no ability to challenge the *Lippert* reports, providing Plaintiff with unassailable, substantive, hearsay expert testimony.

While the court admitted the *Lippert* reports for "notice," Plaintiff improperly used the reports as substantive expert testimony. *See* Fed. R. 403. Exacerbating the prejudice, Plaintiff repeatedly used highly inflammatory language from the Puisis report: "There was no improvement since the first Court's expert report. *Our opinion is that the specialty care process of collegial review is a patient safety hazard and should be abandoned until such time that patient safety is ensured*." (Emphases added). (Plaintiff's Exhibit 193, pg. 64.) Plaintiff's counsel repeated the inflammatory substantive conclusion from the Puisis report three times during cross examination of Dr. Ritz, (Trial transcript, vol. 5, p. 744-746, 753, 831) and three times in closing argument. (Trial Transcript, vol. 7, p. 1312, 1330-31, 1359.) The Court compounded the prejudice by vouching for the *Lippert* reports' reliability by erroneously taking judicial notice in front of the jury. (Trial Transcript, vol. 5, p. 743.) "Notice" was Plaintiff's stated reason for introducing the after-the-event report, but the report was notice of nothing in 2015 and 2016, and Plaintiff used the farcical "notice" argument to infect the entire trial with inadmissible, highly prejudicial, substantive evidence. Given that Defendants could not depose Shansky or Puisis, or challenge their conclusions or the bases for their conclusions, Defendants were denied a fair trial.

Further, the prejudice resulting from improper admission of the *Lippert* reports was "substantial enough to deny [Wexford] a fair trial." *Wilson*, 25 F.3d at 581. In addition to inflaming the jury, the improper admission of the *Lippert* reports is inextricably tied to the jury's finding for Plaintiff on the *Monell* claim, as it was the only evidence supporting the *Monell* element of corporate deliberate indifference. Plaintiff's closing argument focused on Wexford's knowledge of the *Lippert* reports. (Trial Transcript, vol. 7, p. 1312; 1330-31, 1359.) Without the *Lippert* reports, Plaintiff lacked evidence of an unconstitutional corporate policy or deliberate indifference by Wexford policymakers to that policy, eliminating any argument that their admission was harmless. Wexford is entitled to a new trial for this reason alone.

### 2. The Court Impermissibly Allowed Plaintiff to Argue His Cancer Metastasized Under Defendants' Care

In Plaintiff's rebuttal argument, Plaintiff argued with no evidentiary basis Plaintiff's cancer metastasized after Defendants allegedly failed to diagnose it. "Statements made during closing argument must be plainly unwarranted and clearly injurious to constitute reversible error." *Gruca v. Alpha Therapeutic Corp.,* 51 F.3d 638, 644 (7th Cir. 1995). The oncologists testified that kidney disease with liver metastasis is non-curable. (*See* Trial Transcript Vol. 2, p.390; Trial Transcript Vol. 6, pg. 937, 950-51.) Therefore, the key question was whether Plaintiff's cancer metastasized from his kidney to his liver after he presented to Defendants in December 2015. Plaintiff produced no evidence the liver metastasis occurred after December 2015. Instead, Plaintiff's oncology expert testified metastasis pre-dated Defendants' care by several years. (Trial Transcript, Vol. 2, pg. 382.) Defendants' oncologist, Dr. Kosierowski, agreed. (Trial Transcript Vol. 6, pg. 937.) The evidence established Plaintiff had incurable metastatic disease when he first presented to Defendants in December 2015.

Nonetheless, Plaintiff waited until rebuttal to make this improper argument:

They imposed all this delay during the critical period of diagnosis.
*And the medical evidence shows you, the medical evidence that's real as opposed
to the speculative medical evidence shows you that he gets metastatic disease
during that period.*
MR. RUPCICH: Object to facts not in evidence on that, Judge.
THE COURT: The objection is overruled. (Emphases added). (Trial Transcript,
Vol. 7, pg. 1365.)

The prejudice resulting from this unfounded argument is both traceable and pervasive.

The jury awarded Plaintiff $100,000 for loss of normal life/diminished life-expectancy, without

an expert stating his life expectancy was diminished[12] and $300,000 for future medical care,

despite the fact future medical care was required irrespective of Defendants' actions.    The

argument created a false, sympathetic impression for the jury—that Plaintiff could have been

cured had Defendants diagnosed his condition earlier.    No expert said so.    Dr. Metwalli said

otherwise, concluding that Plaintiff's disease was incurable a year or two before December 2015.

