Client: 19344-042447    WELCOME, JOSEPH

People | Enter search terms - Exact match

COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES

**Publication: Cook County Jury Verdict Reporter Published: 1/3/2020**

**(NNN 11/1) MEDICAL MALPRACTICE--ANAL CANCER ALLEGEDLY MISDIAGNOSED AS HEMORRHOID (12C)**

*Donna Bynes, Christopher Bynes v Dr. Ranae Yockey, Advanced Women's Care Center S.C., Dr. Phillip Cacioppo, Phillip Cacioppo M.D. S.C.* 16L-1844 Tried Sep. 26-Oct. 24, 2019

**Verdict:** $1,700,000 to Donna Bynes v all defts ($150,000 past loss of normal life; $380,000 past pain & suffering; $130,000 past emotional distress; $300,000 future emotional distress; $70,000 disfigurement; $470,000 past medical expenses; $48,000 future medical expenses; $152,000 lost earnings); $0 to Christopher Bynes for loss of consortium.

**Judge:** James Michael Varga (IL Cook-Law)

**Pltf Atty(s):** Sharon L. Heath, Timothy W. Heath of Heath & Heath (Naperville, IL) R. Mark Maritote of R. Mark Maritote P.C. (Hanover Park, IL) for both pltfs DEMAND: $3,000,000 policies ASKED: $14,668,990

**Deft Atty(s):** Mary Kay Scott, Christopher A. Leach of Brenner, Monroe, Scott & Anderson (Chicago, IL) for Yockey, Advanced Women's Care Center S.C. (ISMIE) OFFER: none ; Marni R. Slavick, Michael F. Compton of Cunningham, Meyer & Vedrine (Chicago, IL) for Cacioppo, Phillip Cacioppo M.D. S.C. (ISMIE) OFFER: none

**Pltf Medl:** Dr. Ramji Rajendran (Radiologist), Dr. Gary Gordon (Oncologist), Dr. Blase Polite (Oncologist), Dr. Roger Hurst (Colorectal Surgeon), Dr. David T. Rubin (Gastroenterologist), Dr. Alkesh Patel (Neurologist), Dr. Susan Orhan (Ob/Gyn), Dr. Harvey Wolf, Psy.D. (Psychologist) for Donna Bynes

**Pltf Expert(s):** Dr. Neel Shah of Northwest Oncology P.C., 1001 Calumet Ave., Dyer, IN (219-924-8178) (Oncologist); Dr. Mark W. Gordon (General Surgeon); Dr. James Balducci (Ob/Gyn) for Donna Bynes

**Deft Expert(s):** Dr. Julie Jensen (Ob/Gyn); Dr. Alexander Hantel (Oncologist) for Dr. Ranae Yockey Dr. David Ondrula (Colorectal Surgeon); Dr. Andrew Agos (General Surgeon) for Dr. Phillip Cacioppo

**Facts:**

Deft obgyn Dr. Yockey was providing prenatal care to pltf during her pregnancy when pltf complained of persistent anal pain and bleeding on February 11, 2013. Prior to this visit, pltf had suffered a flare-up of her Crohn's disease earlier in her pregnancy and underwent an emergency ileotomy at University of Chicago Hospital in November 2012. Dr. Yockey diagnosed a one-inch rectal abscess and referred pltf F-34 to deft general surgeon Dr. Cacioppo at Alexian Brothers Ambulatory Care Center for incision and drainage of the mass. Dr. Cacioppo instead diagnosed a thrombosed 2-cm hemorrhoid and told her to return after she gave birth if it had not resolved by then. Pltf saw Dr. Yockey several times over the next three months and saw Dr. Cacioppo twice, including at the time of her C-section delivery on April 21. Dr. Yockey prescribed a hemorrhoid ointment on June 21. Dr. Cacioppo examined pltf on July 5, recommended a hemorrhoidectomy, and scheduled the procedure for July 25. Pltf canceled the surgery and decided instead to see another physician at U.C. who recommended a biopsy, which was done on August 22 and revealed invasive adenocarcinoma. The tumor had doubled in size and was diagnosed as Stage II or III cancer. Pltf required chemotherapy, radiation, and surgery, resulting in anal and perianal radiation burns, incontinence, neuropathy of hands and feet, anxiety, and depression. She subsequently developed metastasis to her lung which required a second surgery in November 2015 ($469,614 past medical expenses stipulated, $47,376 future medical expenses, $152,000 LT 2.3 years as a nurse stipulated). Pltf maintained she would not have needed the chemo/radiation if her condition had been diagnosed sooner. The defense contended both doctors complied with the standard of care, Dr. Yockey reasonably relied on Dr. Cacioppo to treat the anal mass, Dr. Cacioppo correctly diagnosed the condition as a thrombosed hemorrhoid, pltf's issues while under defts' care were related to her underlying Crohn's disease and pregnancy, and the condition depicted in August 22 photos was never present during prenatal and postnatal care. The defense further argued that the tumor started in the rectum before growing into the anal canal, pltf had a pre-existing anal stricture due to her Crohn's which prevented a digital exam of the rectum, the cancer would have been diagnosed in July if pltf had not canceled the hemorrhoidectomy surgery with Dr. Cacioppo because he would have sent the tissue for pathological analysis, and pltf's outcome and treatment would have been the same even if her cancer had been diagnosed earlier. This case was the subject of a Chicago Daily Law Bulletin article on November 1, 2019.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to

quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Lawyerport™ a division of Law Bulletin Media          Terms of Service    Privacy Policy    About Us    Site Map    Advertising    Contact Us    Help

Copyright© 2020 Law Bulletin Media. All rights reserved

Client: 19344-042447   WELCOME, JOSEPH

People    Enter search terms - Exact match

COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES

**Publication: Illinois Jury Verdict Reporter Published: 1/23/2009**

**(08 N/1) MEDICAL MALPRACTICE--DELAY IN CANCER DIAGNOSIS BLAMED FOR DEATH (12C)**

*Estate of Debbie Blake, deceased v BroMenn Physicians Management Corp., d/b/a Crossroads Medical Associates, BroMenn Healthcare* 03L-45 Tried Nov. 10-21, 2008

**Verdict:** $704,636 v all defts ($4,636 lost income; $250,000 medical expenses; $125,000 emotional distress; $125,000 pain & suffering; $200,000 loss of society)

**Judge:** G. Michael Prall (IL, McLean 11th Jud Cir)

**Pltf Atty(s):** James P. Ginzkey ASKED: $1,500,000

**Deft Atty(s):** Matthew J. Maddox of Quinn, Johnston, Henderson & Pretorius (Springfield, IL) for BroMenn Physicians Management Corp., Crossroads Medical Associates (ISMIE) OFFER: none ; Christopher L. Nyweide of Livingston, Barger, Brandt & Schroeder (Bloomington, IL) for BroMenn Healthcare (Self-Insured)

**Pltf Medl:** Dr. Paul Hakes (Family Practice), Dr. Steven Ingalsbe (Family Practice), Dr. Larry Sapetti (Family Practice), Robin Coady, O.D. (Optometrist), Mel French, Psy.D. (Psychologist)

**Pltf Expert(s):** Dr. Mark Iannettoni of University of Iowa Hospitals & Clinics, (No Calls Wanted), Iowa City, IA (Thoracic Surgeon); Dr. Finley W. Brown, Jr. (Family Practice)

**Deft Expert(s):** Dr. John Eckardt of Center for Cancer Care & Research, 12855 N. Forty Dr., Suite 200, St. Louis, MO (314-628-1210) (Oncologist); Dr. Mark Ferguson (Thoracic Surgeon); Dr. Gerald Suchomski (Family Practice); Dr. Jonathan Osborn (Family Practice) for both defts

**Facts:**
Sometime in 1998 or 1999, Debbie Blake first presented to Crossroads Medical Associates, a family practice clinic in El Paso, IL, complaining of shoulder pain. Over the next several years, the various doctors who saw her there diagnosed a variety of conditions including a torn rotator cuff, fibromyalgia, and arthritis and prescribed a variety of medications including pain relievers, anti-inflammatories, and antidepressants, none of which worked. In September 2001, when her pain had become almost unbearable, she was sent for an MRI which revealed a superior sulcus tumor, a non-small cell lung cancer, located at the apex of her lung and pressing on her brachial plexus. The MRI also revealed that the cancer had metastasized to her brain. The 42-year-old woman died in December 2001, survived by one adult son ($315,817 medl., $4,636 LT). Her estate claimed that the doctors who treated her were negligent in continuing to prescribe medications which did not work, failing to order x-rays or other diagnostic tests, and failing to refer the patient to a specialist when they could not determine what was causing her pain and successfully treat it. The defense contended that the delay in diagnosis did not affect the outcome. However, the estate maintained that non-small cell cancers are slow-growing and treatable; pltf's thoracic surgeon expert opined that the decedent may have had the tumor for as long as 10 years and that, had it been discovered earlier, she likely could have been cured. Drs. Hakes, Ingalsbe, and Sapetti were employees of the clinic who treated the patient at various times. They were originally named as defts and then voluntarily dismissed by the pltf; they testified as treating witnesses for the estate. The jury deliberated for approximately a day and a half.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Client: 19344-042447    WELCOME, JOSEPH

