E-FILED
Wednesday, 15 January, 2020  07:10:05 PM
Clerk, U.S. District Court, ILCD




**Publication: Cook County Jury Verdict Reporter Published: 4/5/2013**

**(EEE 25/2) CIVIL RIGHTS--DENIAL OF INMATE'S MEDICATION LED TO BRAIN DAMAGE (14)**

Ray A. Fox v David Barnes, Michael R. Borkowski 09C-5453 Tried Jan. 14-18, 2013

**Verdict:** $12,000,000: $11,000,000 compensatory damages plus $1,000,000 punitive damages v Barnes; Not Guilty v Borkowski.
**Judge:** James F. Holderman (USDC IL NE)
**Pltf Atty(s):** Michael Kanovitz, Steven E. Art, Anand Swaminathan, Cindy Tsai of Loevy & Loevy (Chicago, IL)
**Deft Atty(s):** James P. Doran, Christopher E. Walter of Illinois Attorney General (Chicago, IL) for both defts
**Pltf Expert(s):** Dr.J. Preston Harley, Ph.D. (Neuropsychologist); Dr.Laura Pedelty (Neurologist); Mila G. Carlson, Ph.D. of Mila Carlson & Associates, 5411 E. State St., #307, Rockford, IL (815-397-3298) (Life Care Planner); Michael Goldman (Accountant/CPA)
**Deft Expert(s):** Kenneth R. Neumann (Accountant/CPA); Dr.Jorge Asconape (Neurologist) for both defts

**Facts:**

Pltf M-44 was incarcerated at the Illinois Department of Corrections' Northern Reception & Classification Center (NRC) from Sept. 24, 2007, through Oct. 7, 2007. The NRC is an intake and processing unit for male inmates before they are transferred to their permanent institution; it is a division of Stateville Correctional Center. At the time pltf was admitted to the NRC, he had a history of seizures for which he required anti-seizure medications, but deft correctional medical technicians allegedly ignored his repeated requests for medication and for medical attention. As a result, pltf suffered a seizure and was found unconscious in his cell. He sustained a traumatic brain injury, intracranial hemorrhaging requiring brain surgery, coma for several weeks, brain damage, partial blindness, and permanent disability requiring 24-hour care. Defts denied they ignored pltf's requests for medication and medical treatment, and denied any such requests were made to them. The defense further contended pltf suffered an aneurysm that was not related to his seizure disorder. UPDATE: In August 2013, Judge James Holderman awarded the pltf's lawyers $1.2 million in fees and $195,519 in costs. We note also that the Illinois Attorney General's Office has appealed the jury verdict to the 7th Circuit.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.

 

**Publication: Illinois Jury Verdict Reporter Published: 4/19/2019**

**(18 Au/4) CIVIL RIGHTS--GUARDS BEAT INMATE UNCONSCIOUS AND DENIED MEDICAL CARE (14)**

Osbaldo Jose-Nicolas v Nathan Berry, William Qualls, Justin Snell, Matthew Purdom, Aimee Lang 15CV-964 Tried Aug. 14-16, 2018

**Verdict:** $252,100: $1,000 compensatory damages; $200,000 punitive v William Qualls; $50,000 punitive v Aimee Lang; $1,000 punitive v Nathan Berry; $100 punitive v Justin Snell.
**Judge:** Nancy J. Rosenstengel (USDC IL So-East St Louis)
**Pltf Atty(s):** Julie M. Goodwin, Sarah C. Grady, Adair R. Crosley of Loevy & Loevy (Chicago, IL)
**Deft Atty(s):** Jeremy C. Tyrrell, Joseph D. Bracey, Jr. of Illinois Attorney General (Springfield, IL) for all defts

