E-FILED
Monday, 30 November, 2020  06:53:46 PM
Clerk, U.S. District Court, ILCD

# Exhibit A

```
1              IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF ILLINOIS
2                     SPRINGFIELD DIVISION

3    WILLIAM KENT DEAN,              )
                                     )
4              PLAINTIFF,            )
                                     )
5          VS.                       )  17-CV-03112
                                     )
6    WEXFORD HEALTH SOURCES,         )  FINAL PRE-TRIAL
     INC., DR. ABDUR NAWOOR, DR.     )
7    REBECCA EINWOHNER, KATHY        )  SPRINGFIELD, ILLINOIS
     GALVIN, and LISA MINCY,         )
8                                    )
               DEFENDANTS.           )
9
                  TRANSCRIPT OF PROCEEDINGS
10         BEFORE THE HONORABLE SUE E. MYERSCOUGH
                UNITED STATES DISTRICT JUDGE
11
     DECEMBER 2, 2019
12
     A P P E A R A N C E S:
13   FOR THE PLAINTIFF:          CRAIG MARTIN
                                 JOEL PELZ
14                               WILLIAM STROM
                                 CHLOE HOLT
15                               NATHANIEL WACKMAN
                                 JENNER & BLOCK
16                               353 N. CLARK STREET
                                 CHICAGO, ILLINOIS
17
     FOR DEFENDANTS              JOSEPH RUPCICH
18   WEXFORD HEALTH SOURCE,      ALEXANDRA RICE
     DR. ABDUR NAWOOR,           CASSIDAY SCHADE
19   REBECCA EINWOHNER           111 N. SIXTH STREET
     AND KATHY GALVIN:           SPRINGFIELD, ILLINOIS
20   FOR DEFENDANT LISA MINCY:   JEREMY TYRRELL
                                 CLAYTON ANKNEY
21                               ATTORNEY GENERAL'S OFFICE
                                 500 S. SECOND STREET
22                               SPRINGFIELD, ILLINOIS

23   COURT REPORTER:       KATHY J. SULLIVAN, CSR, RPR, CRR
                           COURT REPORTER
24                         600 E. MONROE
                           SPRINGFIELD, ILLINOIS
25                         (217)492-4810
```

1                      I N D E X

2    WITNESS                                PAGE

3

4

5

6

7

8

9                    E X H I B I T S

10   PLAINTIFF'S EXHIBIT
     NUMBER                 IDENTIFIED   ADMITTED
11

12

13

14

15   DEFENDANT'S EXHIBIT
16   NUMBER                 IDENTIFIED   ADMITTED

17

18

19

20

21

22

23

24

25

```
1              P R O C E E D I N G S

2        *   *   *   *   *   *   *   *   *   *

3           THE COURT:  On the record, this is Dean

4    versus Wexford, 17-CV-3112.

5        We have the plaintiff by video Taylorville.

6    Mr. Dean, can you hear us all right?

7           THE PLAINTIFF:  Yes, ma'am, Your Honor.

8    Yes.

9           THE COURT:  So then we have Craig Martin,

10   William Strom, Chloe Holt, Joel Pelz, Nathaniel

11   Wackman all of Jenner and Block.  Holt and Wackman

12   are by video.

13       For defendants Wexford, Nawoor, Einwohner,

14   Galvin Joe Rupcich of Cassiday Schade.  And for Lisa

15   Mincy, Clayton Ankney and Jeremy Tyrrell of the

16   Attorney General.

17       We have many, many motions and jury

18   instructions to go over.  I'm going to try and make

19   this as quick as we possibly can.

20       First of all, there's the motion to have

21   plaintiff's experts by video from D.C.  I guess it's

22   just the one expert, Dr. Metwalli.  Is there no

23   objection?

24          MR. RUPCICH:  No objection as long as we

25   can provide exhibits that he'll have with him in his
```

1    video conference.

2            MR. TYRRELL:  We have no objection, Your

3    Honor.

4            THE COURT:  Okay.  So that will be granted.

5        While we're talking about exhibits.  I have

6    plaintiff's exhibits, where are defense exhibits?  I

7    have not seen them.

8            MR. TYRRELL:  We have our copy here, Judge.

9    We can give it to Ms. Gleason.

10           THE COURT:  Thank you.  If you'll give it

11   to Ms. Gleason.

12           MR. RUPCICH:  I can walk them over.  I

13   didn't realize we were supposed to e-file them.

14           THE COURT:  Well, e-file them or provide us

15   with hard copies.  I prefer hard copies, quite

16   frankly.

17           MR. RUPCICH:  Then I will provide that.  We

18   kind of still trying to work out some agreed

19   exhibits, so -- but yeah, absolutely.

20           THE COURT:  Okay.

21       Then there's a motion to strike or bar

22   plaintiff's experts.  I'm going to deny that, with a

23   written opinion to follow.

24       We have a number of motions in limine.  But

25   first of all, we have Wexford's motion for leave to

1     file a seventh motion in limine to exclude expert

2     reports from another case.

3              MS. GLEASON:  Your Honor?

4              THE COURT:  Yes.

5              MS. GLEASON:  Excuse me.  There were two

6     motions to basically strike the plaintiff's expert.

7     Are you denying both of those?

8              THE COURT:  Yes.  Sorry for not clarifying

9     that.

10       Is there any objection to them filing a seventh

11    motion in limine?

12            MR. MARTIN:  No, Your Honor.  We'd just

13    like time to respond.

14            THE COURT:  Okay.  That's what I was going

15    to suggest.  By the end of the week, is that doable?

16            MR. MARTIN:  What day?

17            THE COURT:  End of the week?  Friday.

18            MR. MARTIN:  Yes.  Thank you, Mr. Wackman.

19    That will be doable.

20            THE COURT:  All right.  I think the

21    proposed final pre-trial order that I reviewed is

22    acceptable.  So I will have the clerk affix my

23    electronic signature and docket the order.

24       And then do you care when the stipulations are

25    read?

1           MR. STROM:  Your Honor, plaintiff's
2   position on the stipulations may need some
3   clarification; only in that the parties have been
4   discussing the status of stipulations as opposed to
5   undisputed or uncontested facts which are also a
6   part of the Court's pre-trial order expectations.
7        Judge, I believe that the Court has been
8   informed about some of the scope of that difference
9   in views between the two parties -- or among the
10   three parties, I should say.
11        In terms of when the nine statements of
12   stipulated facts that appear as one of the exhibits
13   to the proposed final pre-trial order, I think that
14   it probably makes as much sense as anything for the
15   Court to read it -- read those near the start of the
16   case if not at the start of the case.
17        There is still, though, the question whether
18   any additional uncontested facts--that is facts that
19   were deemed both material and undisputed for
20   purposes of summary judgment--are also uncontested
21   and material for purposes of this case.  And in
22   addition to that, whether those particular
23   uncontested facts should be read or should be
24   elicited through testimony of the witnesses.
25        Plaintiff's perspective in terms of that

1    question is that we would much prefer to elicit as

2    much of that testimony as possible through witnesses

3    on the stand and not to have them read as

4    stipulations.

5         And so I think that the parties are in

6    agreement that there's not a need for a lengthy list

7    of stipulations to be read at the outset of this

8    case; rather, just the open question about just how

9    many uncontested facts remain in this case.

10             THE COURT:  Mr. Rupcich?

11             MR. RUPCICH:  As far as the uncontested

12   facts from the final pre-trial order, I would agree

13   they should be read at the beginning of the case so

14   the jury is aware of them before the evidence

15   starts.

16        As far as the other -- I wasn't quite

17   following, but I guess what counsel is saying is

18   that facts proposed as undisputed in a Rule 56

19   motion for summary judgment should then be

20   undisputed at trial.  And obviously, Rule 56 in our

21   motion for summary judgment is in the light most

22   favorable to the Plaintiff.  For example --

23             THE COURT:  Well, he was saying they

24   wouldn't be read, they would be -- that information

25   would be elicited from witnesses; correct?

1          Mr. Martin.

2              MR. MARTIN:  Your Honor, if I may.  Just

3     for purposes of clarity, the -- in terms of there

4     are a whole series of uncontested facts proffered by

5     the plaintiffs -- or the defendants in the motion

6     for summary judgment.

7          With regard to those, what Mr. Strom was

8     explaining is that we don't need those to be

9     full-blown stipulations in the sense that they're

10    read to the jury at the outset of the case.

11    However, they're uncontested and we'd like to be

12    able to use those documents and those facts with --

13    during the examinations of their witnesses to say

14    that these are uncontested facts.

15         So that's the time that we would want to

16    publish them, if you will, to the jury.

17         So we --

18              THE COURT:  Through testimony?

19              MR. MARTIN:  Through testimony.  So that,

20    you know, it is -- for example, to take the first

21    one, you know, Wexford, we would want Wexford's

22    witnesses to say that it's uncontested that

23    plaintiff is an inmate within the I.D.O.C. whose

24    claims arise out of Taylorville.  So that we're able

25    to use those and show those as uncontested facts

1   should they try to move away from that in their

2   testimony.

3       So that's what we want the ability to do, is

4   publish them at that point and streamline the

5   testimony as we see fit during the -- during the

6   examinations.  That's our point --

7           THE COURT:  That's what I understood.

8           MR. RUPCICH:  And that's -- if what he's

9   saying is they plan to confront witnesses with

10  undisputed facts from our motion for summary

11  judgment, that's entirely inappropriate in the trial

12  setting.  Those undisputed facts are in the light

13  most favorable to the plaintiff.  So I'm required,

14  when I move for summary judgment, to accept the

15  plaintiff's testimony as true.

16          THE COURT:  Right.

17          MR. RUPCICH:  I'm required to present the

18  case in the light most favorable to them.  The case

19  itself is not tried in the light most favorable to

20  the plaintiff.  Those facts are strictly and only so

21  that the Court can conduct its function under Rule

22  56 of giving deference to the plaintiff and

23  resolving all factual disputes in favor of the

24  plaintiff.

25      To then turn around and make those facts either

1    undisputed for purposes of trial or to confront

2    witnesses with what amounts to the legal arguments

3    of counsel in a document that is not verified by any

4    defendant, I think -- if this were the case, we

5    would never move for summary judgment because we

6    would then be precluded, based upon having presented

7    the facts in the light most favorable to the

8    Plaintiff, from subsequently contesting them.  And

9    then the whole system sort of falls apart.

10         We agreed to nine facts.  Those, to my mind,

11   are stipulations, tantamount to, because they're

12   undisputed in the final pre-trial order.  Those can

13   be read to the jury.  The remainder of our facts

14   from our summary judgment motion are nothing more

15   than facts in the light most favorable to the

16   plaintiff for purposes of that motion.

