E-FILED
Monday, 30 November, 2020  06:53:47 PM
Clerk, U.S. District Court, ILCD

# Exhibit E

Pages 1-23

PERRY GUAGLIANONE, M.D.                                December 04, 2019

Page 1

1                IN THE UNITED STATES DISTRICT COURT
               FOR THE CENTRAL DISTRICT OF ILLINOIS
2                      SPRINGFIELD DIVISION

3    WILLIAM KENT DEAN,                )
                                       )
4         Plaintiff,                   )
                                       )
5         -vs-                         )   No. 17-CV-3112
                                       )
6    WEXFORD HEALTH SERVICES,          )
     INC; DR. ABDUR NAWOOR; DR.        )
7    REBECCA EINWOHNER; NURSE          )
     KATHY GALVIN; and LISA MINCY,     )
8                                      )
          Defendants.                  )
9

10

11

12

13              THE DEPOSITION of PERRY P.
     GUAGLIANONE, M.D., the deponent herein, called by
14   the Plaintiff for examination pursuant to notice
     and pursuant to the provisions of the Code of Civil
15   Procedure and the Rules of the Supreme Court
     thereof pertaining to the taking of depositions,
16   taken before me, Jill A. Bleskey, CSR-RPR, License
     No. 084-004430, a Notary Public in and for the
17   State of Illinois, at Cancer Care Center of
     Decatur, 210 West McKinley Avenue, in the City of
18   Decatur, County of Macon, and State of Illinois on
     the 4th day of December, A.D., 2019, commencing at
19   5:44 p.m.

20

21

22   - - - - - - - - - - - - - - - - - - - - - - - - - - -

23                    Jill A. Bleskey, RPR
                        CSR #084-004430
24

PERRY GUAGLIANONE, M.D.                    December 04, 2019

                                                        Page 2
 1                      APPEARANCES

 2    For the Plaintiff:

 3        JENNER & BLOCK, LLP
          Attorneys at Law
 4        353 North Clark Street
          Chicago, Illinois 60654
 5        (312)222-9350
          wstrom@jenner.com
 6        BY:  Mr. William M. Strom

 7    For the Defendants, Wexford Health Sources, Inc.,
      Dr. Nawoor; Dr. Einwohner; and Nurse Galvin:
 8
          CASSIDY SCHADE, LLP
 9        Attorneys at Law
          111 North 6th Street, Suite 200
10        Springfield, Illinois 62701
          (217)572-1714
11        jrupcich@cassiday.com
          arice@cassiday.com
12        BY:  Mr. Joseph N. Rupcich
               Ms. Alexandra Rice
13
      For the Defendant, Lisa Mincy:
14
          OFFICE OF THE ATTORNEY GENERAL
15        Assistant Attorney General
          500 South Second Street
16        Springfield, Illinois 62701
          (217)785-4555
17        jtyrrell@atg.state.il.us
          BY:  Mr. Jeremy Tyrrell
18
      Videographer:
19
          Mr. Wayne Rutherford
20        Rutherford Photovideo
          515 West Eldorado
21        Decatur, Illinois 62522
          (217)877-1207
22


23


24


                    U.S. Legal Support, Inc.
                       (312) 236-8352

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 3

```
 1                     I N D E X

 2   EXAMINATION CONDUCTED                    PAGE

 3   Mr. Strom                                  4
     Mr. Rupcich                               71
 4   Mr. Tyrrell                               83
     Mr. Strom                                 84
 5   Mr. Rupcich                               90

 6                   E X H I B I T S

 7   Exhibit No.   Description                Page

 8   1   Medical Records Through 2017          17
     2   Medical Records Past 2017             19
 9   3   Dr. Guaglianone's Medical Records     20
     4   Taylorville Correctional Offender     45
10       Outpatient Progress Note

11   NOTE:  Exhibits attached to transcript

12

13

14

15

16

17

18

19

20

21

22

23

24
```

PERRY GUAGLIANONE, M.D.                    December 04, 2019

1              THE VIDEOGRAPHER:  We're on the

2    record.  My name is Wayne Rutherford, I'm the

3    Videographer.  The date is December 4th, 2019.  The

4    time is 5:44 p.m.  We are located at 210 West

5    McKinley, Decatur, Illinois, with reference to the

6    case Dean v. Wexford, et al., Number 17-CV-3122.

7    The name of the deponent is Dr. Perry Guaglianone.

8    With Counsel please identify themselves.

9              MR. STROM:  My name is William Strom

10   on behalf of the plaintiff, William Dean.