When the Court overruled Defendants' objection, it confirmed to the jury an incorrect view of

the evidence on a vitally important point.    The jury's damage award for diminished life

expectancy and future medical supplies was unsupported by the evidence, resulted from the

prejudicial argument of Plaintiff's counsel and the Court's improper ruling on Defendants'

objection, and warrants a new trial.    Doc. 180.

### 3. The Court Erroneously Admitted Character Evidence Against Dr. Nawoor Without Analyzing the Probative Value or Prejudicial Impact

Character evidence is not admissible to prove that on a particular occasion the person

acted in accordance with the character.    Federal Rule of Evidence 404(b) also prohibits evidence

of a specific bad act to prove a person's character to show that on a particular occasion the

---

[1] The Court allowed Plaintiff's counsel to improperly bolster the diminished life expectancy claim by letting counsel directly address the jury during evidence to "introduce" Plaintiff's elderly father, who was not a witness, in an obvious attempt to garner sympathy and suggest that Deans live to an old age,  Trial Transcript, Vol. 2, pg. 201-203.
[2] The Court also allowed Plaintiff, a lay person, to testify over objection that his life expectancy was going down every day he did not have surgery.  Trial Transcript, Vol. 2, pg. 190.

person acted in accordance with the character. All evidence is inadmissible where the prejudicial effect of the evidence "substantially" outweighs its probative value. Fed. R. Evid. 403. The Seventh Circuit has outlined a specific inquiry to be conducted before admitting "other act evidence" *Burton v. City of Zion,* 901 F.3d 772, 778-79 (7th Cir. 2018).

Defendants moved in *limine* to exclude inadmissible character evidence under Rule 404(b). Doc. 124 at 10. The Court denied the motion with leave to renew at trial. Doc. 152 at 8. On multiple occasions during trial, the Court without explanation allowed Plaintiff to introduce irrelevant character evidence suggesting Dr. Nawoor was a bad and inattentive doctor in instances unrelated to Plaintiff. *See* Plaintiff's exhibit 56 (Dr. Nawoor disciplined for sleeping); (Trial Transcript, December 11, 2019, pg. 168; Trial Transcript, Vol. 5, pg. 876) (Dr. Nawoor generally did not follow rules). Most harmfully, the Court admitted an email and allowed testimony from Nurse Mincy in which she criticized Dr. Nawoor's clinical skills in treatment of specific patients. (Plaintiff's Exhibit 395; Trial Transcript Vol 5, pg. 876-86.)

The Court failed to conduct the required *Burton* analysis to justify how this evidence was relevant other than to improperly suggest Dr. Nawoor's propensity to be an inattentive and poor clinician, stating only "the objection is overruled." This evidence had no probative value, was highly prejudicial, and introduced solely to prejudice the jury against Dr. Nawoor. Its admission denied Dr. Nawoor the ability to have his case decided on the merits and allowed the jury to decide the case on improper character evidence.

### 4. The Court Erred in Admitting Plaintiff's Hearsay Calendars

During Plaintiff's testimony, the Court admitted Plaintiff's exhibits 1-4, which were Plaintiff's calendars for 2014, 2015, 2016, and 2017. These calendars are hearsay without exception improperly admitted for the truth of their contents. Fed. R. Evid. 801(c). Plaintiff

attempted to lay the foundation for the 2014 calendar as a business record. (Trial transcript, Vol. 2, pg. 48-49.) The calendars are not admissible under the business record exception to the hearsay rule, as Plaintiff was not engaged in a regular business activity as required by Federal Rule of Evidence 803(6). On cross examination, Plaintiff acknowledged not writing entries in his calendar contemporaneously and omitting things at his discretion. (Trial transcript, Vol. 3, pg. 295-96.) Similar colloquies occurred when the Court admitted Plaintiff's 2015, 2016, and 2017 calendars. (Trial transcript, Vol. 2, pg. 73-74; Vol. 3, pg. 137-38; 232-33.) Defense counsel argued that reading from a calendar lacked foundation of personal knowledge under Federal Rule of Evidence 602. The Court overruled the objection without comment. (Trial transcript, Vol. 2, pg. 74.) *See Collins v. Kibort*, 143 F.3d 331, 337-38 (7th Cir. 1998) (trial court erred in allowing the plaintiff to rely on his hearsay diary while testifying).