People ⌄  Enter search terms - Exact match

| COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES |

**Publication: Illinois Jury Verdict Reporter Published: 3/15/2002**

**(02 F/2) MEDICAL MALPR.--HOSPITAL HELD FOR DELAYED DIAGNOSIS OF LUNG CANCER (12C)**

*Robert Horney, Sharon Horney v Carle Clinic Association* 00L-303 Tried Feb. 11-15, 2002

**Verdict:** $2,842,000: $1,606,000 to Robert ($1,046,000 loss of normal life; $225,000 pain & suffering; $117,000 medical; $218,000 emotional distress); $1,236,000 to Sharon ($1,165,000 loss of companionship; $71,000 loss of services).

**Judge:** John R. DeLaMar (IL, Champaign 6th Jud Cir)

**Pltf Atty(s):** Steven K. Jambois of Kralovec, Jambois & Schwartz (Chicago, IL) for both pltfs DEMAND: $1,400,000 total ASKED: $2,400,000 - $5,500,000 total

**Deft Atty(s):** Thomas B. Borton of Livingston, Barger, Brandt & Schroeder (Champaign, IL) (Self-Insured; National Ben Franklin Insurance) OFFER: $350,000

**Pltf Medl:** Dr. Sohail Chaudry (Hematologist), Dr. Thomas Scaggs (Emergency Medicine), Dr. Christian Wagner (Family Practice), Dr. James Egner (Oncologist), Dr. Barbara Kammer (Radiologist) for Robert Horney

**Pltf Expert(s):** Dr. Donald K. Wood (Oncologist) for Robert Horney

**Deft Expert(s):** Dr. Jacob Bitran (Oncologist)

**Facts:**
Feb. 22, 1998, pltf M-70 was seen at the Carle Foundation Hospital emergency room with complaints of shortness of breath. A chest x-ray was taken at that time. The following day the x-ray was interpreted by radiologist Dr. Kammer as demonstrating a suspicious mass in the left lung, requiring careful follow-up. The x-ray report was relayed to the E/R department but was not followed up on until Nov. 28, 1998, when pltf returned to the E/R with vertigo. At that time, it was determined there had been no follow-up on the report. Defense for Carle Clinic admitted negligence for not following up on the report and that a nine month delay in diagnosing the lung cancer resulted. Pltf maintained that he initially had a stage IA non-small cell lung cancer that had an 80% chance of survival and cure. Pltf further maintained that the cancer metastasized to his brain as a result of the 9 month delay. When lung cancer metastasizes to a distant organ like the brain, pltf argued, the patient has Stage IV disease and close to a zero percent chance of survival. Deft maintained it was speculative as to when the brain metastasis took place, and that pltf's cancer could have metastasized prior to Feb. 1998 or even as a result of removal of the lung cancer in Feb. 1999. Defense contended pltf's lung cancer only went from Stage IA to IB as a result of the delay. Consequently, pltf had a loss of chance of survival in the range of 0-20% and this may not have had any impact on his outcome. Deft also maintained pltf's other health conditions (chronic obstructive pulmonary disease, heart disease) would have a limiting effect on his life expectancy. Pltf was alive at trial but could not testify in person because of his illness. He did testify by videotape and his wife (62) testified at trial.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Lawyerport™ a division of Law Bulletin Media    Terms of Service  Privacy Policy  About Us  Site Map  Advertising  Contact Us  Help

Copyright© 2020 Law Bulletin Media. All rights reserved.

https://www.lawyerport.com/research                                                    1/14/2020

Client: 19344-042447   WELCOME, JOSEPH

People   Enter search terms - Exact match

COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES

**Publication:** Illinois Jury Verdict Reporter **Published:** 3/15/2001

**(01 F/4) MEDICAL MALP:--PATIENT DIES OF CANCER AFTER LARGE KIDNEY OVERLOOKED (12C)**

*Estate of Marie Dohrer, deceased v Dr. Ralph Ade, Dr. David Ade* 98L-120 Tried Feb. 14-28, 2001

**Verdict:** $935,015 v Dr. Ralph Ade ($112,015 medl.; $344,000 pain & suffering; $165,000 loss of normal life; $41,000 LT; $273,000 loss of society to decedent's children; $26,783 emotional pain & suffering); Not Guilty v Dr. David Ade.