**Facts:**

On February 5, 2014, pltf was an inmate at Illinois Department of Corrections - Menard Correctional Center. Pltf contended he was taken to a shower area and handcuffed while a prison employee (Lieutenant Qualls) beat him until he was unconscious, while two other employees, Sergeant Snell and prison guard Berry, watched the altercation and failed to intervene. Pltf suffered severe pain in his head, jaw, rib and left side; inability to open or shut his mouth properly; bruises and bulges under his navel; and emotional distress. He was taken to segregation and examined by Lang, a medical technician at the prison, who allegedly refused to adequately evaluate his injuries or provide him with treatment and referral. She merely noted his injuries in the chart. On March 7, pltf saw Dr. John Trost from Wexford Health Services and told the doctor about the incident. He claimed Dr. Trost failed to run any tests to determine the cause of his pain. In this civil rights lawsuit, pltf made allegations of excessive force, failure to intervene, denied medical treatment, and willful and wanton conduct. The defense denied pltf's allegations and that any civil rights violations occurred. Qualls testified that pltf sustained his injuries from slipping and falling on ice on the way to segregation. However, Berry testified he did not recall seeing any ice on the walkway. Two prisoners testified on behalf of pltf, and one said he wrote a letter to internal affairs about the incident. However, neither he nor pltf were ever interviewed about the content of this letter. The jurors concluded that Qualls used excessive force; that Berry, Snell and Qualls failed to intervene during the incident; and that Qualls, Berry and Lang failed to provide pltf with adequate medical treatment for his injuries. The jurors also concluded that all four of these defts acted with willful and wanton behavior. Former co-defts Dr. Trost and Wexford Health Services were voluntarily dismissed in June 2016. This case was the subject of a Chicago Daily Law Bulletin article on August 20, 2018.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication:** Illinois Jury Verdict Reporter Published: 3/15/2000

**(00 F/3) CIVIL RIGHTS--INMATE LOSES EYE AFTER PRISON DOCTOR REFUSES CARE (14, 12Q)**

Karl Williams, Sr. v Dr. Chanshyam Patel 96CV-1369 Tried Jan. 31-Feb. 2, 2000

**Verdict:** $2,000,000: $1,000,000 comp., $1,000,000 punitive to Karl
**Judge:** Michael M. Mihm (USDC IL Cent-Peoria)
**Pltf Atty(s):** Kathleen T. Zellner, Douglas H. Johnson of Kathleen T. Zellner & Associates (Naperville) DEMAND: $375,000 ASKED: $1,000,000
**Deft Atty(s):** Chad L. Noreuil, Ronald G. Stradt of Illinois Attorney General (Springfield) OFFER: none
**Pltf Medl:** Dr. Jerry Ringer (Ophthalmologist)
**Deft Medl:** Dr. Khaja Alliuddin, Dr. George Castrovillo (Family Practice), Dr. Kevin Smith

**Facts:**

June 23, 1995, pltf inmate M-38 at the Pontiac Correctional Center was struck in the eye by a hydraulic hose that had been improperly connected to a prison trash compactor. Pltf immediately noticed blurred vision in his left eye and was accompanied to the prison infirmary by a prison guard and another inmate. Dr. Patel, who was on duty in the emergency room, refused to treat pltf and stated that he had too many patients to see him. Williams came back the next day complaining of extreme pain and inability to see out of his left eye, and Patel saw him and gave him eye ointment. Pltf thereafter continued to seek medical assistance for his eye, but it was not until Aug. 23, 1995, that the prison optometrist diagnosed detached retina. Pltf was referred to the Gailey Eye Clinic and ultimately underwent removal of his left eye by Dr. Ringer, who testified that the eye would have been saved if pltf had received immediate medical care. Defense contended that the pltf was injured on an earlier date in May 1995, the eye was properly treated, and the retinal detachment was not caused by the hose but was rather due to a congenital condition. Deft post-trial motions pending.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication: Cook County Jury Verdict Reporter Published: 4/11/2003**

**(UU 26/1) CIVIL RIGHTS--FAILURE TO PREVENT SUICIDE AT LAKE COUNTY JAIL (14, 12P)**

Estate of Justin Farver, deceased v Correctional Medical Services of Illinois Inc., Karen Dean, R.N., Joel Mollner, L.C.S.W., Dr. Michael Fernando 00C-6010 Tried Feb. 6-20, 2003