17              THE COURT:  So do you have specific

18   exhibits you intend to use when questioning the

19   defendants' witnesses?

20              MR. MARTIN:  Your Honor, our intent would

21   be to use the actual facts from the summary judgment

22   as opposed to going to the backup documents.

23         But really, two points with regard to this.

24   One, that's not the legal standard.  On summary

25   judgment, the legal standard is undisputed facts,

1    not facts that you're leaning one way or the other

2    undisputed facts.  It's not a motion to dismiss.

3    And then it's the inferences are the matter of law

4    inferences.

5        So that's an incorrect -- with all due respect

6    to defendant's counsel, that's an incorrect

7    statement of the law.  So you don't get to say that

8    something is undisputed on summary judgment and then

9    later walk away from it at -- the factual part of

10   that.

11       Your Honor could simply do this, so this is my

12   second suggestion or second point.  Your Honor, with

13   regard to the motion for summary judgment, could

14   just accept these facts that they proposed as

15   undisputed as true.  And then they would be part of

16   the ruling on the motion for summary judgment.  We

17   could just use them freely in that regard.

18       That's -- the defendant's position was that

19   these facts are undisputed.  They're not allowed to

20   walk away from that at trial.

21       So that, you know, our basic point.  We think

22   there's two ways to handle it.  One is to let us use

23   those facts with their witnesses and say that these

24   are undisputed and publish it to the jury.  The

25   other is to ask Your Honor to modify the ruling on

1   summary judgment to say that these facts are

2   undisputed as a matter of fact for the trial.

3         It is -- you know, to us, it's -- it's not --

4   there's no legitimate reason for the defendants to

5   say that these are undisputed at the point of

6   summary judgment, and then to say that all of the

7   sudden they're disputed at trial.  It just makes no

8   sense.

9               THE COURT:  Well, I will look --

10              MR. MARTIN:  -- the standard --

11              THE COURT:  -- at them --  I will look at

12  them before I rule on the question.  I want to look

13  at the summary judgment document that Mr. Rupcich

14  filed and that the co-defendants filed and then I

15  want to make a decision as to whether we go with one

16  or two or none of the above.

17        All right.  So --

18              MR. MARTIN:  Your Honor, they're --

19              THE COURT:  I am --

20              MR. MARTIN:  They're at Exhibit H to the

21  pre-trial.

22              THE COURT:  Thank you.  That makes it

23  easier.

24        All right.  So then there are objections filed

25  by the plaintiff to the first four Wexford exhibits.

1          MR. TYRELL:  Your Honor?

2          THE COURT:  Is that what you were referring

3    to, Mr. Rupcich, that you were still working on some

4    of the exhibits?

5          MR. RUPCICH:  Yeah.  I -- yes.

6          THE COURT:  Okay.

7          MR. TYRRELL:  I'm sorry, Your Honor.  Just

8    concerning the stipulation of facts.  Just because

9    the Court didn't ask for Defendant Mincy's position,

10   but Defendant Mincy is fine with the stipulation of

11   fact being read to the jury at the beginning of the

12   trial after the nature of the case.  I think that

13   makes the most sense as well.  And we join

14   Mr. Rupcich's position concerning the facts.

15       And just to highlight one of those examples,

16   Your Honor; one of the uncontested material facts

17   for purpose of summary judgment was that Ms. Mincy

18   was attending sick calls or viewed urine samples of

19   the plaintiff.

20       During her deposition, Ms. Mincy said, "No,

21   that's absolutely not true."  But as Mr. Rupcich

22   correctly pointed out, the standard in summary

23   judgement is to look at the light most favorable to

24   the plaintiff.  So one of our uncontested material

25   facts was that fact itself.

1        So I think that just illustrates the point

2    Mr. Rupcich was making that plaintiff's counsel is

3    incorrectly saying the law concerning summary

4    judgment.  So we join co-defendant's position on

5    that issue.

6              THE COURT:  All right.  Thank you for

7    giving me that example, Mr. Tyrrell.

8        Mr. Strom?

9              MR. STROM:  If I may briefly respond to

10   Mr. Tyrrell before the Court's invitation on the

11   objection.

12             THE COURT:  Yes.

13             MR. STROM:  Rule 56 also requires parties,

14   in responding to each party's statement of

15   undisputed material facts, to cite record evidence

16   as to why it is, in fact, a disputed fact rather

17   than an undisputed fact.

18       And so if there was a statement about something

19   within defendant Nurse Mincy's knowledge or her

20   conduct or anything of that nature that was

21   contradicted by some other part of the record for

22   purposes of summary judgment, it was defendants'

23   obligation to point that out, to make a record

24   citation, and call it instead a material and

25   disputed fact.  And then to leave to the Court to

1    draw whatever inferences should be drawn given the

2    summary judgment standard.

3         And so I take Mr. Tyrrell's position, but I

4    direct back to the point that Rule 56 requires that

5    each party point out record evidence that places in

6    dispute anything that the parties contend is, in

7    fact, disputed rather than undisputed.

8              THE COURT:  I agree.

9              MR. RUPCICH:  I don't want to belabor

10   this, but --

11             THE COURT:  But you will.

12             MR. RUPCICH:  It happens all the time where

13   one party says one thing, one party saying another.

14   For purposes of summary judgment, I will put forward

15   the version as undisputed that resolves the issue in

16   favor of the Plaintiff.  The argument then is even

17   if a jury found this to be true, what their witness

18   is saying, an insufficient basis in the evidence

19   exists to return a verdict.

20        So the idea that I would move for summary

21   judgment pointing out disputed material issues of

22   fact, like Mr. Strom just said, that -- with all due

23   respect, it doesn't make sense.  We resolve factual

24   questions in the light most favorable to the

25   plaintiff.  Otherwise, I can never move for summary

1    judgment.

2        I can't use a plaintiff's deposition because

3    everything they say ultimately, while I may say it's

4    not true, assuming it is true, we still win as a

5    matter of law.  That's the idea.

6            THE COURT:  I understand.  I will review it

7    and rule.

8        So back to the objections to the exhibits.

9    You're still working together to resolve that?

10           MR. STROM:  That's right, Your Honor.

11           THE COURT:  Okay.  Let's then go to the

12   motions in limine.  We have plaintiff's motion for

13   leave for witness to appear by video.  That was

14   granted.

15       And we have the motion to strike Plaintiff's

16   Exhibits 10 and 13 and disqualify Drs. Barnett,

17   Dhar, and Metwalli.

18           MS. GLEASON:  Your Honor, you ruled on

19   those --

20           THE COURT:  Okay.

21           MS. GLEASON:  -- two motions for the

22   plaintiff's experts.  So it should be the next one.

23           THE COURT:  So Wexford's motion to bar

24   opinion testimony?

25           MS. GLEASON:  No, that's the expert

```
1    witness --
2              THE COURT:  Yeah.  Plaintiff's motion to
3    exclude?
4              MS. GLEASON:  Yes, Your Honor.
5              THE COURT:  Okay, here we are.
6         Mr. Rupcich, I assume you have a response to
7    that?
8              MR. RUPCICH:  I believe that's directed to
9    the co-defendant; right?  What number?
10             THE COURT:  Number 127.  Has to do with
11   other medical.  Heart attacks, sleep apnea, back
12   problems.
13             MR. RUPCICH:  Oh, yes.  I don't -- I do
14   have an objection to that.  Sanitizing the medical
15   records from the relevant time period, the
16   plaintiff's medical history, doesn't serve a purpose
17   in the evidence.  Part of the evidence that's going
18   to come in is Mr. Dean's co-morbidities being
19   numerous ties into the extent of the workup he
20   required to be prepared to undergo surgery.
21        So sanitizing his medical history would give
22   the jury an incomplete view of what actually the
23   defendants were dealing with as they worked him from
24   diagnosis to surgery.
25             THE COURT:  Mr. Tyrrell?
```

1          MR. TYRRELL:  Your Honor, Defendant Mincy

2     just joins Defendant Wexford's position and for the

3     same reasons.

4          THE COURT:  So I'm going to deny that

5     motion in limine.

6       Let's see.  Plaintiff's motion in limine to

7     exclude argument on or evidence that plaintiff's

8     medical care is a burden the taxpayers or the public

9     I'm going to grant.

10      Let's see.  Plaintiff's motion in limine to

11    exclude Defendant Lisa Mincy from eliciting expert

12    testimony from her disclosed expert.

13      Are there going to be -- is there going to be

14    an expert for Mincy?

15          MR. TYRRELL:  No, Your Honor, Ms. Mincy did

16    not identify any experts in the final pre-trial

17    order.  The only reason why Defendant Mincy provided

18    a response to that motion in limine, Your Honor, was

19    because of the kind of vague and overbroad nature of

20    the motion itself.  The motion seemed to imply that

21    Defendant Mincy would not be able to ask any

22    questions on cross-examination to their rebutter

23    refuting the expert opinions provided at trial.  And

24    as provided in our response, Your Honor, Defendant

25    Mincy certainly should be entitled to do that.

1      So to the extent that plaintiff seeks to

2   exclude such testimony, we'd ask the Court deny the

3   motion.  Otherwise, Your Honor, we don't oppose it

4   because Ms. Mincy did not identify any experts for

5   trial.

6             THE COURT:  All right.  So I'm going to

7   find it moot, since there were no experts.

8      Were you, Mr. Strom, indicating that you felt

9   her attorney should not be allowed to cross-examine?

10            MR. STROM:  Your Honor, my colleague

11  Mr. Wackman is prepared to address this particular

12  motion in limine by video, if that is all right with

13  the Court.

14            THE COURT:  Mr. Wackman.

15            MR. WACKMAN:  Your Honor, no, our motion

16  just sought to prohibit or limit Ms. Mincy from

17  eliciting affirmative evidence or calling the

18  experts or -- as opposed on cross-examination going

19  outside the bounds of the direct to bring forth sort

20  of affirmative evidence for the defendant.  But I

21  don't believe that we would have issue with her

22  cross-examining our experts on the subject of their

23  direct testimony.

24            THE COURT:  Okay.  Thank you for that

25  clarification, Mr. Wackman.  And you need not stand

1    since you're located in a video conference room.  We

2    could probably hear you better if you stay seated.

3              MR. WACKMAN:  Thank you, Your Honor.

4              THE COURT:  But thank you for standing.

5         All right.  I think that takes care of those.

6         Then we have a motion in limine --

7              MR. MARTIN:  Yeah, we have -- it's Docket

8    Entry 130 is the fourth motion in limine --

9              THE COURT:  Right, I found it --

10             MR. MARTIN:  -- prior criminal convictions.

11             THE COURT:  All right.  So I will grant

12   that.  There will be no reference to what it is, no

13   details as to what he's serving time for now, and

14   none of the prior convictions will then come in.