11             MR. RUPCICH:  Joseph Rupcich for

12   defendants Wexford, Nawoor, Einwohner, Galvin.

13             MR. TYRRELL:  And Jeremy Tyrrell,

14   Assistant Attorney General on behalf of Lisa Mincy.

15             THE VIDEOGRAPHER:  Will the Court

16   Reporter please swear in the witness.

17             PERRY P. GUAGLIANONE, M.D.,

18             The witness, having been first duly

19   sworn upon his oath, testified as follows:

20             EXAMINATION CONDUCTED

21             BY:  MR. STROM

22   Q.        Doctor, good evening.  My name's Bill

23   Strom and I represent William Kent Dean in the case

24   that has just been discussed by the Court Reporter.

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 5

```
 1    I'm a lawyer in Chicago and I was appointed by the
 2    court -- my firm was appointed by the court to
 3    represent Mr. Dean.
 4              Let's start off, please, if you could
 5    state your full name for the record and spell your
 6    last name.
 7         A.    It's Perry Guaglianone,
 8    G-U-A-G-L-I-A-N-O-N-E.
 9         Q.    And I apologize in advance if I
10    mispronounce your last name.
11         A.    That's okay.
12         Q.    It's Guaglianone?
13         A.    Right.
14         Q.    And what year were you born?
15         A.    1959.
16         Q.    Thank you.  And what city and state
17    do you call home?
18         A.    Decatur, Illinois.
19         Q.    And you're currently employed at the
20    Cancer Center -- excuse me.  You're currently
21    employed at the Cancer Care Specialists of
22    Illinois?
23         A.    Right.
24         Q.    And the business address for that
```

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 6

```
 1    business is 210 West McKinley Avenue, Decatur,

 2    Illinois?

 3          A.      Right.

 4          Q.      Okay.  Have you ever been deposed

 5    before?

 6          A.      Yeah.

 7          Q.      And so you understand that while

 8    you're being deposed this is as though you are

 9    giving deposition testimony -- or testimony before

10    a court?

11          A.      Yes.

12          Q.      In fact, I want you to know that your

13    testimony here we hope will be in lieu of a need

14    for you to appear live for testimony before the

15    court.  Do you understand that?

16          A.      Yes.

17          Q.      Okay.  Dr. Guaglianone, where did you

18    go to medical school?

19          A.      Medical College of Wisconsin in

20    Milwaukee.

21          Q.      And when did you graduate?

22          A.      1986.

23          Q.      And did you do an internship after

24    graduation?
```

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 7

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | Where did you do your internship? |
| 3 | A. | In Los Angeles at USC. |
| 4 | Q. | And what was the nature of that |

5    internship?

6       A.       Internal medicine.

7       Q.       And how long did it last?

8       A.       One year.

9       Q.       Following your internship, did you

10   complete a residency?

11      A.       Yes.

12      Q.       What was your residency in?

13      A.       Internal medicine.

14      Q.       And where did you complete your

15   internal medicine residency?

16      A.       Same place.

17      Q.       And how long did that residency last?

18      A.       Two additional years.

19      Q.       And upon completing your internal

20   medicine residency in Los Angeles, did you do any

21   additional residencies?

22      A.       I went on to fellowship after that.

23      Q.       And your fellowship, what was the

24   specialty of your fellowship?

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 8

1        A.        Medical oncology.  And then a second

2    one in hematology and oncology.

3        Q.        And did you do those sequentially?

4        A.        Yes.

5        Q.        So the first was in oncology?

6        A.        Correct.

7        Q.        And where was that fellowship in

8    oncology?

9        A.        It was also at USC, Los Angeles.

10        Q.        And how long did the fellowship last?

11        A.        Two years.

12        Q.        Upon completing that fellowship, can

13    you orient us in time, what year was that?

14        A.        So many years ago.  I think it was

15    1990 to 2002.  Wait.  19 -- I think it was January

16    of 1990 to January of 2002.

17        Q.        So is it accurate that that

18    fellowship was 12 years?

19        A.        Two years.

20        Q.        I'm sorry.  Okay.  So I just want to

21    make sure we're clear.  You said 1990 to 2002

22    but --

23        A.        It was January of '90 to January

24    of 2002 and then February of -- 1990 to 1992.