The prejudice in admission of these calendars was manifest. After their admission, Plaintiff was permitted to read from his calendars, rather than testifying from memory about the events, his symptoms, and his encounters with Defendants. When he was questioned on cross examination without the aid of his calendars, Plaintiff agreed he had testified in his deposition, contrary to his trial testimony, that he had experienced no blood clots up to March 10, 2016. (Trial transcript, vol. 2, pg. 297.) Plaintiff could not say whether he had signed up for nursing sick call between December 2015 and February 24, 2016, and disclaimed the accuracy of his calendars. (Trial transcript, vol. 2, pg. 295.) This was inappropriate and prejudicial.

### 5. The Court Erred in Allowing Plaintiff to Testify to Statements of A Non-Defendant Physician

Plaintiff was allowed, over objection , to testify to hearsay statements of Dr. Severino that Plaintiff needed to have surgery "right away" and "as soon as possible." (Trial Transcript, vol. 2, p. 102-103.) Admission of these hearsay statements under Federal Rule 803(4) was error.

13

Rule 803(4) is an exception to the hearsay prohibition for comments made *to* medical professionals for the purpose of diagnosis or treatment, not statements *by* medical professionals *White v. Illinois*, 502 U.S. 346, 355-56, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992); *Martin v. Nicklow*, 2013 U.S. App. LEXIS 1521 (7th Cir. 2013); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996).

Defendants were prejudiced by the admission of these statements as Defendants' position was upon cancer diagnosis, Dr. Severino dictated the timeframe for surgery. Plaintiff's hearsay testimony was the only "evidence" Dr. Severino viewed the surgery as urgent. Evidence showed Dr. Severino called Taylorville Correctional Center on April 14, 2016 (the date of diagnosis) and reported "situation non emergent" and that "plans are being set in motion." (Defendants' Exhibit 1, pg. 1361; Trial Transcript Vol. 5, pg. 589.) Dr. Severino did not testify the surgery was urgent or emergent, instead focusing on the need to properly go through the process. (Severino deposition, pg. 50.)

Given Defendants' reliance on Dr. Severino's care plan, Plaintiff's hearsay representation that Dr. Severino believed surgery was urgent created an unsupported and erroneous impression that someone other than Dr. Severino dictated the timing for surgery. This unsupported inference prejudiced Defendants.

### 6. The Court Allowed Plaintiff's Expert Bruce Barnett to Give Undisclosed Opinion Testimony that Lacked Evidentiary Foundation

Plaintiff called Rule 26(a)(2)(B) expert Dr. Bruce Barnett, who was accepted as an expert in family medicine and correctional health care. (Trial Transcript, Vol. 4 at 498.) First, the Court allowed Dr. Barnett to give undisclosed opinion testimony on the standard of care for presenting a patient with an advanced directive. (Trial Transcript, vol. 3, pg. 548-550.) Beyond that, Barnett conceded he had no foundation to offer such an opinion as he admitted not knowing

14

"all the circumstances." The Court did not require Plaintiff to identify where in Barnett's report this opinion was disclosed and overruled the objection without discussion. The admission of this testimony was prejudicial to Defendants because (1) they could not counter it through expert testimony, having no notice of the opinion until Dr. Barnett was on the stand, and (2) Plaintiff used the fact Defendants discussed the advanced directive with him in November 2016 to suggest Defendants' true goal was to get Plaintiff to refuse treatment so they could save money on chemotherapy medication. (Nawoor testimony, pg. 157-58.) Defendants could not respond with expert testimony by a witness who had reviewed Plaintiff's entire medical record, and instead had to rely on Nurse Galvin to explain Plaintiff had been given an advanced directive at the hospital at the time of surgery. (Trial Transcript, vol. 5, pg. 850.)

Second, Dr. Barnett was permitted over objection to testify on emotional injury and growth of cancer, despite no foundation for these opinions. (Trial Transcript, vol. 3, pg. 548-550.) "[A] medical degree does not qualify a doctor to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Courts must evaluate each conclusion to determine whether the purported expert "has the adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617. Here, Dr. Barnett's background and qualifications included nothing about experience diagnosing or treating mental illness or emotional injuries, particularly related to a cancer diagnosis. (Trial Transcript Vol 4, pg. 486-498.) Moreover, Dr. Barnett's background and qualifications elicited prior to qualifying as an expert did not touch on his knowledge or experience in cancer growth kinetics. *Id.*

Third, the Court erroneously allowed Dr. Barnett to testify to Defendants' mental states. (Trial Transcript, vol. 3, pg. 500-06.) Expert opinions as to the defendants' state of mind and legal conclusions that determine the outcome of a case are inadmissible. *See, e.g., Good*

15

*Shepherd Manor Found, Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003). The Court's jury instruction for deliberate indifference required Plaintiff to prove Defendants were aware Plaintiff had a serious medical need and consciously failed to provide treatment. Doc. 182 at 27. Barnett's testimony amounted to *telling* the jury Defendants' state of mind. *Woods v. Lecureux*, 110 F.3d 1215, 1219-1221 (6th Cir. 1996); *West by & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997). Barnett's testimony on Defendants' state of mind was improper and usurped the jury's function, denying Defendants a fair trial.