**Judge:** Ronald C. Taber (IL, Rock Island 14th Jd Cr)

**Pltf Atty(s):** Joel M. Goldstein, Daniel Galatzer of Joel M. Goldstein & Associates (Chicago, IL) DEMAND: $2,400,000 ASKED: $7,000,000 - $12,000,000

**Deft Atty(s):** Jack L. Brooks of Brooks & Trinrud (Rock Island, IL) for Dr. Ralph Ade (ISMIE) OFFER: RA $500,000 ; Eugene G. Doherty of Holmstrom & Kennedy (Rockford, IL) for Dr. David Ade (ISMIE)

**Pltf Expert(s):** Dr. Patrick Sullivan (Internist); Dr. Nicholas Vogelzang (Oncologist)

**Deft Expert(s):** Lawrence Luy, 1036 W. Stephenson, Freeport, IL (815-599-7740) (Internist) for Dr. Ralph Ade
Dr. Lawrence Luy, 1036 W. Stephenson, Freeport, IL (815-599-7740) (Internist) for Dr. David Ade

**Facts:**
Dec. 1994, pltf F-60 experienced left flank pain and went to see her regular physician, Dr. Ralph Ade. Dr. Ralph Ade was not available that day and pltf was seen by his son, Dr. David Ade, who shared office space with his father in Moline, IL. Both defts are internists. Dr. David Ade ordered an intravenous pyelogram (IVP) study be performed at a local hospital. The radiologist's report was received in the defts' office a few days later and indicated that one kidney was slightly larger than the other and raised the possibility of further studies being required. David Ade forwarded the report to his father. The patient claimed she was not notified of the IVP test result. The record reflected that the patient was "called" by Ralph Ade but did not reveal what he told her. The patient was diagnosed with metastatic kidney cancer in June 1997 and died in March 1998. Pltf claimed that both defts were negligent in failing to follow up on the results of the IVP. Ralph Ade admitted liability. David Ade contended he acted appropriately as a covering physician by ordering the IVP test and forwarding the results to the patient's regular physician, Ralph Ade. Pltf's counsel noted the judge allowed pltf to pursue a claim for emotional pain & suffering against Ralph Ade only. Pltf switched health insurers in 1996 and was denied coverage as a result of the IVP test result. Pltf claimed to have asked Dr. Ralph Ade about this and he reportedly told her he didn't know why she was excluded from coverage since she had always been healthy. The judge accepted pltf's contention that her heightened emotional suffering due to her lack of insurance coverage was a compensable element of damages.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms Conditions and Disclaimer, Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Client: 19344-042447                WELCOME, JOSEPH

People   Enter search terms - Exact match

COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES

**Publication: Cook County Jury Verdict Reporter Published: 12/22/2000**

**(SS 10/8) MEDICAL MALP.--CANCER--DIAGNOSIS DELAY SHORTENED LIFE EXPECTANCY (12C)**

*Robert Ward, Norma Ward v United States of America, d/b/a Hines VA Hospital* 99C-6433 Tried Sep. 14-22, 2000

**Verdict:** $2,929,416: $2,679,416 to Robert v both defts ($890,000 loss of normal life; $795,000 P&S; $785,000 emotional distress; $115,835 past and $48,000 future medl. expense; $14,581 past and $22,500 future wage loss; $9500 necessary help); $250,000 to Norma v both defts (loss of consortium).

**Judge:** James F. Holderman (USDC IL NE)

**Pltf Atty(s):** Mark L. LeFevour, Martin C. Kelley of Kelley, Kelley & Kelley (Schaumburg) for both pltfs
DEMAND: $4,000,000 total

**Deft Atty(s):** Eileen M. Marutzky, James P. Fieweger of U.S. Attorney's Office (Chicago) (Self-Insured)
OFFER: none

**Pltf Expert(s):** Dr. Keith Millikan (General Surgeon); Dr. Robert J. Havey (Internist) for Robert Ward

**Deft Expert(s):** Dr. Joseph P. Muldoon, 1000 Central #800, Evanston, IL (847-570-2565) (General Surgeon)

**Facts:**
Pltfs charge, in this Federal Tort Claims Act case, that doctors at Hines VA Hospital negligently failed to diagnose/treat 72-year old Robert Ward's colon cancer for roughly 3 months after he presented on July 2, 1998 with rectal bleeding. Deft's personnel identified a large polyp, but initially concluded that it was non-cancerous before a subsequent colonoscopy and biopsy proved otherwise. On Nov. 3, 1998 Robert underwent a sigmoid colon resection, but the cancer had spread to his liver (Stage IV). Pltfs allege that had the cancer been diagnosed in July, Robert's cancer would not have metastasized, cutting his life expectancy and necessitating debilitating chemotherapy. Norma (72) cites loss of consortium. Defense maintained that when Robert presented for treatment, the cancer had already spread to his liver and lymph nodes. However, Judge Holderman's opinion concluded that the cancer was confined to the polyp in July 1998 and that deft's negligence had "...robbed Mr. Ward of, at minimum, a 75% chance of survival...."