**Verdict:** $1,750,000: $250,000 comp., $1,500,000 punitive to Justin v Correctional Medical Services (compensatory award was also against Mollner); Not Guilty v Dean and Fernando. Lake County Sheriff's Office settled out for $60,000 prior to trial.
**Judge:** Robert W. Gettleman (USDC IL NE)
**Pltf Atty(s):** Peter R. Coladarci of Peter R. Coladarci Ltd. (Chicago) David C. Sleigh of Sleigh & Williams (St. Johnsbury, VT) DEMAND: $1,000,000 ASKED: $4,000,000
**Deft Atty(s):** Robert P. Vogt of Weldon-Linne & Vogt (Chicago) for Correctional Medical Services of Illinois Inc., Dean, Mollner, Fernando (Guaranty Fund,Guaranty Fund; A1 Professional Liability,Guaranty Fund) OFFER: $400,000 total
**Pltf Expert(s):** Dr. Robert B. Greifinger, 32 Parkway Dr., Dobbs Ferry, NY (914-693-9205) (Correctional Medical Care); Dr. Syed I. Ali of DuPage Mental Health Services Ltd., 1776 S. Naperville Rd., Wheaton, IL (630-690-2222) (Psychiatrist)

**Facts:**

Justin Farver, a 23-year-old with pronounced cerebral palsy, was arrested for attempted sexual abuse on Sept. 24, 1998. During the booking process, he stated to deft Dean, a new part-time nurse, that he had thoughts about killing himself and had prior suicide attempts, but she failed to institute any suicide protocols including treatment and suicide watch. Deft social worker Mollner, a 20-year employee, saw Justin a week later and documented his suicidal history and present "proclivities", but failed to review the prior record which showed he had not been placed on a suicide watch and failed to order an immediate referral to a psychiatrist. Deft part-time jail psychiatrist Dr. Fernando also documented Justin's suicidal state of mind and failed to review the prior record. As a result, Justin committed suicide by hanging himself with a bedsheet in his cell at the Lake County Jail in Waukegan on Oct. 13, 1998. Defense contended Justin was not acutely suicidal, it is impossible to predict when someone will commit suicide, and defts were not guilty of a deliberate disregard of serious psychiatric needs. Case went to jury on civil rights claims only; wrongful death claim was dropped to avoid character and loss of society proofs. Psychiatry expert Dr. Ali was originally retained by defense but flipped during deposition. Note: For a summary of subsequent appellate action regarding this case, see the Jury Verdict Reporter's Appellate Review of Damages at 6 ARD 65.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication: Cook County Jury Verdict Reporter Published: 4/9/2010**

**(BBB 26/1) CIVIL RIGHTS--DEATH OF WOMAN IN CUSTODY BLAMED ON DENIAL OF MEDICAL CARE (14)**

Estate of Patricia Cobige, deceased v City of Chicago, Rene Dimilanta, Piotr Czarniecki, Julia Lawler, Sgt. Thomas Motzny, Maria Diaz 06C-3807 Tried Feb. 16-25, 2010

**Verdict:** $5,004,000: $5,000,000 compensatory damages ($2,000,000 intentional infliction of emotional distress; $3,000,000 wrongful death); $4,000 punitive damages ($1,000 each v Dimilanta, Czarniecki, Lawler and Motzny); Not Guilty v Maria Diaz.
**Judge:** Amy St. Eve (USDC IL NE)
**Pltf Atty(s):** Jeffrey B. Granich Josh M. Friedman Katie Z. Ehrmin of Jeffrey B. Granich (Chicago, IL) Sarah A. Kennedy DEMAND: $2,000,000
**Deft Atty(s):** Rita C. O'Connor, Scott J. Jebson, Tiffany Y. Harris of Chicago Corporation Counsel (Chicago, IL) for all defts (Self-Insured) OFFER: $400,000
**Pltf Medl:** Dr. Adrienne Segovia (Pathologist)
**Pltf Expert(s):** Dr. Dan J. Fintel (Cardiologist)
**Deft Expert(s):** Dr. Peter Santucci (Cardiologist) for all defts

**Facts:**

June 11, 2006, Patricia Cobige (F-46) died while in custody at the 25th District Police Station at 5555 W. Grand. The estate contended deft Chicago Police Officers repeatedly denied her requests for medical attention for her cardiac condition, resulting in her death in lockup, and her death could have been avoided if she had been given two aspirin (survived by adult son). Defts maintained Cobige never asked for medical treatment. The jury's verdict was against all deft officers but not Diaz, who was a civilian detention aide. Note: For a summary of subsequent appellate action regarding this case, see the Jury Verdict Reporter's Appellate Review of Damages publication at 13 ARD 27.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms. Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication: Cook County Jury Verdict Reporter Published: 6/1/2012**