15   Other than the one he's serving time for.

16             MR. RUPCICH:  Judge, could you clarify

17   exactly -- so are we doing just mere fact

18   impeachment then?

19             THE COURT:  Yes.

20             MR. RUPCICH:  Okay.  Do we then not need to

21   lay the foundation for the length of the sentence

22   and all that?  Are we just saying he's a convicted

23   felon?

24             THE COURT:  He's a convicted felon.

25             MR. RUPCICH:  Okay.  Thank you.

1          THE COURT:  So that does take care of all

2    plaintiff's?

3          MR. STROM:  Your Honor, we may have a

4    question as well that Mr. Wackman would like to

5    raise regarding what it would be that constitutes

6    opening the door on plaintiff's part, essentially,

7    Your Honor, just to question about --

8          THE COURT:  We'll let Mr. Wackman.

9          MR. STROM:  Certainly.

10          THE COURT:  Mr. Wackman.

11          MR. WACKMAN:  Yes, Your Honor.

12      In our motion, we had asked, I think for the

13    2010 conviction, that the quantity of drugs be -- be

14    prohibited from being entered.  But I think we would

15    be interested in possibly informing the jury of what

16    exactly Mr. Dean is currently in prison for except

17    for that quantity of drugs.  So I think to be clear,

18    Your Honor, we would be interested in saying that he

19    is in prison for delivery of a controlled substance.

20      And so we wanted to be clear on the Court's

21    ruling about whether that would open the door to

22    additional facts beyond that coming into evidence.

23          THE COURT:  Mr. Rupcich?

24          MR. RUPCICH:  Well, number one, I think

25    they're asking for an advisory opinion on how far

1    they can push the Court's ruling without opening the

2    door to something that's going to backfire, and I

3    don't think that's appropriate for the Court to

4    advise on a trial strategy.

5        Number two, I think either we go with the name

6    of the conviction, the straight application of Rule

7    609, or we go with the Court's ruling that a mere

8    fact of a felony.  Manipulating the name to sanitize

9    it or give the jury a certain impression I don't

10   think is appropriate.

11       THE COURT:  Mr. Wackman, do you have any

12   response?

13       MR. WACKMAN:  Yeah.  Your Honor, we

14   disagree that we're seeking an advisory opinion from

15   the Court.  We're simply trying to clarify the

16   Court's ruling and in light of our -- the motion

17   that we filed which asks for a certain set of

18   relief.

19       And second, Your Honor, you know, this Court

20   has -- has -- has, in the past, allowed for the name

21   of the conviction to be read in a certainly way, be

22   modified in a certain way, and the Seventh Circuit

23   has approved this practice so there is no prejudice

24   to the defendant.  We believe that's appropriate

25   here in terms of the quantity, which has really no

1    probative value into Mr. Dean's truthfulness or

2    otherwise relevance to this case, but does risk the

3    jury to think that Mr. Dean is some sort of

4    large-scale drug dealer and potentially there's some

5    danger of deciding the case on that basis.

6         So we think the relief we've sought in our

7    motion, that -- deleting that quantity from what's

8    given to the jury is appropriate, Your Honor.

9              THE COURT:  Mr. Rupcich?

10             MR. RUPCICH:  It sounds like the intent is

11   to give the impression that Mr. Dean is a low-level

12   drug offender by removing the amount.  And clearly

13   that's not the case.  So either it comes in all or I

14   would say the Court's ruling that he's a convicted

15   felon is a fair compromise.

16             THE COURT:  Well, I see two problems.  I

17   mean actually, what he's convicted of is manufacture

18   or delivery of a controlled substance (cocaine).

19        Are you asking that the cocaine part be read,

20   Mr. Wackman?

21             MR. WACKMAN:  I think we would be fine with

22   that, Your Honor.  That's consistent with the relief

23   we request in our motion.

24             THE COURT:  So I'm going to leave it to the

25   plaintiff.  If, in fact, it comes in what he's

1    convicted of, I will allow the amount to be read.

2    So is your preference it be a felony or it be

3    cocaine and the amount?

4            MR. MARTIN:  If you could give us one

5    moment, Your Honor.

6            THE COURT:  Well, if you need more than one

7    moment, you may have it.  I'll allow you to address

8    this when we're ready to go at trial.

9            MR. MARTIN:  Okay.  Thank you.

10           THE COURT:  So don't mention the --

11   anything during jury selection other than he's got a

12   conviction for a felony.

13           MR. MARTIN:  So, Your Honor, we're fine

14   with it.  If -- our motion, manufacture or delivery

15   of a controlled substance (cocaine) in the amount of

16   100 to 400 grams.  That's what it is and that's what

17   we would use.

18           THE COURT:  All right.  Then that's my

19   ruling.

20           MR. MARTIN:  Thank you.

21           THE COURT:  Thank you.

22       So does that take care of all the plaintiff's?

23           MR. STROM:  Yes, Your Honor.

24           MR. WACKMAN:  Yes, Your Honor.

25           THE COURT:  Then let's go to defendants'.

1   Mr. Rupcich, we have the first motion in limine.

2          MR. RUPCICH:  Yeah, Judge.  Expert reports

3   of the plaintiff, facts versus substantive evidence.

4          THE COURT:  So my understanding is that

5   plaintiffs aren't going to use them, so it would be

6   moot, or I can deny it with leave to renew.

7       So I think I'll deny it with leave to renew if,

8   in fact, the plaintiffs seek to use those reports.

9          MR. RUPCICH:  I agree.

10          THE COURT:  Let's go to --

11          MR. RUPCICH:  Medical literature is my

12   second one.

13          THE COURT:  Yes.

14          MR. RUPCICH:  And I think they've clarified

15   in their response they're not intending to admit

16   articles to give to the jury.  So if they're able to

17   lay a foundation for a particular portion, then

18   obviously, that's appropriate.  But -- so I think

19   it's probably moot subject to what happens at trial.

20          THE COURT:  Well, at this point, I'll deny

21   it with leave to renew.  Okay?

22          MR. RUPCICH:  Okay.

23          THE COURT:  Then the third, the lay medical

24   testimony.

25          MR. RUPCICH:  Again, I think they

1  clarified.  This is sort of a touchy one.  Clearly,

2  Mr. Dean can testify to his present sense

3  impressions, his feelings.  What we don't want is

4  him connecting certain things to medical diagnosis

5  or giving his opinions on things that are outside of

6  his ability as a lay person to testify to.  But he

7  can talk about how he feels.  That's the

8  distinction --

9          THE COURT:  His personal experience;

10  correct?

11          MR. RUPCICH:  Correct.

12          THE COURT:  All right.  So we will deny

13  with leave to renew at trial.

14      Then we have the fifth, other lawsuits and

15  discipline.

16          MR. RUPCICH:  Well, the fourth was --

17          THE COURT:  I'm sorry.

18          MR. RUPCICH:  -- diminished life

19  expectancy, evidence of diminished life expectancy.

20          THE COURT:  Correct.  I'm going to deny

21  that one.

22          MR. RUPCICH:  May I be heard?

23          THE COURT:  Sure.

24          MR. RUPCICH:  Judge, evidence of diminished

25  life expectancy generally comes in the form of

1    expert testimony that establishes, to a reasonable

2    degree of medical certainty, a person's life

3    expectancy based on actuarial tables, a life-care

4    planner was X, and then based upon the negligence of

5    the defendant, it was reduced to Y.

6         And then there's an Illinois pattern

7    instruction on that issue.  I believe it's 30.0403

8    and 30.0404, that gives the jury a calculation of

9    how you make a damage assessment under diminished

10   life expectancy.

11        So they've disclosed no evidence that would

12   support how a jury is supposed to make this

13   calculation.  All they have is an expert that said,

14   "well, there's some literature that says he's gonna

15   do worse with a tumor thrombus at a certain level."

16             THE COURT:  That's Metwalli?

17             MR. RUPCICH:  Yes, correct.  And there's no

18   evidence of what a jury is supposed to do with that

19   or how it would be able to calculate a percentage of

20   lost life expectancy for that.

21        So my position is that without an expert

22   opinion on how that's supposed to work or to what

23   extent, what percentage, what amount of years he's

24   decreased, to a reasonable degree of medical

25   certainty, that it's not been sufficiently disclosed

1   through expert testimony and it should not go to the

2   jury.

3            THE COURT:  Mr. Strom, are you going to

4   respond?

5            MR. STROM:  Thank you, Your Honor.

6        First, plaintiff's report, expert disclosure

7   from Dr. Metwalli disclosed the fact of diminished

8   life expectancy based on the medical literature as

9   well as Dr. Metwalli's expertise and experience, his

10  practice as a urologist and an oncologist.

11       With respect to defendants' position, it

12  appears that these issues go to weight rather than

13  to admissibility of this evidence.  And that there

14  may be certain kinds of expert testimony available

15  in some circumstances about actuarial tables, but

16  that an actuary is not necessary when an expert

17  doctor who is qualified as such is able to offer

18  opinion testimony as to survivability, as to

19  diminished life expectancy.

20       And that defendants had full and fair

21  opportunity to cross-examine during deposition

22  Dr. Metwalli on exactly the points we wish to raise;

23  those points that Dr. Metwalli has made about the

24  diminished life expectancy, the worsened prognosis,

25  and the increased possibility of an earlier death.

1          THE COURT:  I agree.  It will be denied.
2      Then we have motion for leave to file seventh
3  motion.  That's the one I already granted.  You're
4  to file a response by Friday.
5      Then we have Defendant Mincy motion in limine.
6          MS. GLEASON:  Your Honor, did you rule on
7  the motion by Wexford on other lawsuits and
8  discipline?
9          MR. RUPCICH:  I think we missed that.
10          THE COURT:  Which number is that?
11          MS. GLEASON:  It's on page 10 of Wexford's
12  motion in limine.  Fifth motion, other lawsuits and
13  discipline.  If it's not in the binder, I'll bring
14  up my copy.
15          THE COURT:  No, I have it.
16          MS. GLEASON:  Okay.  And the sixth motion.
17          MR. RUPCICH:  I think the sixth is we've
18  more or less agreed, so I would suggest it's
19  appropriate to deny with leave to renew.
20          THE COURT:  All right.
21          MR. RUPCICH:  I mean insurance; the
22  lawsuits and discipline is disputed, number 5.
23          THE COURT:  So you are still disputing
24  lawsuits and employment discipline?
25          MR. RUPCICH:  Correct, Your Honor.  It's

1    inadmissible character evidence.

2         THE COURT:  I will show that as granted.

3         MR. STROM:  Your Honor, if plaintiff may be

4    heard on --

5         THE COURT:  Hm-mm.

6         MR. STROM:  -- defendant's motion in limine

7    number 5.