PERRY GUAGLIANONE, M.D.                                December 04, 2019

```
 1          Q.      Okay.
 2          A.      Sorry.  And then in February -- or
 3   March of 1992 through July of 1993 was the second
 4   one.
 5          Q.      And that was in hematology?
 6          A.      Hematology and oncology both.
 7          Q.      And besides medical school, do you
 8   have any other postgraduate education or training?
 9          A.      No.
10          Q.      Are you board certified in any area
11   of medicine?
12          A.      Yes.
13          Q.      What areas of medicine?
14          A.      In internal medicine and in
15   hematology and medical oncology.
16          Q.      When did you start working at the
17   Cancer Care Center of Illinois in Decatur?
18          A.      In July of 1999.
19          Q.      And what is the -- describe your
20   practice at the Cancer Care Center of Illinois for
21   us?
22          A.      Well, we see mostly cancer patients.
23   There's hematology patients, malignant and
24   non-malignant blood problems.
```

PERRY GUAGLIANONE, M.D.                        December 04, 2019

1          Q.       And so is your -- is the focus of

2     your practice in medical oncology?

3          A.       Medical oncology and hematology.

4          Q.       So you practice in both areas?

5          A.       Yes.

6          Q.       Approximately percentage wise, what

7     would you say the split is between those practices?

8          A.       It's probably two-thirds medical

9     oncology and one-third benign hematology.

10         Q.       Okay.  And has that been the case

11    since you began working at the Cancer Care Center

12    of Illinois?

13         A.       Yes.

14         Q.       Are you familiar with the making and

15    keeping of the medical records at the Cancer Care

16    Center here in Decatur?

17         A.       The making and keeping?  I make

18    notes.  I don't know what happens -- I mean, I make

19    my own notes, if that is what you mean.

20         Q.       So I'm specifically thinking about

21    the medical records that go into patient files such

22    as those that were received by the parties.  There

23    was a subpoena from defendants that you may have

24    knowledge about, there was additional request from

PERRY GUAGLIANONE, M.D.                        December 04, 2019

1   my law firm pursuant to a HIPPA release that you

2   may be aware of.  Those are the two stacks of

3   documents that I have here.  And the documents that

4   were produced in response to the subpoena and the

5   HIPPA request, those are the documents, the records

6   that I'm thinking of when I ask about your

7   familiarity with making and keeping medical

8   records.

9        A.      Yeah.

10       Q.      OOkay.  And those records are made

11  and kept as part of regularly conducted business

12  here at Cancer Care Center of Decatur?

13       A.      Yes.

14       Q.      And those records are made at or near

15  the time of the events that they reflect; is that

16  right?

17       A.      Yes.

18       Q.      And you said that you make notes.

19  Those notes go into those records?

20       A.      It's -- we have computer records, so

21  things go into the computer.

22       Q.      And when you said before that you

23  make notes, those notes are typed in?

24       A.      I dictate.

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 12

```
 1         Q.        And when you dictate, is it a
 2   dictation software?
 3         A.        No.  There's a transcriptionist.
 4         Q.        So the transcriptionist types in what
 5   you dictate when you have those notes to enter?
 6         A.        Yes.
 7         Q.        And that transcriptionist has a
 8   business duty, it's part of their job
 9   responsibilities to do that accurately and
10   correctly?
11         A.        They're employed here.
12         Q.        And one of the conditions of their
13   employment, or one of the expectations of their
14   employment is that they do so accurately, correct?
15         A.        Correct.
16         Q.        Okay.  And does anyone else ever make
17   notes in those records for a patient you are
18   treating in your role as a medical oncologist?
19         A.        There's a -- as we've gotten into the
20   computer system the notes are kind of a composite
21   of many different sources.  So I have my section
22   that I focus in on.  But part of the note has to do
23   with information that's put in by other doctors
24   that may be seeing a patient in town.  So there's
```

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 13

1   added diagnoses, added background that sometimes

2   ends up in the notes that I don't have any input

3   on.  But there's parts of my notes that I look at

4   but the notes are kind of a mosaic of different

5   sources.

6          Q.      And do you know, is that set of

7   different sources, does that include the systems

8   from the Taylorville Correctional Center in

9   Taylorville, Illinois?

10         A.      Anything from them would go in a

11  different section, not in my note.  But it would be

12  -- they scan those parts in.

13         Q.      So in what you're looking at, in the

14  medical records, the computerized medical records,

15  you may have access to scanned in documents?

16         A.      Correct.

17         Q.      Okay.  When there are portions of a

18  medical record that you did not write or dictate,

19  do you read those portions as a regular part of

20  your reviewing charts in care of a patient?