Certain of the above rulings are sufficient, standing alone, to warrant a new trial. But the cumulative effect of these rulings was devastating, and denied Defendants their right to a fair trial. The cumulative impact of the inflammatory and irrelevant *Lippert* reports; the improper closing argument ratified by the Court; the character evidence admitted against Dr. Nawoor; the admission of inadmissible hearsay statements and documents; and the admission of undisclosed and inadmissible expert testimony denied Defendants a fair trial. A new trial is warranted.

## E.     The Court Erred in Its Jury Instructions

"The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." *Leonardi v. Loyola Univ.,* 168 Ill. 2d 83, 100 (1995). An absence of jury instructions, or erroneous jury instructions, which may have misled the jury on a central question of fact can impermissibly affect the outcome of ] trial. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 604-05 (2019). An error which substantially affects the outcome of a trial is prejudicial error and necessitates a new trial. *O'Neal*, 513 U.S. at 435.

### 1.  The Court's Deliberate Indifference Instruction was Error

The Court's deliberate indifference instruction was error because it told the jury it could find Defendants deliberately indifferent if Defendants "consciously failed to take reasonable measures to provide treatment for the serious medical need."  Doc. 182 at 27.    Deliberate indifference, as defined in *Farmer*, 511 U.S. at 837, occurs when a prison official "knows of and disregards an excessive risk to inmate *** safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." The official must "demonstrate something approaching total unconcern for his [the inmate's] welfare in the face of serious risks,"  or must demonstrate a "conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), citing *Duckworth v. Franzen*, 780 F. 2d 645, 653 (7th Cir 1985); *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003); *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991))

Here, the given instruction told the jury that failure to take reasonable measures constituted deliberate indifference.   As *Duane, Farmer*, and *Gibbs*  establish, failing to act reasonably is a negligence standard, not a deliberate indifference standard.   Defendants' instruction that included language that "Defendants consciously disregarded an obvious and excessive risk to Plaintiff's health," was an accurate statement of the law.  Doc. 134 at 3; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), citing *Farmer*, 511 U.S. at 837.

The Court's deliberate indifference instruction also erroneously told the jury it could infer "Defendant consciously failed to take reasonable measures if Defendant's action or failure to act was such a substantial departure from accepted professional judgment, practice or standards that it showed a complete abandonment of medical judgment." Doc. 183 at 28. This improperly merged deliberate indifference and negligence standards, tying the exercise of professional

judgment to a defendant's action, rather than to the actual knowledge component. The Seventh Circuit has explained that one may infer *actual knowledge of a substantial risk of serious harm* if a professional's actions were such a substantial departure from accepted professional judgment that it showed a complete abandonment of professional judgment. *See Petties v. Carter*, 836 F.3d 722, 728-29 (7th Cir. 2016); *Zaya v. Sood*, 836 F.3d 800, 804-05 (7th Cir. 2016). Here, the Court erroneously refused Defendants' instructions 2, 3, and 5  and instructed the jury it could infer deliberate indifference from lack of reasonable measures, a negligence standard.

### 2.  The Court Erred in Refusing Defendants' Issue Instructions on Professional and Institutional Negligence

In the 3rd Amended Complaint, Plaintiff alleged professional negligence against Dr. Nawoor and Dr. Einwohner and institutional negligence against Wexford. Doc. 72. The Court refused Defendants' tendered Illinois Pattern Jury Instruction 20.01, which identified the issues made by the pleadings on the allegations of professional and institutional negligence. Doc. 134 at 13, 14, 18. Instead, the Court gave Plaintiff's instruction, which omitted all specific allegations of negligence against each defendant which plaintiff had the burden of proving. Doc. 183 at 33, 35. This ruling violated the directions in Instruction 20.01 to "set forth … those allegations of the complaint as to the negligence of the defendants which … are supported by the evidence." This ruling also violated Illinois law, which "*requires* that the allegations of the complaint be set forth [in the issues instruction] unless they have been withdrawn, ruled out by the court, or are not supported by the evidence." *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 406 (1st Dist. 2007); See also, I.P.I No. 20.01, Notes on Use.