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms of Service and Privacy Policy. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Lawyerport™ a division of Law Bulletin Media         Terms of Service   Privacy Policy   About Us   Site Map   Advertising   Contact Us   Help
Copyright© 2020 Law Bulletin Media. All rights reserved.

Client: 19344-042447    WELCOME, JOSEPH

People ▼ Enter search terms - Exact match

COURT DOCKETS | COURT CALLS | SUITS, LIENS & JUDGMENTS | VERDICTS & SETTLEMENTS | APPELLATE CASE SUMMARIES | COURT RULES | STATUTES

**Publication: Cook County Jury Verdict Reporter Published: 10/2/1998**

**(PP 52/7) MEDICAL MALPRACTICE--UNDETECTED PROSTATE CANCER SPREADS TO BONES (12C)**

*Robert Bernstein v Dr. Noel Browdy, M.D.* 94L-6274 Tried Jul. 9-21, 1998

**Verdict:** $591,784 ($87,500 loss of normal life; $50,000 disfigurement; $260,000 pain & suffering; $75,000 emotional distress; $119,284 medl.; $0 LT)

**Judge:** Frank Orlando (IL Cook-Law)

**Pltf Atty(s):** Robert A. Holstein, Thomas A. Zimmerman, Jr. of Stackler & Holstein (Chicago) DEMAND: $900,000 ASKED: $3,500,000

**Deft Atty(s):** Lenard C. Swanson, Jody L. Pabst of Swanson, Martin & Bell (Chicago) (ISMIS) OFFER: $200,000

**Pltf Medl:** Dr. David Hakimian (Oncologist), Dr. Ramiro Prudencio (Urologist), Dr. Robert M. Patek (Orthopedist)

**Pltf Expert(s):** Dr. Robert M. Kahn (Family Practice); Dr. Timothy Kuzel of Northwestern Memorial Hospital, 233 E. Erie, Chicago (312-908-4407) (Oncologist)

**Deft Expert(s):** Dr. Richard C. Stalzer (Internist); Dr. Steven Woolf of Medical College of Virginia, Virginia Commonwealth University, P.O. Box 510, Richmond, VA (703-391-2020) (Family Practice); Dr. Robert DeCresce of Rush-Presb.-St. Luke's Hospital, 1653 W. Congress Pkwy., Chicago, IL (312-942-5254) (Pathologist)

**Facts:**
Deft internist performed digital rectal examination and diagnosed that patient's prostate was enlarged due to benign prostatic hypertrophy in Oct. 1991. Prostate specific antigen tests performed in July 1992 and Oct. 1992 revealed elevated PSA levels (4.3-4.9 compared to normal range of 0.0-3.9), but deft failed to perform another PSA test despite seeing patient in April 1993. In Oct. 1993, deft detected asymmetric enlargement of prostate during rectal exam, and referred pltf to a urologist. Shortly thereafter, a biopsy showed prostate cancer which had spread to scapula. Pltf contended that deft breached the standard of care by failing to perform or order rectal ultrasound and/or prostate biopsy in light of the elevated PSA levels, failing to inform pltf that the elevated PSA levels could represent possible cancer of the prostate, if cancer had been detected and treated while still confined to prostate it would have given him an 80% chance of survival, and deft's negligence allowed cancer to spread to bones, which is incurable. Pltf M-66 underwent surgical castration and hormone therapy, and has 2-3 years life expectancy ($19,284 medl., $70,000 LT as manufacturer's representative, now retired). Deft maintained his "watchful waiting" was reasonable, pltf's PSA levels were in a gray area that did not immediately require follow-up testing, elevated levels could have been due to patient's age or benign prostatic hypertrophy, and outcome would be the same even if cancer had been diagnosed sooner. Defense further argued that pltf had already outlived his life expectancy and would likely die of other natural causes, not cancer.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

Lawyerport™ a division of Law Bulletin Media    Terms of Service   Privacy Policy   About Us   Site Map   Advertising   Contact Us   Help

Copyright© 2020 Law Bulletin Media. All rights reserved