**(DDD 33/1) CIVIL RTS.--POLICE DENIED MEDICAL CARE TO TRUCKER WHO CAUSED FATAL CRASH (14)**

Estate of Donald L. Wells, deceased v City of Chicago, Michael Deneen, Maureen McMahon, John B. Farrell, Elliot Musial, Galo Gutierrez, John P. Clifford, Richard E. Moravec, Steven R. Rowling, Arthur Block, Leonard Fitch, William Kilroy, Jr. 09C-1198 Tried Mar. 26-Apr. 5, 2012

**Verdict:** $1,150,500: $1,000,000 compensatory damages for pain & suffering, $150,500 punitive damages v four officers from CPD Major Accidents Investigations Unit.
**Judge:** Matthew F. Kennelly (USDC IL NE)
**Pltf Atty(s):** Michael V. Kell, Scott C. Frost, Donna Rizzuto, Mark W. Peyser, David C. Van Dyke, Michael O. Fawaz, James R. Shinar, Tiffany L. Carpenter of Howard & Howard (Chicago, IL) Robert J. L. Robertson of Robert Robertson Law Offices (Chicago, IL) DEMAND: $4,750,000 ASKED: $6,897,613
**Deft Atty(s):** Joseph M. Polick, Liza M. Franklin, Helen C. Gibbons of Chicago Corporation Counsel (Chicago, IL) for all defts (Self-Insured) OFFER: none
**Pltf Medl:** Dr. Robert N. Stein (Hematologist), Dr. Gilberto Arevalo (Emergency Medicine), Myles Hughes (Paramedic)
**Deft Medl:** Dr. Sunil Shah (Internist), Dr. Kimberly Joseph (Trauma Surgeon) for all defts
**Pltf Expert(s):** Dr.F. Gary Toback (Nephrologist); Dr.Joel Kahn (Cardiologist); Dr.Kanu Virani (Pathologist); Dennis Waller (Police Procedure); Robert A. Baade, Ph.D. (Economist)
**Deft Expert(s):** Dr. Rory Childers of University of Chicago Hospital, 5758 S. Maryland Ave., Chicago, IL (773-702-1717) (Cardiologist); Dr.Jerrold S. Levine (Nephrologist) for all defts

**Facts:**

On April 25, 2008, truck driver Donald Wells lost control of his semi as he came off the Dan Ryan Expressway Chinatown exit ramp and crashed into a crowded escalator at the CTA's Cermak "L" station. The impact killed two women and injured 18 others. Wells M-64 also sustained crush injuries and was taken by ambulance to Stroger Hospital, where he was placed into custody and treated by hospital personnel in the presence of numerous Chicago police officers. Hospital toxicology results were negative for alcohol or other impairing substances. After submitting to a second round of toxicology tests ("DUI Kit"), Wells was transported to the Wentworth District Police Station Lockup at 51st and Wentworth, where he remained for two days. Witnesses testified his condition deteriorated severely at the lockup, and his employer's attorneys who visited him there noted that he was unresponsive to questions and "looked like he needed to be in a hospital." Wells was finally released from police custody late in the evening on April 27, 2008, but he was unable to walk independently and was taken by ambulance to a local hospital, where he was admitted and diagnosed with acute renal failure secondary to trauma injuries, rhabdomyolysis, pneumonia, and atrial fibrillation. Hospital records state that police who accompanied him to the hospital reported he had urinated and defecated on himself, talked to himself, acted irrationally, and repeatedly removed his clothing. Wells remained hospitalized for six weeks until he died from multiple organ failure (survived by wife and daughters, $429,510 medl., $293,103-$308,461 LT). The estate filed this Section 1983 civil rights lawsuit against the City and numerous officers alleging unlawful detention, failure to provide adequate medical care while in detention, unreasonable denial of medical care in violation of the 4th Amendment, deliberate indifference by police and detention aides to Wells' medical needs, and willful and wanton conduct, causing irreversible damage, wrongful death, and immense suffering prior to his death (Survival Act). The estate further contended defts excessively held Wells for more than 48 hours for unlawful reasons and the City had a policy, practice and pattern of holding detainees for unlawful reasons for less than 48 hours. Defts denied any violation of Wells' rights under federal or state law, denied they caused injury or his death, and claimed he did not appear to need medical attention and he did not request help when they asked about his well-being. The defense further argued that Wells died of undiagnosed long-standing pre-existing heart problems -- not from any actions taken by Chicago police. UPDATE: According to a Sept. 17, 2012. article in the Chicago Daily Law Bulletin newspaper, Judge Kennelly has substantially cut this award, which he found to be excessive. The $1 million in compensatory damages was reduced to $250,000 and the entire $150,000 punitive damages award was eliminated.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of