8        The evidence that defendants seek to exclude

9    here is relevant to Wexford's direct deliberate

10   indifference claim.  The claim that they have a

11   policy or practice under Benld that is -- evinces

12   deliberate indifference.

13       As a result, plaintiff requests that the Court

14   instead take this particular motion under

15   advisement, deny perhaps with leave to renew during

16   the course of the trial.  But the purpose here of

17   this evidence isn't simply to discuss character or

18   to discuss the impermissible inferences that may be

19   drawn from character evidence.  Defendants have

20   contended that this is only good--and without

21   citation--for the suggestion that inmates are

22   particularly litigious and other inferences,

23   permissible inferences are possible as well.

24       Some of those inferences include that there is

25   a policy or practice--which is our burden to prove

1    at trial--as to the deliberate indifference, that

2    causes the deliberate indifference to inmates'

3    medical needs and specifically to our client's

4    medical needs.

5        The personnel files are relevant for the same

6    reasons.  And personnel files, under the

7    circumstances, have been held to be admissible to

8    demonstrate not impermissible inferences based on

9    prior acts, but rather, to show things like the

10   potential competency of a particular medical

11   defendant to practice as a medical care provider.

12       There are other permissible inferences that can

13   be drawn such as modis operandi, lack of mistake,

14   knowledge, state of mind kinds of evidence that can

15   be -- or inferences that can be drawn from this

16   evidence.

17       And so with respect, we request that the Court

18   instead deny with leave to revisit during the course

19   of trial.

20           THE COURT:  All right.  I will deny it with

21   leave to renew.

22       Number 6 was Mr. Dean does not intend to offer

23   evidence contrary to Federal Rule of Evidence 4.11

24   and plaintiff does not intend to offer argument

25   prohibited by the rules of evidence.

1      So that takes care of yours, Mr. Rupcich?  I'm

2   sorry, plaintiff's rather.

3           MR. RUPCICH:  Those are mine.  And yes, it

4   does.

5           THE COURT:  Okay.

6      Then there's a motion I already ruled on.  And

7   then we have a motion in limine on behalf of

8   Ms. Mincy.

9           MR. TYRRELL:  Yes, Your Honor.  Can we go

10  back to the lawsuits and discipline as concerns Ms.

11  Mincy?

12          THE COURT:  Hm-mm.

13          MR. TYRRELL:  Ms. Mincy did join

14  co-defendant's response and oppositions to

15  defendant's motion -- or Plaintiff's motions in

16  limine.  And we join --

17     Sorry.  Defendant Mincy joined co-defendant's

18  motion in limine.  I believe they've all been

19  resolved except for the issue of the lawsuits and

20  discipline.

21     The issues plaintiff identified do not concern

22  Ms. Mincy because there is no Monell claim against

23  the Department of Corrections or Ms. Mincy directly.

24     So we would ask that the motion in limine

25  concerning loses and grievances as it applies to

1    Ms. Mincy be granted because the reasons plaintiff

2    intends to introduce that evidence do not concern

3    Ms. Mincy.

4        The only other motion in limine Defendant Mincy

5    filed was the no Golden Rule appeal.  I do believe

6    plaintiff's counsel agrees.  The main thing that

7    Defendant Mincy seeks to exclude is any added

8    evidence that a juror should put themselves

9    themselves in Mr. Dean's shoes.  I think that's the

10   straight Golden Rule.  We ask that the Court exclude

11   such evidence.

12           THE COURT:  First of all, there is no

13   Monell claim, Ms. Strom, against Ms. Mincy?

14           MR. STROM:  That's correct, Your Honor.

15   That being said, the second purpose identified in

16   our opposition may be relevant to Ms. Mincy.  And

17   that is the state of mind kinds of evidence rather

18   than propensity evidence and -- as well as the

19   evidence of qualification for any medical provider

20   that may -- that those past records, those

21   individual employment records may be relevant to

22   that question.

23           THE COURT:  Okay.  So I will deny as to

24   Mincy with leave to renew.

25       All right.  Then we have motions in limine 1

1   through 6.

2       MS. GLEASON:  Your Honor, you ruled on

3   those.

4       THE COURT:  I think every one of them but

5   the seventh has been ruled on.  Which is the Golden

6   Rule which I'm granting.

7     So I'm not -- to clarify, I'm not stating that

8   you cannot argue to the jury that they can rely on

9   their own experience as is stated in the jury

10  instruction.

11      MR. STROM:  Thank you, Your Honor.

12      THE COURT:  Okay.  I did approve the

13  pre-trial order.  Let's go to the jury instructions.

14    So I'm just going to say Court's 1, and if

15  there's an objection, object.  And if there's no

16  objection, state no objection.  And I'll try to get

17  through these in the next 22 minutes.

18    Does everybody have their jury instructions?

19      MR. RUPCICH:  Yes.

20      MR. TYRRELL:  Yes, Your Honor.

21      THE COURT:  Before I begin that, let me

22  take a short break.

23    (A recess was taken.)

24      THE COURT:  Court is back in session.  Got

25  your jury instructions there, Mr. Strom?

1           MR. STROM:  Yes, Your Honor.

2           THE COURT:  Okay.  Let me ask two

3    questions, I want to make sure:  Have we

4    consented -- have you consented to the Magistrate

5    for purposes of jury selection on the record?

6           MR. STROM:  Plaintiff has consented.

7           MR. RUPCICH:  Yes.

8           MR. TYRRELL:  Yes, Your Honor.

9           THE COURT:  Okay.  Do you have objections

10   to the jury asking questions?

11          MR. MARTIN:  No, Your Honor, we don't.

12          MR. RUPCICH:  Yes, I do.

13          MR. TYRRELL:  We do as well, Your Honor.

14          THE COURT:  I will take your objections

15   under advisement and make a decision well in advance

16   of trial.  Which means this week.

17       Okay.  Any objection to Court's 1?

18          MR. MARTIN:  No, Your Honor.

19          MR. RUPCICH:  No.

20          MR. TYRRELL:  No, Your Honor.

21          THE COURT:  Given; no objection.

22       Courts 2?

23          MR. MARTIN:  No, Your Honor.

24          MR. RUPCICH:  No.

25          MR. TYRRELL:  No, Your Honor.

1          THE COURT:  Given; no objection.
2       3?
3          MR. MARTIN:  No, Your Honor.
4          MR. RUPCICH:  No.
5          MR. TYRRELL:  No objection.
6          THE COURT:  Given; no objection.
7       Court's 4?
8          MR. MARTIN:  No, Your Honor.
9          MR. RUPCICH:  No objection.
10          MR. TYRRELL:  No objection.
11          THE COURT:  Given; no objection.
12       Court's 5?
13          MR. MARTIN:  No, Your Honor.
14          MR. RUPCICH:  No objection.
15          MR. TYRRELL:  No objection.
16          THE COURT:  Court's 6?
17          MR. MARTIN:  No, Your Honor.
18          MR. RUPCICH:  No objection.
19          MR. TYRRELL:  No objection.
20          THE COURT:  Given; no objection.
21       7?
22          MR. MARTIN:  No, Your Honor.
23          MR. RUPCICH:  No objection.
24          MR. TYRRELL:  No objection.
25          THE COURT:  Given; no objection.

1    Court's 8?

2         MR. MARTIN:  Yes, Your Honor.

3         THE COURT:  Okay.  I am going to withdraw

4    Court's 8 and give Plaintiff's 8, which is a

5    combination I believe of 8 and 14.  Is there any

6    objection to that?  Mr. Rupcich?

7         MR. RUPCICH:  Yeah, I do object to that.  I

8    don't think it's appropriate.  I think it's an

9    attempt to minimize the import of the criminal

10   conviction by tying it into this instruction.  The

11   pattern instruction separates them out.  And I think

12   it may give the jury the instruction -- or the

13   impression --

14        I know it says for instance, but I think

15   evidence for a limited purpose should stand on its

16   own because there could be any number of things.  I

17   don't know why we would use this as an example.

18   Unless we're going to list everything that was

19   admitted for a limited purpose during the course of

20   a trial.

21        THE COURT:  Mr. Tyrrell?

22        MR. TYRRELL:  Defendant Mincy joins

23   co-defendant's position, we'd also object.

24        THE COURT:  All right.  I'm going to show

25   Plaintiff's 8 as given over objection.

1        Court's 9?

2            MR. MARTIN:  No, Your Honor.

3            MR. RUPCICH:  No objection.

4            MR. TYRRELL:  No objection.

5            THE COURT:  9 is given; no objection.

6        Court's 10?

7            MR. MARTIN:  No, Your Honor.

8            MR. RUPCICH:  No objection.

9            MR. TYRRELL:  No objection.

10            THE COURT:  10 is given; no objection.

11        11?

12            MR. MARTIN:  No, Your Honor.

13            MR. RUPCICH:  No objection.

14            MR. TYRRELL:  No objection.

15            THE COURT:  Given; no objection.  Court's

16   12?

17            MR. MARTIN:  No, Your Honor.

18            MR. RUPCICH:  No objection.

19            MR. TYRRELL:  No objection.

20            THE COURT:  Given; no objection.

21        Court's 13?

22            MR. MARTIN:  Yes, Your Honor, we object.

23   We had proposed an alternative to Court's 13.

24            THE COURT:  Is there any objection to

25   Plaintiff's 13, an alternative?

1          MR. RUPCICH:  Yes.

2          THE COURT:  That objection is?

3          MR. RUPCICH:  Well, I object to the -- I

4     object to yours too.

5          THE COURT:  Okay.

6          MR. RUPCICH:  So I object to the idea of

7     this instruction.  The pattern instruction, the

8     distinction it's aimed at getting at is a

9     corporation.  That a corporation is entitled to the

10    same rights as an individual, not an individual

11    against an individual.  So there's no doubt Mr. Dean

12    is a person, so I don't know why the jury needs to

13    be told he's more equal than anyone else.

14         THE COURT:  It says all parties are equal.

15         MR. RUPCICH:  In this case, plaintiff was

16    an incarcerated individual.  Why -- I mean, yeah,

17    but it specifically points out that he's

18    incarcerated.  The import being that -- I don't see

19    a reason that modification needs to go to the jury.

20    The jury will understand they're to weigh the

21    evidence and the testimony equally without being

22    told that they specifically need to consider

23    plaintiff as being equal to everyone else.

24         THE COURT:  So I will show Court's 13

25    objected to; given over objection.  I will show

1    Plaintiff's 13 as objected to and refused.

2         So then I have Court's 14 which is withdrawn in

3    light of the fact that I gave Plaintiff's 8.  Over

4    objection.

5         That's over objection to the Court withdrawing

6    14 and the objection also to Plaintiff's 8 which is

7    given over objection.