21         A.      Usually with a new patient I do.  But

22  with somebody I've known already I usually look at

23  my own notes, my own parts.

24                 MR. RUPCICH:  We -- just give him the

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 14

1    records.  I'm not going to challenge the

2    foundation, if you want to just give him the

3    records.

4                    MR. STROM:  Okay.

5                    THE WITNESS:  I brought all my

6    records.

7                    MR. RUPCICH:  I mean, is that fair?

8                    MR. STROM:  That works for me.

9                    BY:  MR. STROM

10       Q.        Dr. Guaglianone, I'm about to hand

11   you a double-sided stack -- double-side printed

12   stack of about 150 pages.  These pages have been

13   numbered by, I believe, one of the defendants in

14   this case, Pages 1 through 291.  Those pages were

15   not marked by your practice.  But these documents,

16   as I understand it, came as a result of a subpoena

17   from the defendant in that case.  So let me hand

18   you those pages first.  And what I would like you

19   to do is, with respect to those pages, take a quick

20   look, take a -- the look that you need to feel

21   satisfied that what's there is in fact reflective

22   of medical records that are kept in the ordinary

23   practice at your medical practice.

24       A.        Yes.

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 15

```
 1      Q.        Do you recognize these specific
 2  records?
 3      A.        Yes.
 4      Q.        And are these records medical records
 5  for William Kent Dean from your practice at the
 6  Cancer Care Center of Decatur?
 7      A.        Yes.
 8      Q.        How do you know?
 9      A.        My name is on them.
10      Q.        Is there anything else that you
11  recognize about them specifically?
12      A.        They seem to be in the format of
13  records that I'm familiar with, so...
14              MR. RUPCICH:  Can I see them?
15              THE WITNESS:  Some of them from are
16  from Springfield too in the back.
17              MR. STROM:  Okay.
18              THE WITNESS:  That's part of the
19  scanned in records.
20              BY:  MR. STROM
21      Q.        And when you say some of them are
22  from Springfield, is that from the Cancer Care
23  Specialists of Illinois in Springfield?
24      A.        No.  He was hospitalized in
```

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 16

1   Springfield with -- for the surgery back in 2009

2   when all this began.

3                    MR. STROM:  Right.

4                    MR. RUPCICH:  I'll stipulate they're

5   Mr. Dean's records from Cancer Care Specialists.

6                    MR. STROM:  Okay.

7                    BY:  MR. STROM

8        Q.        And these -- Dr. Guaglianone, these

9   are some of the records whose making and keeping

10  that we were talking about in general terms, these

11  are some of those kinds of records; is that right?

12       A.        Yes.

13       Q.        Okay.  I'm going to hand you next a

14  larger stack of -- this is approximately 350 pages

15  of double-side prints.  If you would take a look at

16  those, please.  And the first question I'll ask you

17  is what do these records appear to be?

18       A.        Seem to be more recent records that

19  happened after those.  I think those were 2017,

20  2016.  This goes to 2019.

21       Q.        And before I ask you a further

22  question, I'd like to ask the Court Reporter please

23  to mark the pages that you've just referred to as

24  running only through 2017 --

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 17

1      A.      Don't hold me to that, I just took a
2  quick glance at that.
3      Q.      Right.  Only for identification, only
4  through 2017 as Exhibit 1, please.
5              (At which time, Guaglianone
6  Deposition Exhibit Number 1 was marked for
7  identification, and the following proceedings were
8  conducted;)
9              THE WITNESS:  This might be
10 duplicative too.  This is records going back to
11 2017 also.
12             BY:  MR. STROM
13     Q.      And on the first page, the very cover
14 of that stack, there's a cover letter, isn't there?
15     A.      Yes.
16     Q.      What's the date on that cover letter?
17     A.      July 17th, 2019.
18     Q.      And who's the sender of that letter?
19     A.      Chloe Holt.
20     Q.      And where is Chloe Holt -- where does
21 it say that Chloe Holt is employed?
22     A.      I assume it's Jenner and Block.
23     Q.      Okay.  That wasn't a very artful
24 question.  Where does it say, according to the --

1  according to the letterhead, that Ms. Holt is

2  employed?

3       A.      It says Jenner and Block.

4       Q.      Thank you.  So do these also appear

5  to be the kind of records that we were talking

6  about in more general terms that are kept in the

7  ordinary course of your practice?

8       A.      Yes.

9       Q.      Okay.  And that includes both the

10 records that you would give via dictation and would

11 be entered into the computer system?