The failure to give Defendants' issues instruction left the jury with no idea for which conduct they were being asked to hold Defendants responsible. As it now stands, the parties, and the Court have no idea what conduct the jury found violated Illinois' law. This renders

impossible a determination of the sufficiency of the evidence on professional or institutional negligence, since the jury was not instructed on what it was considering and since the parties and the court cannot know for which acts Defendants were held responsible. Failing to give a mandatory instruction on the issues on which Plaintiff had the burden of proof did not "fairly, fully and comprehensively" inform the jury of the principles it was required to consider. This error alone warrants a new trial.

**C.    The Verdict Against Nawoor, Einwohner, and Wexford on Eighth Amendment Claims Was Against the Manifest Weight of the Evidence**

In the event the Court determines Defendants Nawoor, Einwohner, and Wexford are not entitled to judgment as a matter of law, Defendants should be granted a new trial because the verdict was against the manifest weight of the evidence for the same reasons.

## III.    <u>MOTION FOR REMITTITUR</u>

**A.    $500,000 Compensatory Damages for Emotional Pain and Suffering Was Excessive and Must be Remitted**

In determining whether remittitur is appropriate, the Court considers whether the award is "monstrously excessive," whether there is a rational connection between the award and the evidence, and whether the award is roughly comparable to awards in similar cases. *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016). The slighter the emotional distress, the lower the ceiling on a reasonable award of damages. *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1229 (7th Cir. 1995). Seventh Circuit has also cautioned that emotional distress damages must be proportionate to injury. *Avitia.*, 49 F.3d 1219, 1229 (7th Cir. 1995).

Five hundred thousand dollars for emotional pain and suffering is excessive, disproportionate to the $100,000 damage award for physical pain and suffering, and out of line with awards in similar cases. No expert testimony separated the emotional distress of having

cancer from emotional distress inflicted by Defendants.  No mental health professional testified to any emotional injury.  Plaintiff relied on his and his family's testimony he was frustrated and scared between when he experienced hematuria and was diagnosed with cancer.  (Trial Transcript Vol. 2, pg. 140, 147, 148, 151.)  While Plaintiff testified he was scared following his diagnosis, this was not an injury Defendants' proximately caused.   (Trial Transcript Vol. 2, pg . 171-72, 189.)

An award of $500,000 for fear and frustration between December 23, 2015, and April 14, 2016, is excessive and disproportionate.  Exhibit A; *see Bynes v Yockey,* Cook County 16L-1844 ($130,000 past emotional distress for missed diagnosis of anal cancer with lung metastasis, resulting in anal and perianal radiation burns, anxiety, and depression); *Estate of Blake v BroMenn Physicians Management Corp.,* McLean Co. 03L-45 ($125,000 for emotional distress for delayed diagnosis of lung cancer); *Horney, v. Carle Clinic Association,* Champaign Co. 00L-303 ($218,000 emotional distress for nine-month delay in diagnosing lung cancer taking 80% chance of survival to 0%); *Estate of Dohrer, v Ade,* Rock Island Co. 98L-120 ($26,783 emotional pain and suffering for failure to follow-up on abnormal diagnostic test showing abnormal kidney, resulting in metastasis and death); *Ward v United States of America*, NDIL 99C-6433 ($785,000 emotional distress for delayed colon cancer diagnosis that took cancer from treatable to metastatic); *Bernstein v Browdy, M.D.* Cook Co. 94L-6274 ($75,000 emotional distress for delayed diagnosis of prostate cancer taking it from 80% treatable to terminal).

The Court must grant a remittitur of the excessive $500,000 award to something equal to or less than the damages awarded for pain and suffering.

### B. The Punitive Damage Award Against Wexford Was Unconstitutionally Excessive

The jury's award of $10,000,000 in punitive damages was unconstitutionally excessive and must be remitted. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Campbell*, 538 U.S. at 416. The Supreme Court has established three guideposts a court should consider in reviewing the size of a punitive damages award. First, a court must consider "the degree of reprehensibility of the defendant's misconduct." *Id.* at 418. Next, a court must examine "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *Id.* The final factor to consider is "the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* The Court has "mandated appellate courts to conduct *de novo* review of a trial court's application of [these factors] to the jury's award." *Id.*

The first guidepost, reprehensibility, is also the most important. *Saccameno*, 2019 U.S. App. LEXIS 35550, *26. The Seventh Circuit identified five factors relevant to reprehensibility:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.* at *27.