**Publication:** Illinois Jury Verdict Reporter **Published:** 8/23/2019

## (18 O/2) CIVIL RIGHTS--INMATE LOSES FINGERS TO MACHINERY IN PRISON FACTORY (14)

Joel Jackson v Richard Birkey, Rich Mautino, Curtis Wilkey 14CV-1108 Tried Oct. 9-12, 2018

**Verdict:** $450,000: $350,000 compensatory damages v all defts; $40,000 punitive damages v Mautino; $40,000 punitive damages v Wilkey; $20,000 punitive damages v Birkey.
**Judge:** Michael M. Mihm (USDC IL Cent-Peoria)
**Pltf Atty(s):** Tara E. Thompson, Scott R. Rauscher, Adair R. Crosley, Megan Pierce of Loevy & Loevy (Chicago, IL)
**Deft Atty(s):** Michael C. Stephenson, Jessica R. Durkin of Illinois Attorney General (Chicago, IL) for all defts (State of Illinois)
**Pltf Expert(s):** William Stamps Howard, Ph.D. of Stability Technology, 722 Cedar Point Blvd., #230, Cedar Point, NC (770-331-2283) (Mechanical Engineer)

**Facts:**

Pltf M-47 inmate at the Illinois River Correctional Center in Canton was working at the prison's industrial bakery/factory in 2012 when parts of four fingers on his right hand were severed while cleaning a machine. A key safety feature had been removed from the equipment he was cleaning. Pltf claimed violation of his 8th Amendment rights, arguing that defts (prison warden and two supervisors) were deliberately indifferent to his safety because they ignored previous injuries resulting from the machine in question, as well as safety risks present in the factory. Pltf further maintained defts failed to provide him with proper job training; he was participating in a work-based rehabilitation program at the time.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication:** Illinois Jury Verdict Reporter **Published:** 3/10/2017

**(16 Mr/4) CIVIL RIGHTS--FEMALE INMATE SEXUALLY ASSAULTED BY GUARD AT DECATUR PRISON (14)**

Ashley Robinson v Timothy Ware, Shelith Hansbro, Nicholas Foraker 13CV-2039 Tried Mar. 15-17, 2016

**Verdict:** $1,500,000 v Timothy Ware only for violation of 8th amendment ($500,000 compensatory damages, $1,000,000 punitive damages); Not Guilty v Warden Shelith Hansbro and Nicholas Foraker for failure to protect. Pltf's counsel has petitioned for $200,000+ in attorneys' fees pursuant to Section 1988.
**Judge:** Colin Stirling Bruce (USDC IL Cent-Urbana)
**Pltf Atty(s):** Louis J. Meyer, Daniel P. Kiss of Meyer & Kiss (Chicago, IL) DEMAND: none
**Deft Atty(s):** Ronald S. Langacker of Langacker Law Ltd. (Urbana, IL) for Timothy Ware ; Lisa A. Cook, Susannah J. Price of Illinois Attorney General (Springfield, IL) for Hansbro, Foraker (State of Illinois; Self-Insured) OFFER: none