8         Court's 15?

9              MR. MARTIN:  No objection, Your Honor.

10             MR. RUPCICH:  No objection.

11             MR. TYRRELL:  No objection.

12             THE COURT:  Given; no objection.

13        Court's 16?

14             MR. MARTIN:  No objection, Your Honor.

15             MR. RUPCICH:  No objection.

16             MR. TYRRELL:  No objection.

17             THE COURT:  Given; no objection.

18        Court's 17?

19             MR. MARTIN:  No objection.

20             MR. RUPCICH:  No objection.

21             MR. TYRRELL:  No objection.

22             THE COURT:  Given; no objection.

23        Court's 18?

24             MR. MARTIN:  No objection, Your Honor.

25             MR. RUPCICH:  No objection.

```
 1              MR. TYRRELL:  No objection.

 2              THE COURT:  Given; no objection.

 3         Court's 19?

 4              MR. MARTIN:  No objection, Your Honor.

 5              MR. RUPCICH:  No objection.

 6              MR. TYRRELL:  No objection.

 7              THE COURT:  Given; no objection.

 8         Court's 20?

 9              MR. MARTIN:  No objection.

10              MR. RUPCICH:  No objection.

11              MR. TYRRELL:  No objection.

12              THE COURT:  Given; no objection.

13         Court's 21?

14              MR. MARTIN:  Plaintiff objects, Your Honor,

15    and we proposed an alternative to Court's 21.

16              THE COURT:  I have Plaintiff's 21.  Is

17    there an objection to Court's 21, Mr. Rupcich?

18              MR. RUPCICH:  There is no objection to

19    Court's 21.

20              MR. TYRRELL:  I have no objection to

21    Court's 21, Your Honor.

22              THE COURT:  And you do have objection to

23    Plaintiff's 21?

24              MR. TYRRELL:  Yes, Your Honor.

25              MR. RUPCICH:  Yes, Your Honor.
```

1          THE COURT:  All right.  I'm going to show

2     that 21 will not be given because of the objections,

3     but I am going to adopt some of the language and

4     revise Court's 21 to be Court's 21A.  And this is

5     what I'm revising it too:

6          You may have heard evidence about whether a

7     defendant's conduct violated a, insert Wexford or

8     I.D.O.C. rule, regulation, policy, or guideline.

9     And I'm striking prison or corporate rule.  You may

10    consider this evidence in your deliberations, but

11    remember, the issue is whether plaintiff's rights

12    were violated as I describe later in these

13    instructions and not whether a, insert Wexford or

14    I.D.O.C. rule, regulation, policy, or guideline

15    might have been violated; striking again prison or

16    corporate rule.

17         Is there any objection to that modified 21A?

18              MR. MARTIN:  No objection to 21A.

19              MR. RUPCICH:  I'm agreeable to that.

20              MR. TYRRELL:  No objection to 21A.

21              THE COURT:  Okay.  I'll show 21A given; no

22    objection.

23         22?

24    Court's 22.  Excuse me?

25              MR. MARTIN:  No objection, Your Honor.

1          MR. RUPCICH:  No objection.

2          MR. TYRRELL:  No objection.

3          THE COURT:  Given; no objection.

4      Now we have Court's 23 and we have an

5  alternative Plaintiff's 23.

6          MR. RUPCICH:  And Wexford Defendant's 2.

7  And then the state has one as well.

8          THE COURT:  Okay.  What is the state's?

9          MR. TYRRELL:  Your Honor, the state's is

10  Mincy 23A which was filed at the Court's Docket

11  Entry 131.

12          THE COURT:  I don't believe I have 23A?

13          MR. TYRRELL:  I brought an extra copy, Your

14  Honor.

15          THE COURT:  Okay.  Thank you.

16      I do have 23A, I just couldn't see it.

17      So first of all, the submission of the

18  alternatives meaning you do have an objection to

19  Court's 23?

20          MR. MARTIN:  Yes, Your Honor.

21          MR. RUPCICH:  Yes, Your Honor.

22          MR. TYRRELL:  Yes.

23          THE COURT:  All right.  I'm going to show

24  23 as given over all objections.  And Plaintiff's 23

25  as refused, Defendant Mincy's 23A as refused.  I

1    assume there is an objection to Plaintiff's 23?

2            MR. TYRRELL:  Yes.

3            MR. RUPCICH:  Yes.

4            THE COURT:  And I assume, plaintiffs, you

5    have an objection to Mincy's 23A?

6            MR. MARTIN:  Yes, Your Honor.

7            THE COURT:  I'll show it as objected to and

8    refused.

9        Wexford's 2, I assume you object?

10           MR. MARTIN:  Yes, Your Honor.

11           THE COURT:  I will show it as refused.

12       Then we have Wexford's 6 as an alternative.  Is

13   that objected to?

14           MR. MARTIN:  Yes, Your Honor.

15           THE COURT:  I'm going to show it as

16   refused, but I am going to adopt some modifications,

17   calling this Court's 24A.

18       I'm going to strike the first paragraph.  And

19   so I will then put in the first paragraph the

20   following three things by a preponderance of the

21   evidence.  Paragraph 1 will then be reasonable

22   measures were not taken, striking consciously.

23       The next paragraph would become 2 instead of 3,

24   and then striking conscious.

25       And then the fourth paragraph becomes 3.

1      Any objection?  Basically striking conscious

2  and that first paragraph.

3          MR. RUPCICH:  I'm sorry, Judge, what -- I

4  got lost.  What number of your instructions are you

5  on?

6          THE COURT:  24.

7          MR. RUPCICH:  The Monell instruction.  And

8  you're -- I'm sorry, you're --

9          THE COURT:  Can you put this on the

10  overhead so they can see this?  No, because of the

11  video.  Here, step up and take a look at my

12  modifications.

13          MR. RUPCICH:  I apologize, struggling a lot

14  of paper.

15          THE COURT:  I apologize for being too

16  speedy.

17          MR. MARTIN:  We have no objection.

18          MR. RUPCICH:  I object.

19          THE COURT:  Okay.

20          MR. RUPCICH:  Do you want a record?

21          THE COURT:  Yes, go ahead.

22          MR. RUPCICH:  It doesn't include deliberate

23  indifference which is an essential elements of

24  Monell, according to the case law we cited in our

25  Instruction 6.  This instruction fails to hold the

1    plaintiff to prove corporate fault at the level of

2    an 8th Amendment violation which a Monell claim is.

3              THE COURT:  Mr. Tyrrell?

4              MR. TYRRELL:  Court's 24 doesn't concern my

5    client.  I have no objection to Court's 24.

6              THE COURT:  Okay.  I will show it objected

7    to and given over objection.

8         And then as I said before, Wexford Defendant's

9    6 which was an alternative to 24 is refused.

10             MR. RUPCICH:  Just for the record, Judge, I

11   did see a typo in mine this morning and I re-filed

12   element 5 with the correction.  But it doesn't seem

13   to matter at this point.

14             THE COURT:  Okay.  Thank you for telling

15   me.

16        All right.  Let's go to Court's 25.

17             MR. MARTIN:  No objection.

18             THE COURT:  You submitted Wexford

19   Defendant's 8.

20             MR. RUPCICH:  Yeah.  I'm okay with yours.

21   I'll withdraw mine.

22             THE COURT:  All right.  I'll show 25 as

23   given; no objection?

24             MR. TYRRELL:  Correct.

25             THE COURT:  Thank you.  And Wexford's 8 is

1    withdrawn.

2        Then we have Court's 26.  Any objection?

3            MR. MARTIN:  Yes, Your Honor.  We objected

4    and we proposed an alternative.

5            THE COURT:  Yes, I see plaintiff's

6    alternative to Court's 26.  Is there any objection

7    to Court's, Mr. Rupcich?

8            MR. RUPCICH:  Sorry.

9            THE COURT:  Plaintiffs submitted an

10   alternative.

11           MR. RUPCICH:  You know, Judge, I was

12   looking at -- I apologize.  I did intend to submit

13   our 9 as an opposition to the Court's 25.

14       And what I did was split them up.

15           MS. GLEASON:  Your Honor, that may be in

16   the additional section.

17           MR. RUPCICH:  Okay.  If I'm getting --

18           MS. GLEASON:  Your additional section.  I

19   didn't know if it was attached to anything.

20           THE COURT:  Okay, we will address that

21   shortly.

22           MR. RUPCICH:  I'm sorry.  You were

23   addressing 26?

24           THE COURT:  26.

25           MR. RUPCICH:  That's fine.

1          THE COURT:  Plaintiffs do object, and have

2     submitted an additional sentence which, quite

3     frankly, I should have included before because it is

4     in the I.P.I.

5          So I'm going to show the Court's 26 as

6     withdrawn and Plaintiff's 26 as given.  Is that over

7     objection?

8          The additional being the phrase "deviation from

9     the standard of care means the same thing as

10    professional negligence."

11          MR. RUPCICH:  That's fine, I don't object.

12          THE COURT:  Okay.  Mr. Tyrrell?

13          MR. TYRRELL:  We have no objection.

14          THE COURT:  Okay.  Given; no objection.

15     All right.  We are to Court's 27.

16          MR. MARTIN:  No objection.

17          MR. TYRRELL:  No objection.

18          THE COURT:  Mr. Rupcich, I think you have

19    an alternative.

20          MR. RUPCICH:  Yes.

21          THE COURT:  Wexford 14.  So I'm going to

22    show Court's 27 as given over objection of Defendant

23    Wexford.  And then Wexford Defendant's 14 -- I

24    assume it's objected to, Mr. Martin?

25          MR. MARTIN:  Yes, Your Honor.

1          MR. RUPCICH:  I would just say--sorry--for

2     the record that the jury needs to be given -- you

3     know, when I've tried medical malpractice cases in

4     Illinois, the jury needs to know from the pleadings

5     what the defendants are alleged to have done.  And

6     the instruction tendered by the Court and the

7     plaintiff don't tell the jury what they need to

8     find.  Instead I guess it would be a moving target

9     where we don't really know.  So that's my position.

10         THE COURT:  Okay.  I'm showing that as

11    refused.

12        Then Court's 28.  Any objection?

13         MR. MARTIN:  No objection.

14         MR. TYRRELL:  No, Your Honor.

15         MR. RUPCICH:  No objection.

16        THE COURT:  Court's 29?

17         MR. MARTIN:  Your Honor, we have no

18    objection to either of the 29s.  There are two.

19         MS. GLEASON:  I apologize, Your Honor.

20        THE COURT:  You're absolutely correct.  So

21    34 of 47, any objection?

22         MR. MARTIN:  No objection.

23         MR. RUPCICH:  No objection.

24         MR. TYRRELL:  No objection.

25        THE COURT:  Given; no objection.

1          And then we have Court's 29, I will label it as

2    29-2.  I apologize for that.  Any objection?