12      A.      Yes.

13      Q.      And anything that might be scanned in

14 that would become a part of that record?

15      A.      Yes.

16      Q.      And how do you know that with respect

17 to that pile of documents?

18      A.      I see my recent notes.

19              MR. RUPCICH:  Can we go off the

20 record for one second?

21              MR. STROM:  Sure.

22              THE VIDEOGRAPHER:  Off the record,

23 six o'clock.

24              (At this point in the proceedings, an

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 19

1    off the record discussion was held, after which the

2    following proceedings were conducted;)

3                    THE VIDEOGRAPHER:  On the record,

4    6:02.

5                    MR. STROM:  Thank you.  So Mr.

6    Rupcich, would you like to make a record of what we

7    discussed while we were off the record?

8                    MR. RUPCICH:  Yes.  I will agree that

9    the records that he's been shown and he said are

10   Cancer Care Specialist's records are indeed those

11   records.  And we can dispense with additional

12   evidentiary foundation on them and ask him -- if

13   you have questions about the substance, I'll waive

14   further foundation.

15                   MR. STROM:  Okay.  Madam Court

16   Reporter, can we please mark this stack that Dr.

17   Guaglianone has just been talking about as Exhibit

18   Number 2, please.

19                   (At which time, Guaglianone

20   Deposition Exhibit Number 2 was marked for

21   identification, and the following proceedings were

22   conducted;)

23                   BY:  MR. STROM

24        Q.        And then Dr. Guaglianone, excuse me.

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 20

1              MR. STROM:  I'm going to ask, please,

2    to have this smaller group of documents marked as

3    Deposition Exhibit Number 3.

4              (At which time, Guaglianone

5    Deposition Exhibit Number 3 was marked for

6    identification, and the following proceedings were

7    conducted;)

8              MR. STROM:  And Mr. Rupcich and Mr.

9    Tyrrell, I have given you copies of this smaller

10   stack that's also got the binder clip on it.  I'm

11   going to hand that to the doctor.

12             BY:  MR. STROM

13        Q.      Dr. Guaglianone, I've handed to you

14   what's been marked as Exhibit 3.  And Exhibit 3 is

15   a much smaller stack of documents.  In this stack,

16   do you recognize some of these as excerpts from the

17   medical records for your patient William Dean?

18        A.      Yes.

19        Q.      And I'll let you take a moment to

20   look through those to confirm that those all

21   pertain to Mr. Dean's records.

22        A.      Yes, they do.  The back pages I'm not

23   really sure.

24             BY:  MR. STROM

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 21

1       Q.       When you say the back pages, could

2    you direct me, please, to the first page that you

3    see in sequence that appears not to come from your

4    records?

5       A.       It's Page 117.  They're not in

6    sequence, they're not numbered either.  It's this

7    one, I think.

8       Q.       I see.  So this is the page that has

9    been previously marked with Bates IDOC Taylorville

10   Med Recs 001477.  And so the documents in that

11   packet that come before that page, those are from

12   the records kept at the Cancer Care Center of

13   Decatur?

14      A.       Yes.

15      Q.       Do you see any that come after that

16   page that are from the Cancer Care Center of

17   Decatur?

18      A.       No.  I think all this is from the --

19   from Taylorville.

20      Q.       Okay.

21               MR. RUPCICH:  So they go to what

22   page?

23               MR. STROM:  So in Exhibit 3, I can

24   tell you that 37 or 38 pages in is IDOC Taylorville

PERRY GUAGLIANONE, M.D.                    December 04, 2019

Page 22

1    Med Recs 001477 and it's dated 11-1-16.  It's an

2    offender out-patient progress note.

3              MR. RUPCICH:  All right.  Well, now I

4    am confused 'cause I thought you were using what

5    you had taken out of his records but there's a

6    bunch of records that aren't in his records within

7    this.

8              MR. STROM:  We can separate those

9    into two different exhibits, if you'd like to.

10             MR. RUPCICH:  I think that would be

11   wise.

12             MR. STROM:  Okay.  So let's take

13   Exhibit 3 -- Exhibit 3 will end with what has been

14   marked with Bates Cancer Care Specialists Med Recs,

15   000156 as the final page.

16             BY:  MR. STROM

17        Q.       Dr. Guaglianone, when I talk about

18   William Kent Dean, do you know who I'm talking

19   about?

20        A.       Yes.

21        Q.       Do you have a picture in your mind's

22   eye of who this man is?

23        A.       Yes.

24        Q.       Who is Mr. Dean, what does he look