Evidence showed Wexford approved everything requested through its collegial review process. This is not a situation where treating physicians and specialists recommended tests, evaluations, and medications that Wexford denied. (Trial Transcript, Vol. 5, pg. 748.) Wexford arranged for Plaintiff to have a complicated nine-hour surgery and comprehensive management by a skilled oncologist. Rather than showing malice toward Plaintiff, at most, Plaintiff experienced brief delays common in the managed care healthcare system.

When considering the second guidepost, ratio of punitive to compensatory damages, "few awards exceeding a single-digit ratio 'to a significant degree' will satisfy due process." *Id.* at *31 (quoting *Campbell*, 538 U.S. at 425). "Higher ratios may be appropriate when there are only small damages, and conversely, '[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit.'" *Id.* (quoting *Campbell*, 538 U.S.at 425).

The punitive damages to compensatory damages ratio is 10:1, far in excess of what comports with due process. The compensatory damages were substantial at $1,000,000. This is not an instance where a higher ratio of punitive to compensatory damages may comport with due process because a particularly egregious act resulted in a small amount of compensatory damages. *See State Farm*, 538 U.S. at 425. A ratio of 10 to 1 in a case where the jury found Plaintiff suffered injury of $1,000,000 furthers no legitimate purpose and constitutes an arbitrary deprivation of property in violation of the Fourteenth Amendment.

The third guidepost requires a court to consider the size of the punitive damages award to comparable cases. *Campbell*, 538 U.S. at 428. A punitive damages award, like the one here, that dwarfs a comparable civil fine, absent especially reprehensible conduct, is suspect. *See Saccameno*, 2019 U.S. App. LEXIS 35550 at *37-39 (finding that a punitive damage award 60 times larger than a corollary civil penalty was excessive); *Roe v. Elyea*, CDIL 06-3034 ($2,000,000 punitive remitted to $20,000 to match $20,000 compensatory for denial of care for hepatitis C); Exhibit B; *Fox v Barnes* NDIL 09C-5453 ($11 million compensatory and $1 million punitive in denial of medication leading prisoner to suffer brain damage); *Jose-Nicolas v Berry,*NDIL 15CV-964 $1,000 compensatory and $200,000 punitive against correctional officer who beat prisoner and denied him medical care); *Williams, Sr. v Patel*, 96CV-1369 ($1 million

compensatory and $1 million punitive against doctor who provided inadequate medical care to inmate leading to loss of eye); *Estate of Farver v Correctional Medical Services of Illinois Inc.,* 00C-6010 ($250,000 compensatory and $1.5 million punitive for failure to prevent jail suicide) *Estate of Cobige v City of Chicago,* 06C-3807 ($5,000,000 compensatory and $4,000 punitive for denial of medical care leading to death).

To satisfy due process, the Court must at least grant a remittitur of the punitive damages award to be proportionate and at most a 1:1 ratio with its remitted compensatory damage award.

## IV.   **MOTION FOR SETOFF**

A motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict. *See Zivitz v. Greenberg,* 279 F.3d 536, 539 (7th Cir. 2002). Here, the bases of Eighth Amendment liability Plaintiff sought from co-defendant Lisa Mincy were identical to the bases sought against Defendants Nawoor, Einwohner, and Wexford. Doc. 153. Co-Defendant Mincy settled for $10,000. The judgment must be amended to offset $10,000 to prevent double recovery.

WHEREFORE, for the above reasons, Defendants request this Court grant their Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for New trial, or in the Alternative Motion for Remittitur, and their request for set-off, or such further relief deemed appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph N. Rupcich
    Attorneys for Defendant, DR. ABDUR
    NAWOOR, DR. REBECCA EINWOHNER,
    and WEXFORD HEALTH SOURCES, INC.

Joseph N. Rupcich
ARDC No. 6283899
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
jrupcich@cassiday.com

## CERTIFICATION OF COMPLIANCE WITH CDIL-LR 7.1(B)(4)

I certify this Memorandum of Law complies with the type volume limitation in Central

District of Illinois Local Rule 7.1(B) in that it contains 6,869 words and 37,437 characters.

/s/ Joseph N. Rupcich

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2020, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Craig C. Martin
William Strom
Chloe Holt
Joel Pelz
Nathanial Wackman
Jenner & Block LLP
353 North Clark Street
Chicago IL 60654

/s/ Joseph N. Rupcich

9381745

26