**Facts:**

Pltf F-25 was an inmate at Decatur Correctional Center after being convicted of aggravated robbery in 2008. On September 15, 2012, deft correctional officer Timothy Ware summoned pltf to the gym area of the prison. Another guard, deft Foraker, sent pltf to the gym area despite knowledge she was not allowed to be there and without documenting her movement. When pltf arrived at the gym, M-38 Ware took her into a supply closet and sexually assaulted her. After pltf returned to her housing unit, she told a friend about the incident, but she never reported the assault to any members of the prison staff. Eleven days later, the friend reported the assault. Pltf initially denied anything occurred, but eventually told investigators what happened. However, there was no physical evidence of the sexual assault and an internal investigation was unable to substantiate the allegations against Ware. Pltf introduced evidence that the warden (deft Hansbro) had been notified of numerous reports of unprofessional conduct by Ware including repeated violations of the facility's policies and inappropriate sexual remarks to female inmates, and the head of internal affairs had warned the warden about Ware's behavior during the months leading up to the assault, but she failed to reassign him to an area of the prison where he could not have one-on-one contact with female inmates. Pltf argued Warden Hansbro and Officer Foraker were deliberately indifferent to the substantial risk of a sexual assault and consciously disregarded the risk. Ware denied any sexual assault occurred and filed a counterclaim against pltf for defamation, intentional infliction of emotional distress, and abuse of process. The defense for Hansbro denied she was aware of any risk to pltf since the prior complaints about Ware did not involve any physical contact, just inappropriate sexual comments. Foraker contended he simply forgot to log pltf's movement on the date of the incident, he acquiesced to Ware's request to send pltf to the gym because Ware had seniority over him, and he was not aware of any risk to pltf when he allowed her to go to the gym.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.




**Publication: Illinois Jury Verdict Reporter Published: 3/6/2015**

**(14 S/4) CIVIL RIGHTS--FAILURE TO PROTECT PRISONER FROM ASSAULT BY CELLMATE (14)**

Lincoln Lee v Jay Shepler, Alan Combites, Ty Easley, Bruce Fisher 11C-4064 Tried Sep. 22-23, 2014

**Verdict:** $125,000: $75,000 compensatory damages v Jay Shepler, Alan Combites and Ty Easley; $10,000 punitive damages v Jay Shepler; $10,000 punitive damages v Alan Combites; $30,000 punitive damages v Ty Easley; Directed Not Guilty v Bruce Fisher.
**Judge:** Sara L. Darrow (USDC IL Cent-Rock Island)
**Pltf Atty(s):** Louis J. Meyer of Meyer & Kiss (Peoria, IL) DEMAND: $15,000
**Deft Atty(s):** Christopher L. Higgerson, Nicole C. Roth of Illinois Attorney General (Springfield, IL) for all defts (State of Illinois; Self-Insured) OFFER: none
**Pltf Medl:** Shirley Law, R.N. (Nursing)

**Facts:**

October 22, 2010, pltf inmate was attacked by his cellmate at the Illinois River Correctional Center in Canton, IL. Ten days prior to the incident, pltf had told his counselor, deft Shepler, that he was afraid of his cellmate and wanted a cell change. Pltf also gave the wing officer, deft Combites, a request for a cell change. The counselor and wing officer forwarded the request to the internal affairs officer, deft Easley, who then allegedly notified deft Lieutenant Fisher of pltf's complaints. Easley claimed he did an informal investigation and determined that pltf's fears of his cellmate were unfounded, so he did not move pltf. However, Easley never interviewed pltf or the cellmate. Pltf M-28 suffered a swollen black eye, cut lips, and superficial lacerations to his head, arms, and back; all of the injuries healed within a few days. He is no longer incarcerated and currently works as a delivery man. Pltf contended defts violated his Eighth Amendment rights by failing to protect him from an attack by the other inmate. The defense argued the counselor and guards all acted reasonably and were not aware that pltf was in danger. Defts claimed pltf told them he had an "issue" with his cellmate, not that he felt his life was in danger, and they further maintained that pltf was trying to manipulate the prison system so he could be transferred to a better facility. Pltf's pro bono counsel notes that he was appointed to this case after the close of discovery and was not able to depose any of the defts or witnesses.

© 2020 by Law Bulletin Media. Content on this site is protected by the copyright laws of the United States. The copyright laws prohibit any copying, redistributing, or retransmitting of any copyright-protected material. The content is NOT WARRANTED as to quality, accuracy or completeness, but is believed to be accurate at the time of compilation. Websites for other organizations are referenced on this site; however, Law Bulletin Media does not endorse or imply endorsement as to the content of these websites. By using this site you agree to the Terms, Conditions and Disclaimer. Law Bulletin Media values its customers and has a Privacy Policy for users of this website.