3              MR. MARTIN:  No objection, Your Honor.

4              MR. RUPCICH:  No objection to 29.

5              MR. TYRRELL:  No objection to 29-2.

6              THE COURT:  29-2?  I just labeled it 29-2.

7              MR. RUPCICH:  29-2, correct.

8              THE COURT:  All right.  Right now it is

9    11:00 and we have to connect to Butner for a

10   hearing.  I'll give you two options.  Am I free at

11   1:30?

12             THE CLERK:  No; we have a hearing.

13             THE COURT:  What's the hearing?

14             THE CLERK:  It is Laborers show cause

15   hearing.

16             THE COURT:  I apologize.  I have a meeting

17   at noon here at the courthouse.  Can I have you come

18   back at 1?  Is that an option?  Or at two, you -- we

19   could reconvene in video conference at some time.

20             MR. MARTIN:  We're fine to come back at

21   one.

22             THE COURT:  Mr. Rupcich?

23             MR. RUPCICH:  That's fine.

24             MR. TYRRELL:  1:00 is fine.

25             THE COURT:  We will see you at 1:00 and we

1    will complete jury instructions.

2          THE CLERK:  I have one question.  Do they

3    need video?

4          THE COURT:  Will your waive your client's

5    presence for the completion of jury instructions?

6          MR. MARTIN:  Yes, we will.

7          THE COURT:  And your office also?  We can

8    have them by phone.

9          MR. MARTIN:  Our office is waived as well.

10         THE COURT:  We can have them by phone.

11         MR. MARTIN:  That would be great.

12         THE COURT:  Thank you.  I apologize, I have

13    a packed court today.  Court is in recess in this

14    matter.

15        (A recess was taken.)

16    THE COURT:  Good afternoon, Court is reconvened.

17        We are on Court's 30.  Any objection to Court's

18    30?

19         MR. MARTIN:  Yes, Your Honor.  We object

20    and we have proposed an alternative 30.

21         THE COURT:  I have the alternative 30.  Any

22    objection to the alternative 30?

23         MR. RUPCICH:  Yes.  Along the lines of

24    diminished life expectancy, what I previously said

25    in response to my motion in limine I'll

1    reincorporate.

2        And as far as the value of medical care,

3    he's -- the value of medical care, there's been no

4    evidence disclosed on that, there's been no expert

5    testimony.  The only piece of -- I hesitate to use

6    the word evidence, but there was an email from

7    Mr. Strom that's listed as a pre-trial exhibit or

8    trial exhibit, I'm sorry, that -- in which he

9    recounts the current cost of the medication Mr. Dean

10   is on.

11       But there's no life-care planner to testify to

12   future medical expenses.  I don't believe it's an

13   issue in this case.  At least it wasn't until we

14   started working on the jury instructions at trial.

15            THE COURT:  Who wishes to respond?

16       Mr. Strom.

17            MR. STROM:  Thank you, Your Honor.

18       Plaintiff's position is that in terms of

19   assessing the damages here, plaintiff recognizes

20   that, of course, there is some softness, if you

21   will, to the ability to say "Here are the damages in

22   dollar amounts" that specifically attached to things

23   like loss of life, things like pain and suffering,

24   things like mental anguish.

25       And so these are all things that are proper to

1    instruct the jury to consider.  And that the

2    addition of discussing the present care -- or the

3    present value of the medical care and supplies that

4    are reasonably certain to be needed by our client is

5    just one way of thinking about putting a dollar

6    figure on these otherwise non-monetary kinds of

7    costs, kinds of harms.

8        We can't talk in terms of say a liquidated

9    damages figure here.  And so thinking about how do

10   we conceive of the damages involved, one way to

11   think about those damages is what additional care

12   will Mr. Dean need.

13       Additionally, our experts, our medical experts

14   qualified to testify about what they believe may be

15   necessary in terms of future care, among other

16   things, they would have predicted that based on

17   Mr. Dean's care or lack thereof up to the point of

18   his surgery, that he would incur additional costs or

19   there would be additional costs to his care due to

20   the metastasis of his cancer and the need for

21   systemic therapies to address it that may not have

22   been necessary but for the delays in this case.

23       And so as a result, thinking about things like

24   the present value of future medical care is one way

25   to put a dollar figure on those kind of damages.

1          THE COURT:  Mr. Rupcich?

2          MR. RUPCICH:  That testimony was not

3     disclosed.  And value of medical care is not a

4     non-economic damage, it is an economic damage.

5     That's not a vague idea like pain and suffering,

6     it's a specific amount that they were required to

7     disclose testimony on and prove up based on his --

8     how long they think he's going to live, based on his

9     diagnosis and what the cost of that future care

10    would be.  And there's just simply been nothing.  I

11    would ask where has that -- those dollar figures

12    been disclosed in expert testimony?

13         THE COURT:  Mr. Strom?

14         MR. STROM:  In terms of the dollar figures

15    that are disclosed, there are none that appear in

16    our expert's reports.  That being said, that there

17    are not only our retained experts, but also the

18    treating physicians in this case who could attest to

19    the costs that are involved with these kinds of

20    future care problems and then there is also --

21         THE COURT:  There is testimony or there is

22    evidence of the cost of medicine; is that right?

23         MR. STROM:  Yes.  I believe so, Your Honor.

24         MR. RUPCICH:  If Mr. --

25         THE COURT:  Wait, are you finished?

1          MR. STROM:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MR. RUPCICH:  Where is the evidence on the

4  cost of the care other than Mr. Dean -- I'm sorry,

5  Mr. Strom's email to me recounting the cost of the

6  care?  Which I think would -- if he's going to

7  testify, I think we have a witness advocate issue.

8          MR. STROM:  Your Honor, I have no plans to

9  testify.  That being said, you know, I believe the

10  questions about the costs involved for Mr. Dean's

11  care to this point are going to be at least

12  reflected in if not directly stated in some of the

13  documents that have been produced to us by

14  defendants in this case as to the claims that were

15  involved; some of these productions being made in

16  response to our requests for production over the

17  course of the last few months.

18      And so yes, I can't cite to you chapter and

19  verse anything our experts have said about the

20  dollar figure, but the dollar figures are

21  ascertainable.  And the dollar figures in the

22  circumstances of his care to date may be uniquely

23  within the knowledge of defendants.

24      As well as the treating physicians who have

25  been disclosed by both sides.

1              THE COURT:  Okay.  I'm going to reserve on

2    Court's 30 and Plaintiff's 30.

3         Court's 31.

4              MR. TYRRELL:  Your Honor, just briefly.  I

5    don't think we provided -- Defendant Mincy does not

6    object to Court's 30, but we join Mr. Rupcich's

7    objection to Plaintiff's 30, just so that's clear.

8              THE COURT:  Okay.  Thank you.

9         All right.  We have an alternative that Wexford

10   has submitted which is called Wexford Defendant's

11   15.

12        Quite frankly, I think I prefer Wexford's.

13   What's the plaintiff's position?  It would be at

14   number 134.

15             MR. RUPCICH:  The punitive instruction,

16   correct, Judge?

17             THE COURT:  Mm-hmm.  Defendant's 15.

18             MR. MARTIN:  Give us a moment while we get

19   organized.

20        No, we have no objection.

21             THE COURT:  Okay.  I'll show the Court's 31

22   withdrawn and you have no objection to Wexford 15?

23             MR. MARTIN:  Yes, that's correct.

24             THE COURT:  Okay.  So Wexford 15 is given

25   no objection.

1    Mr. Tyrrell?

2         MR. TYRRELL:  No objection, Your Honor.

3         THE COURT:  All right.  Then we're to

4    Court's 32, deliberations.  Any objection?

5         MR. MARTIN:  No, Your Honor.

6         THE COURT:  Mr. Rupcich?

7         MR. RUPCICH:  I'm sorry, I was to --

8         THE COURT:  Court's 32.

9         MR. TYRRELL:  Defendant Mincy has no

10   objection.

11        MR. RUPCICH:  No objection.

12        THE COURT:  Given; no objection.

13    Court's 33?

14        MR. MARTIN:  No objection.

15        MR. RUPCICH:  No objection.

16        MR. TYRRELL:  No objection.

17        THE COURT:  Court's 34?

18        MR. MARTIN:  No objection.

19        MR. RUPCICH:  No objection.

20        MR. TYRRELL:  No objection.

21        THE COURT:  Court's 35?

22        MR. MARTIN:  No objection.

23        MR. RUPCICH:  No objection.

24        MR. TYRRELL:  No objection.

25        THE COURT:  Court's 36?

1          MR. MARTIN:  No objection.

2          MR. RUPCICH:  No objection.

3          MR. TYRRELL:  No objection.

4          THE COURT:  Given; no objection.

5     So I'm going to withdraw the Court's verdict

6  forms.  Wexford correctly points out it's -- Court's

7  37 is withdrawn.  Wexford correctly points out that

8  punitives are only on 8th Amendment claim.  But

9  Wexford did not number the verdict form.  So we'll

10  call it Wexford's verdict form.

11     Any objection?

12     I believe the only difference is the

13  specification that punitives are only allowed on the

14  8th Amendment claim.

15          MR. RUPCICH:  Actually, I object to my own

16  verdict form.

17          THE COURT:  Okay.  What's wrong?

18          MR. RUPCICH:  Well, Number 4.  Having found

19  for the Plaintiff on one or more of the claims, we

20  fix the total compensatories.

21     If this is going to go to the jury on loss of

22  diminished life expectancy or medical bills, loss of

23  enjoyment of life, I think we probably -- we need to

24  enumerate blanks for each of those elements of

25  compensatory damages if are those are going to be

1  potentially -- I know you reserved, but that's my

2  potential issue.

3          THE COURT:  Okay.  I'm going to show you as

4  having withdrawn your verdict form over your own

5  objection.  And you'll resubmit.

6          MR. RUPCICH:  Subject to the Court's

7  rulings on the damages that are going to be

8  submitted; correct.

9          THE COURT:  Okay.  Then we are to

10  Plaintiff's 1, and --

11          MR. MARTIN:  So, Your Honor, just so that

12  we are clear --

13          THE COURT:  The Court's verdict forms and

14  Wexford verdict forms are withdrawn at this time.

15  And they will -- Wexford will submit a new one.  I'm

16  not ruling on it.

17          MR. MARTIN:  And then we'll deal with it

18  later?

19          THE COURT:  Yes.

20      So Plaintiff's 1, any objection?

21          MR. MARTIN:  No objection.

22          MR. TYRRELL:  No objection.

23          MR. RUPCICH:  No objection to that.

24          THE COURT:  Given; no objection.

25      Then we have Plaintiff's 2 additional.  Now, is

1    there any dispute about respondent superior?  I

2    thought that was conceded?

3              MR. RUPCICH:  Right.  Scope of employment

4    is not disputed.

5              THE COURT:  So do you wish me to give that

6    anyway?

7              MR. PELZ:  Judge, I don't think we would

8    need to under the circumstance because it seems to

9    me that would be a matter of law.  And you would

10   just direct a verdict against them if there's a

11   verdict against one of the employees.

12             THE COURT:  Okay.  So we'll show

13   Plaintiff's 2 additional is withdrawn.

14             MR. MARTIN:  Well --

15             THE COURT:  You may resubmit if --

16             MR. MARTIN:  It would have to -- sorry.

17   We'd have to change the jury instruction to clearly

18   instruct, because the jury wouldn't know when they

19   were filling out the form how to fill it out the

20   form --

21             THE COURT:  You may submit additional jury

22   instructions.

23             MR. MARTIN:  Yeah.  This would -- you just

24   have -- you'd make it clear in this jury instruction

25   that respondent superior was established.

1          MR. RUPCICH:  We could just -- I mean, what

2     Mr. Pelz said.  If there's a verdict against one of

3     the individuals where we don't contest scope of

4     employment, the verdict would be against Wexford as

5     well.  I don't know that we need to confuse the jury

6     with this issue.

7          Is that essentially -- you agree, Mr. Pelz?

8          MR. PELZ:  Yes.  As I understand it -- and

9     we did say we thought this was necessary if there

10     was gonna be any question of respondent superior

11     when I saw -- actually, I thought in their

12     instructions as well as in the pre-trial order that

13     wasn't being contested.

14          So what I think you would have is with respect

15     to -- there's a separate count.  On that count, I

16     think what you would do is if there's a -- if

17     there's a -- that's a state law count.

18          THE COURT:  Hm-mm.

19          MR. PELZ:  On that state law count, if

20     there's a count against -- if there's a liability

21     against one of the employees, you would direct a

22     verdict in favor of plaintiff as to that count.

23          I guess Mr. Martin raises the question of what

24     do we do with damages on that count?  I think it

25     could be that any of the damages awarded against any

1    of those employees would be deemed to be the damages

2    under that count.  That would seem to be correct,

3    but --

4              MR. MARTIN:  There's a disagreement at

5    plaintiff's counsel table.  The jury would have to

6    know that they were making a finding about --

7    against Wexford for one of those state law counts in

8    order to assess everything.  That's -- and maybe

9    we -- maybe, Your Honor, we can resubmit this --

10             THE COURT:  Okay.

11             MR. MARTIN:  -- with the way -- we'll reach

12   consensus internally on this.

13             THE COURT:  All right.  Plaintiff's 2 is

14   withdrawn.  You will resubmit 2A.

15        Okay.  We have Wexford Defendant's 1.  And I

16   assume there's no objection?  I should have included

17   it myself.

18             MR. MARTIN:  No, Your Honor, there isn't.

19             THE COURT:  Mr. Rupcich?

20             MR. TYRRELL:  No.

21             THE COURT:  Mr. Tyrrell has no objection.

22   Does Mr. Rupcich?

23             MR. RUPCICH:  I don't object to my own

24   instruction.

25             THE COURT:  To your own instruction this

1    time.

2        Wexford 3?

3            MR. MARTIN:  We object.  I think you've

4    already covered this one as well.

5            THE COURT:  Okay.  I'll show plaintiff's

6    object.  It is refused.  I assume, Mr. Tyrrell, you

7    wish to have it given?

8            MR. TYRRELL:  Yes, I would agree with

9    Mr. Rupcich.

10           THE COURT:  Okay.  Wexford 4?

11           MR. MARTIN:  We object, Your Honor.

12           THE COURT:  Plaintiffs object?

13           MR. MARTIN:  Yes.

14           THE COURT:  I will show it as refused.  I

15   think it's already in the pattern instruction

16   anyway.

17       Wexford 5, any objection?

18           MR. MARTIN:  We object.

19           THE COURT:  I assume, Mr. Tyrrell, you have

20   no objection?

21           MR. TYRRELL:  I have no objection.

22           THE COURT:  I'm going to show it objected

23   to and refused.

24       Wexford 7?

25           MR. MARTIN:  We object.

```
 1              THE COURT:  Mr. Tyrrell?
 2              MR. TYRRELL:  No objection.
 3              THE COURT:  I'll show Plaintiff's objecting
 4    and it's refused.
 5         Wexford 9?
 6              MR. MARTIN:  We object.
 7              MR. TYRRELL:  No objection.
 8              THE COURT:  I'll show it as refused.
 9         Wexford 10?
10              MR. MARTIN:  We object.
11              MR. TYRRELL:  No objection.
12              THE COURT:  I'm going to refuse it.
13         Number 11?
14              MR. MARTIN:  We object.
15              MR. TYRRELL:  No objection.
16              THE COURT:  I'm going to show it as
17    refused.
18         So then --
19              MR. RUPCICH:  I can withdraw 12 subject to
20    further discussion with them on this issue we were
21    just talking about.
22              THE COURT:  Okay.  I was going to say it is
23    the same issue as we previously discussed.  12 is
24    withdrawn.
25         13, Wexford's 13?
```

1          Again, if there's no agency.  Do you wish to
2    withdraw it?
3               MR. RUPCICH:  Withdraw it subject to us
4    working this out, yeah.
5               THE COURT:  Okay.  So then we're to voir
6    dire.
7          I'm going to take a showing of hands.  Who says
8    voir dire and who says voir dire?
9               MR. STROM:  Which one are we raising our
10   hand for first?
11              THE COURT:  Voir dire.
12         Voir dire?
13         Joe, you don't know?  Excuse me for calling you
14   by your first name.
15         Okay.  Plaintiff's proposed non-routine voir
16   dire.
17              MR. RUPCICH:  Judge, I have one additional
18   instruction that we submitted this morning that
19   was -- it tied into our bourbon instruction --
20              THE COURT:  Can you hand it to me?
21              MR. RUPCICH:  What's that?
22              THE COURT:  May I see it?
23              MR. RUPCICH:  It defined serious medical
24   need.  And I think since you refused our burden
25   instruction, it's part and parcel, but --

1          THE COURT:  So I show Wexford Defendant's

2    16 objected to?

3          MR. MARTIN:  I think so.  I don't think

4    we've looked at it.

5          THE COURT:  I'm going to let you look at it

6    and then I'll rule.

7          MR. MARTIN:  Yes, we object.

8          THE COURT:  Okay.  I will show Wexford 16

9    as refused.

10        It's all right, you can have it.  Diane is

11   printing it for me.  Thank you, Diane.

12        Then back to the voir dire.  So question 6, do

13   you have any objection to question 6 in the voir

14   dire?

15        MR. RUPCICH:  Yeah, I think that's vague

16   and I -- you know, it -- I don't know what it has to

17   do with the issues in the case.

18        THE COURT:  Mr. Martin?

19        MR. MARTIN:  Yeah, we think it's got a lot

20   to do with the issues in the case.  The

21   pre-judgments and prejudices and political views

22   that people may have with regard to universal

23   healthcare or healthcare for everyone, you know,

24   purvey this case because this is healthcare for a

25   convicted felon.  So if someone has an attitude or a

1    pre-disposition that healthcare should not be

2    provided to everyone, it would influence them in

3    their ability to serve as a fair juror and certainly

4    be probative of that.

5        So we think this is a very important question

6    to ask the jury, especially in the form that we give

7    it.

8            THE COURT:  I'm going to show the objection

9    overruled; I will ask the question.

10       Now, initially I had a question about number 8,

11   but we are now going to be including the cocaine

12   conviction, so that I will ask that question.

13       I initially had a question about number 18.  I

14   do usually ask that question about police Officers

15   in criminal cases.  Any objection to it,

16   Mr. Rupcich?

17           MR. RUPCICH:  I guess I don't object to

18   that.

19           THE COURT:  Okay.  I will ask it.

20       And we have -- any objection to Wexford's

21   proposed voir dire?

22           MR. MARTIN:  Give us one moment, Your

23   Honor.

24       So, Your Honor, we do have -- we do have an

25   objection with regard to numbers 9, 10, 11, and 12.

1    And maybe it's easiest to state what our objection

2    is.  It's really two issues with regard to each of

3    those questions.  One is he is diagnosed with kidney

4    cancer and that is only part of the diagnosis with

5    regard to our client.  If that were changed to

6    include the other elements of his diagnosis, that

7    would be an improvement and we may withdraw the

8    objection.

9         But the second part of the objection is it's

10   not probative only to ask, for example, has anyone

11   been diagnosed with or treated for kidney cancer.

12   The follow-up question would necessarily have to be

13   what do you know or understand about such diagnosis

14   and/or treatment or kidney cancer.

15        So that would be more probative information if

16   those are the questions.  Just saying have you --

17   you know, saying yes or no to those questions

18   doesn't get us anywhere in terms of helping us

19   select a jury and parse out prejudices.

20        So we do object to those four questions.  We

21   think they could be cured of our objections though.

22             THE COURT:  So this would be -- you would

23   agree that if kidney cancer or prostate cancer?

24             MR. MARTIN:  Kidney cancer.  Mr. Strom is

25   much better at explaining the full diagnosis, but

1    next week I will be as well.

2         MR. STROM:  Yes.  So kidney cancer, cancers

3    of the genitourinary tract, the -- yes, the

4    existence of a tumor thrombus, and then the fact of

5    metastasis.  And the metastasis--for the Court's

6    information--is to the liver, lungs, and lymph

7    nodes.

8         THE COURT:  Do me a favor, Mr. Strom.

9    Since I'm sure the Magistrate will not be able to

10   read what I just wrote down, will you please have

11   those questions, those four, 9, 10, 11, and 12,

12   rephrased with the follow-up that Mr. Martin stated.

13   What do you know or understands about such diagnoses

14   or treatment for the same.  All right?

15        MR. STROM:  Yes, Judge.

16        THE COURT:  Any objection to that,

17   Mr. Rupcich?

18        MR. RUPCICH:  Well, I don't have an

19   objection to lawyers asking follow-ups.  I mean my

20   intention with these is general categories of

21   information to elicit and then the lawyers can

22   follow-up.  So I don't know that we need to

23   specifically start with every -- because what

24   they're talking about is secondary problems from

25   kidney cancer.

1          THE COURT:  Okay.  They will submit

2     proposed 9, 10, 11, and 12.  You will then submit

3     your version which you wish to be asked.  I don't

4     want it to simply say kidney cancer.  Come up with

5     some encompassing phrase that would cover the other

6     cancers.

7          MR. RUPCICH:  But it is kidney cancer.

8     It's metastatic kidney cancer.

9          THE COURT:  Okay.  If that's what you want

10    to submit, submit that.

11         MR. RUPCICH:  Okay.

12         THE COURT:  So then I do have the

13    additional jury instructions that Mr. Rupcich

14    submitted.  We've refused Wexford 16.  And I believe

15    without having the original written and filed copy,

16    Wexford's amended number 6 was objected to and

17    refused.  Is that correct?

18         MR. RUPCICH:  Yes.

19         THE COURT:  So that takes care of jury

20    instructions.  It's 1:28.  Can I take care of

21    anything else before I begin my next hearing?

22         MR. PELZ:  Judge, we did have one thing

23    that we'd like to get the Court's guidance and

24    perhaps may need Court's permission and order.

25       One of the treating physicians, and I'm certain

1   I will not do a very good job pronouncing his last

2   name, but it's Dr. Perry, I believe it's

3   Guaglianone.  It's G-u-a-g-l-i-a-n-o-n-e.  He's a

4   treating oncologist.

5       We have served a trial subpoena on the doctor.

6   We have talked with his offices.  The doctor has

7   requested for us to see whether we could do it in

8   some way other than requiring his attendance here at

9   trial.

10      We would be prepared in advance of trial to

11  take essentially trial testimony deposition.  I

12  think substantially, it could be just verifying some

13  records and making sure those would be admissible.

14  As of right now, those records aren't all in.  And

15  certainly there's things we think -- some of the

16  things were on the undisputed facts but aren't on

17  the stipulation, so we may need to get his testimony

18  on some of those facts.

19      I don't think we think it would take real long.

20  But we'd be prepared to do that this week.

21  Essentially to take his trial testimony so that we

22  wouldn't have to bring him over to trial.

23      But I think we need your permission to do that.

24          THE COURT:  Yes.  Mr. Rupcich?

25          MR. RUPCICH:  I do have an objection to

1    that.  Dr. Guaglianone was not disclosed as an

2    expert by the plaintiff until October 28th of 2019,

3    which was after expert disclosures were closed,

4    after summary judgment was pending.

5        We received a supplement disclosure with a list

6    of opinions that they intend to elicit from him.  We

7    had no opportunity during discovery to have our

8    experts respond to these -- to testimony from

9    Dr. Guaglianone, to depose Dr. Guaglianone on any

10   opinions.  And to take his deposition and allow him

11   to give expert testimony a couple of days before

12   trial prevents us from the opportunity to respond to

13   such testimony when we had a period of expert

14   discovery within which to disclose this and the

15   plaintiff did not disclose Dr. Guaglianone or any of

16   his opinions.

17            THE COURT:  Are you willing to stipulate to

18   admission of his medical records?

19            MR. RUPCICH:  No.

20            THE COURT:  Your response?

21            MR. PELZ:  Well, I think I'm going to

22   address the first part of that.

23       I think Mr. Rupcich is conflating two different

24   things.  One is whether he would be an expert and

25   giving expert opinions, and one whether he can

1    testify as a fact witness with respect to his

2    treatment and conditions and what he observed and

3    what he did.

4        As to the -- as to that part, we didn't have --

5    there was no expert disclosure.  What we

6    disclosed -- let's be clear, both sides recognize

7    that he was a person with information that could be

8    used.  He was on the disclosures of the parties.  So

9    he was aware of it.

10       What came more recent was designation of

11   potential expert opinions.  But the defendants

12   themselves listed him as an expert.  And said he was

13   going to offer and he should be able to offer expert

14   opinions here at the trial.  So there's no

15   prejudice.  They did -- they listed him as an expert

16   taking -- giving expert opinions without having

17   deposed him.

18       He -- you know, we intend primarily, I think,

19   to focus on his treatment and fact issues and

20   getting his records into evidence, Judge.

21       If, during the course of that time, if we ask

22   some expert opinion, they can object to any expert

23   opinion question that we ask him, you can rule at

24   that time whether or not that expert opinion would

25   be allowed, and -- if you rule it's not allowed, we

1    excerpt it from the tape.  We don't play it.

2            THE COURT:  Okay.

3        Mr. Rupcich?

4            MR. RUPCICH:  I did not disclose Dr.

5    Guaglianone as an expert.  I didn't.  He's not in my

6    expert disclosure.

7            THE COURT:  Is he -- is he disclosed as a

8    witness?

9            MR. RUPCICH:  He was disclosed as a Rule

10   26A person with knowledge by us a couple years ago

11   but not as a 26(a)(2)(C) expert treating physician.

12   He disclosed as a fact witness by us.

13       Now, how you call an oncologist to give fact

14   testimony without giving Rule 702 expert testimony

15   I'm incredulous of, but my main concern is being

16   surprised with expert opinions because some of the

17   things they have disclosed in the expert disclosure

18   they did in late October, there was no reason to

19   delay Mr. Dean's cancer treatment.  Dr. Guaglianone

20   was not timely provided with lab results.

21       So it's clearly critical of our -- they're

22   intending to give critical testimony on our

23   defendants.  And it just wasn't timely disclosed and

24   it's prejudicial to the defendants at this stage.

25   There's nothing we can do three days before trial.

1          THE COURT:  Well, it's not three days

2     before trial.

3          The fact witness, obviously, he could be called

4     for that purpose.  He was disclosed by you.

5          I will allow the deposition.  And I will then

6     have to address if you ask questions about expert

7     opinions, I'll review the deposition and decide at

8     that time whether I'll allow the testimony, whether

9     that's going to be something which would be of

10    surprise to the defendants that would prejudice

11    them.

12         All right?

13         So we have a jury being picked downstairs and I

14    need to let my court reporter go for that reason.

15         Are we about done?

16              MR. MARTIN:  Okay.

17              THE COURT:  All right.  You can go ahead

18    and go.

19         (The following proceedings were transcribed

20         from an audio recording.)

21              THE COURT:  But if you wish to say

22    something, we're recording.  So go ahead.

23              MR. MARTIN:  Thank you, Your Honor.

24         The only other issue that's really on our list

25    to cover with the Court is just to give you a sense

1    of schedule.

2         THE COURT:  Hm-mm.

3         MR. MARTIN:  We're mindful of the notion --

4    we're mindful of the notion that it's December and

5    we're mindful of the notion that folks go on

6    vacations in December.  So in terms of our intent is

7    to move as quickly as can through the trial next

8    week and hopefully finish it by the end of the week.

9         In terms of -- there's a couple of issues that

10   I just want to address for you, Your Honor.  Some of

11   them -- we know that we'll be doing openings on

12   Monday.  We're gonna put Mr. Dean on the stand on

13   Monday after openings.  Then we will be calling a

14   number of the defendants adversely.

15        I understand that the defendants intend to put

16   those people on more than once.  In other words, I

17   understand they intend to, you know, do some

18   examination after our adverse examinations, but then

19   I understand they intend to recall them in their

20   case in chief.

21        That's -- you know, our perspective on that is

22   that's up to them, but it will cause us to move

23   through our case probably more quickly than we

24   otherwise would have expected at the -- at the

25   outset.

1        We are also advised by the plaintiffs that --

2    that their two experts -- defendants.  Sometimes

3    we're defendants too often when we say Plaintiffs

4    here.

5        We're advised that their two experts, as well

6    as the gentlemen by the name of Mr. Ritz and

7    Mr. Little, will not be here during next week at

8    all.  Although I suppose they could be.  Mr. Ritz,

9    we will play his deposition--well, read his

10   deposition because it's not videotaped--during our

11   case in chief to deliver our burdens.

12       But we expect the case to move quickly and we

13   would hope to use every trial day fully next week,

14   Your Honor.

15            THE COURT:  Okay.

16            MR. MARTIN:  For our schedule, for your

17   schedule, for the good of America.

18            THE COURT:  We appreciate that.

19            MR. MARTIN:  Thank you.

20            THE COURT:  Mr. Rupcich?

21            MR. RUPCICH:  I have scheduled by experts

22   for Monday.  One is coming from Seattle, one is

23   coming on Chicago.  It seemed, based on the calendar

24   we had, that was going to be the best way to work

25   it.

1        I'm certainly willing to be flexible on when

2   the defendants testify if we have a lull.  I do

3   reserve the right to recall them in my case.  You

4   know, depending on what happens, I may not, I might,

5   it just depends on what comes out.  But I certainly

6   don't plan to belabor this.

7             THE COURT:  Mr. Tyrell?

8             MR. TYRELL:  Our case in chief should be

9   pretty short, Your Honor.  We hope we can avoid

10  recalling any witness.

11            THE COURT:  Okay.

12        All right, thank you, counsel.  Court is

13  adjourned in this matter.

14            MR. STROM:  Your Honor, I'm sorry.

15            THE COURT:  Go ahead.

16            MR. STROM:  If I could ask one more

17  question.

18            THE COURT:  Go ahead.

19            MR. STROM:  This Court's order on summary

20  judgment motions made mention of plaintiff's

21  question about medical -- medicines that plaintiff

22  may need to take during the course of the day as

23  well as where plaintiff will be housed during the

24  course of the trial.

25        I was not certain whether he would be asked

1    to -- or whether, rather, the Sangamon County Jail

2    would be asked to house him so that he would be near

3    at hand or whether he would be returned to

4    Taylorville Correctional Center on a daily basis.

5        There -- I do not have an answer for the Court

6    today about whether there are time-sensitive

7    medications that must be taken between say the hours

8    of 7:00 a.m. and 6:00 p.m., but I do know that the

9    availability of those medications is heavily

10   dependent on whether he would be returning to

11   Taylorville each night.

12           THE COURT:  I assume, Kevin, you have no

13   idea --

14           COURT SECURITY OFFICER:  I can't answer

15   that technically.  Historically, I would assume he

16   would be transported back to Taylorville.

17           THE COURT:  I wonder, given his health

18   condition, whether that would be wise?

19           MR. STROM:  So, Your Honor, he has said

20   that given his health conditions, he highly prefers

21   to stay in Taylorville at night.  In part because he

22   has accommodations for his health, including his own

23   cell, because there's concern about other inmates

24   having contact with his bodily fluids.  And so

25   consequently, Taylorville has him set up for that

1    self-containment.

2            THE COURT:  Well, ordinarily, they do

3    return to Christian County.  But we will ask

4    Ms. Meadows to contact them and confirm that for

5    herself.  Okay?

6        Anything else?

7            MR. RUPCICH:  No, Your Honor.

8            THE COURT:  Court's adjourned.  Thank you,

9    counsel.

10       (Court was adjourned.)

11

12   I, KATHY J. SULLIVAN, CSR, RPR, CRR, Official Court

13   Reporter, certify that the foregoing is a correct

14   transcript from the record of proceedings in the

15   above-entitled matter.

16

17

18

19

20                This transcript contains the

21                digital signature of:

22

23                Kathy J. Sullivan, CSR, RPR, CRR

24                License #084-002768

25