**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

CYNTHIA S. DEAN, *Independent Executor of
the Estate of William Kent Dean*,

        Plaintiff,

   v.

WEXFORD HEALTH SOURCES, INC., *et al.*,

        Defendants.

Case No. 17-CV-3112

Judge James E. Shadid

Magistrate Judge Jonathan E. Hawley

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
<u>MOTION FOR A NEW TRIAL ON DAMAGES PURSUANT TO RULE 59</u>**

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

  I.   The Court Erred by Requiring Plaintiff to Re-Prove Proximate Causation. ................................... 2

  II.  Additional Evidentiary Errors Prejudiced Plaintiff And Resulted In An Unfair Trial. ................... 9

     A.  The Court Erred By Limiting Plaintiff From Presenting Evidence Concerning Mr. Dean's Condition And Treatment Before December 23, 2015. ............................................................. 9

     B.  The Court Erred By Permitting Defendants To Present Evidence Tending To Challenge The Established Liability Findings. .............................................................................................. 12

     C.  The Court Erred By Refusing To Allow Dr. Metwalli to Rebut Dr. DeCastro's Testimony. . 14

     D.  The Court Erred By Permitting Defendants To Present Dr. Einwohner By Video Deposition Because She Was Not Unavailable. ...................................................................................... 15

     E.  The Court Erred By Permitting Prejudicial Questioning Regarding Plaintiff's Wrongful Death Lawsuit And Did Not Provide A Sufficient Curative Instruction Concerning The Same. ....... 16

  III.  The Court Erred By *Sua Sponte* Removing "Disability" As A Category of Damages. ................. 17

  IV.  The Damages Award Was Grossly Inadequate And Contrary To the Prior Jury's Findings. ......... 18

  V.  The Cumulative Effect of the Errors Described Above Warrants a New Trial. ........................... 20

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliotta v. Nat'l R.R. Passenger Corp.*,
   315 F.3d 756 (7th Cir. 2003) ................................................................17

*Barber v. City of Chicago*,
   725 F.3d 702 (7th Cir. 2013) ........................................................... 2, 20

*Bradley v. Vill. of Univ. Park, Ill.*,
   59 F.4th 887 (7th Cir. 2023) ............................................................. 4, 5

*Burton v. E.I. du Pont de Nemours & Co., Inc.*,
   994 F.3d 791 (7th Cir. 2021) ...................................................... 2, 9, 10

*Cannon v. Armstrong Containers Inc.*,
   92 F.4th 688 (7th Cir. 2024) .................................................................. 4

*Cerabio LLC v. Wright Med. Tech., Inc.*,
   410 F.3d 981 (7th Cir. 2005) ............................................................... 12

*Cook v. IPC Int'l Corp.*,
   673 F.3d 625 (7th Cir. 2012) ................................................................. 2

*Dean v. Wexford Health Sources, Inc.*,
   18 F.4th 214 (7th Cir. 2021) .................................................................. 1

*Garcia-Martinez v. City & Cnty. of Denver*,
   392 F.3d 1187 (10th Cir. 2004) .......................................................... 16

*Gardner v. Vogel*,
   237 F. Supp. 119 (E.D. Pa. 1964) ...................................................... 18

*Grede v. FCStone, LLC*,
   867 F.3d 767 (7th Cir. 2017) ................................................................. 6

*Guzman v. City of Chi.*,
   689 F.3d 740 (7th Cir. 2012) ...................................................... 5, 8, 13

*Happel v. Walmart Stores, Inc.*,
   602 F.3d 820 (7th Cir. 2010) ........................................................... 8, 18

*Interstate Restoration, LLC v. Marriott Int'l, Inc.*,
   2023 WL 7162917 (D. Colo. Oct. 31, 2023) ..................................... 15

*Kmec v. Port Authority Trans Hudson Corp.*,
   818 F. Supp. 2d 553 (E.D.N.Y. 2011) ............................................... 18

*Parish v. City of Elkhart, Ind.*,
  702 F.3d 997 (7th Cir. 2012) ............................................................................................ 2

*Ruiz-Cortez v. City of Chicago*,
  931 F.3d 592 (7th Cir. 2019) ............................................................................................. 2

*Shick v. Illinois Dep't of Hum. Servs.*,
  307 F.3d 605 (7th Cir. 2002) ...........................................................................................18

*Thomas v. Stalter*,
  20 F.3d 298 (7th Cir. 1994) .............................................................................................18

*U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*,
  852 F.2d 313 (7th Cir. 1988) ...........................................................................................17

*United States v. Adams*,
  746 F.3d 734 (7th Cir. 2014) ............................................................................................. 4

*United States v. Polland*,
  56 F.3d 776 (7th Cir. 1995) ............................................................................................... 4

*United States v. Schweihs*,
  971 F.2d 1302 (7th Cir. 1992) ........................................................................................... 6

**Statutes**

740 ILCS 180/1 .................................................................................................................. 17

**Rules**

Fed. R. Civ. P. 32 ......................................................................................................... 15, 16

Fed. R. Civ. P. 59 ........................................................................................................... 1, 2

Plaintiff Cynthia S. Dean, as independent executor of the estate of William Kent Dean, moves for a new trial pursuant to Federal Rule of Civil Procedure 59 based on the following errors: (1) the Court's requirement that Plaintiff re-prove proximate causation; (2) the Court's admission of improper evidence and exclusion of proper evidence with regard to liability and damages; (3) the Court's failure to submit disability to the jury as a category of damages it could award; and (4) the jury's grossly inadequate verdict that was contrary to the prior jury's findings. As a result of these errors, individually and cumulatively, Plaintiff was unduly prejudiced and was not provided a fair trial.

## BACKGROUND

In December 2019, following a trial before the Honorable Sue E. Myerscough (the "2019 Trial"), a jury found Defendants Abdur Nawoor, Rebecca Einowhner, and Wexford Health Sources, Inc. (collectively, "Defendants") liable for negligence and Eighth Amendment violations in connection with their deficient diagnosis and treatment of Mr. Dean's kidney cancer. On appeal, Defendants challenged the Eighth Amendment verdicts, but did not challenge the negligence verdicts. The Seventh Circuit reversed the judgment on the Eighth Amendment claims, upheld the jury's findings of negligence liability, and remanded for a new trial for the purpose of re-determining the amount of damages that should be awarded for Mr. Dean's negligence claims. *See* Dkt. 273; *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 244 (7th Cir. 2021) ("Although we leave the negligence verdicts intact, a second jury must decide compensatory damages anew.").

A jury trial on Mr. Dean's damages commenced before this Court on August 12, 2024 (the "2024 Trial"). *See* 8/12/24 Minute Entry. On August 20, 2024, the jury awarded damages in the amount of $155,100. Dkt. 404. For the time period prior to and including the first trial, the jury awarded $45,000 for physical pain and suffering, and $68,250 for mental and emotional pain and

suffering. Dkt. 404. For the time period after the first trial and until Mr. Dean's death, the jury awarded $41,850 for mental and emotional pain and suffering. Dkt. 404. The jury awarded $0 for loss of normal life for either time period, and $0 for diminished life expectancy and medical expenses for the second time period. Dkt. 404. This Court entered judgment on the verdict on August 22, 2024. Dkt. 410.

## ARGUMENT

Under Federal Rule of Civil Procedure 59, the Court may grant a motion for a new trial "for 'any reason' recognized by federal law." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 602 (7th Cir. 2019) (quoting Fed. R. Civ. P. 59(a)(1)(A)). A new trial is warranted when "the trial was not fair to the moving party." *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (internal citations omitted). A new trial is required when, for example, "evidentiary errors had 'a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice,'" *id.* (internal citations omitted), or when "[t]he [jury] instructions [or] verdict form were unsound," *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 629 (7th Cir. 2012). An "astoundingly low" damages award may also warrant a new trial. *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 999 (7th Cir. 2012). And "[w]here there are several errors, each of which is harmless in its own right, a new trial may still be granted if the cumulative effect of those otherwise harmless errors deprives a litigant of a fair trial." *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013) (internal citations omitted).

As demonstrated below, significant legal errors occurred prior to and during trial, which substantially prejudiced Plaintiff and undoubtedly influenced the jury's award.

## I. <u>The Court Erred by Requiring Plaintiff to Re-Prove Proximate Causation.</u>

As noted above, the Seventh Circuit "vacate[d] the judgment on the negligence-based claims and remand[ed] for a new trial on those claims ***limited to the issue of damages***." Dkt. 273

at 91 (emphasis added). On remand, this Court stated that it would "draw a line that the parties could follow in presenting the issues of damages to the jury." Dkt. 363 at 4; *see also* Dkt. 412 at 12:14–15. The Court ultimately did not maintain a clear or consistent line in that regard, allowed Defendants to present substantial amounts of prejudicial and confusing evidence that had no purpose other than to re-litigate or undermine the established liability finding against them, and improperly required Plaintiff to re-establish proximate causation.

Initially, on May 19, 2023, the Court stated that "Defendants [would be] barred from presenting evidence or argument whose only purpose would be to attack the Court's prior determination that Plaintiff ha[d] proven each element for negligence liability," including proximate cause, and indicated that it would "instruct the jury that the Court ha[d] already determined that Plaintiff ha[d] proved all these elements." Dkt. 331 at 9. The Court, however, went on to state that Defendants would be permitted to argue, "as they did at the first trial, that Mr. Dean's aggressive form of cancer was eventually going to claim his life, and that his damages should therefore be limited because Defendants did not cause all of Mr. Dean's damages." *Id.* at 10.

On April 4, 2024, the Court changed course, and decided that for the period of time from the end of the first trial (December 17, 2019) through Mr. Dean's death (April 3, 2022), "the parties [could] argue that specific occurrences were or were not proximately caused by Defendants' negligence." Dkt. 363 at 4–5; *see also* Dkt. 412 at 19:19–20:3 ("And in the second [time period], you'll have to convince the[ jury] that the[ damages were] also proximately caused [by] the negligence."). On the fifth day of trial, the Court stated that it was "not quite sure whether that[ decision was] correct now, in hindsight," a sentiment which the Court repeated up through closing arguments. Dkt. 420 at 557:2–5; Dkt. 422 at 914:5–13, 915:1–10. Nevertheless, the Court

instructed the jury that, for the first time period, "the previous jury determined that Defendants' negligence was a proximate cause of Plaintiff's damages," and that "[t]hose findings [were] conclusively established" and were "not subject to reconsideration," while for the second time period, the Court instructed the jury that it "must consider whether Defendants' negligence was a proximate cause of Mr. Dean's damages." Dkt. 409 at 22. The verdict form provided to the jury likewise included similar instructions and asked the jury to award compensatory damages for each time period separately. *See* Dkt. 404.

Requiring Plaintiff to re-prove proximate cause after it had been established by the jury at the prior trial was clear legal error, as was permitting Defendants to argue that Mr. Dean's cancer would have inevitably killed him anyways. As Plaintiff previously argued in her Motion for Summary Judgment and Motion in Limine to Exclude Evidence or Argument that Defendants Did Not Cause Mr. Dean's Cancer-Related Damages, *see* Dkts. 299, 317, any inquiry into proximate cause was contrary to the established law of the case and exceeded the scope of the Seventh Circuit's remand.

The law of the case doctrine provides that "a ruling made at one stage of a lawsuit will be adhered to throughout the suit," *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024), while the mandate rule "requires a lower court to adhere to the commands of a higher court on remand," *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). "When a party explicitly waives an issue, that waiver shapes the law of the case and the scope of any remand" such that a waived issue is "simply not part of a remanded case." *Bradley v. Vill. of Univ. Park, Ill.*, 59 F.4th 887, 896 (7th Cir. 2023). In other words, "the law of the case doctrine precludes a defendant from raising an argument not raised during his first appeal." *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014).

During the 2019 Trial, Defendants repeatedly argued to the Court and to the jury that causation could not be established for any damages Mr. Dean would suffer following that trial. *See* Dkt. 203 at 1223–24, 1241–42, 1338–39; Dkt. 253 at 8–9. Specifically, Defendants argued that Mr. Dean's cancer was "a nasty fella" that "was going to take [his] life no matter what." Dkt. 203 at 1338–39. Both Judge Myerscough and the jury rejected these arguments, finding that there was sufficient evidence to support a finding of causation for both pre- and post-trial damages. Dkt. 203 at 1223–24, 1241–42; Dkt. 253 at 8–9; Dkt. 180 at 1–3. Defendants did not challenge the jury's negligence findings on appeal, nor did they challenge the jury's award of future damages or Judge Myerscough's rulings related to causation for Mr. Dean's damages, including future damages, such as medical expenses. Defendants' failure to appeal those issues "created an implicit limit on scope of [the] remand." *Bradley*, 59 F.4th at 902.

By requiring Plaintiff to re-prove proximate causation for post-trial damages and allowing Defendants to again argue that Mr. Dean would have died regardless of Defendants' negligence, this Court failed to adhere to the scope of the remand and the law of the case. *See Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012) ("The purpose of a damages-only trial is to determine the amount of damages, not the defendants' liability.").

As an initial matter, the Court's rulings directly and improperly permitted Defendants to "get[] a second bite at the [causation] apple." *Grede v. FCStone, LLC*, 867 F.3d 767, 775 (7th Cir. 2017). By allowing Defendants to argue, "as they did at the first trial, that Mr. Dean's aggressive form of cancer was eventually going to claim his life," Dkt. 331 at 10, the Court improperly permitted Defendants to dispute both that Mr. Dean was injured and that their negligence was a proximate cause of his injury. The jury at the 2019 Trial was specifically instructed on these elements of negligence and its liability verdict demonstrates that the jury decided against

5

Defendants and in Mr. Dean's favor at the 2019 Trial. Dkt. 182 at 32; Dkt. 180 at 1; *see also United States v. Schweihs*, 971 F.2d 1302, 1321 (7th Cir. 1992) ("We generally assume that the jury followed the jury instructions."). Moreover, these issues were never challenged by Defendants on appeal and the liability verdict, which necessarily includes the jury's findings on these elements, was upheld by the Seventh Circuit.

It was likewise error for the Court to allow the testimony of Defendants' expert, Dr. DeCastro, to stand after Dr. DeCastro testified that his assignment in this case and opinions related solely to the issue of causation and not damages. Dkt. 420 at 546:14–16, 553:5–7, 631:8–17. Although Dr. DeCastro's testimony should not have been allowed at all because it was inappropriate for Defendants to be permitted to challenge causation or argue that there was no causation because Mr. Dean's cancer was metastatic when he presented with symptoms in December 2015—an opinion for which there is *zero evidence*—and that his cancer therefore would have killed him anyway, Dr. DeCastro's testimony was improper even under the Court's bifurcated time period framework (which, as discussed above, was erroneous as it required Plaintiff to re-establish causation for the time period following the 2019 Trial) because he opined on causation with respect to the first (pre-2019 Trial) time period. Indeed, Dr. DeCastro admitted that he and Defendants had not followed the Court's instructions with regard to causation when formulating his opinions, stating that he "d[id not] know" and "d[id not] have an understanding" that "causation ha[d] been conclusively established for all damages pre-December 17th, 2019." Dkt. 420 at 631:18–632:4.

Among other things, Dr. DeCastro opined that a sternotomy and a Chevron incision would have been necessary as of April 2016, when Mr. Dean received his first post-symptom CT scan and cancer diagnosis. Dkt. 420 at 584:13–585:15, 591:19–592:11, 600:14–602:2, 602:9–604:14.

6

This opinion relates solely to the first time period and to matters for which causation had been established. Critically, Dr. DeCastro also opined that Mr. Dean had metastatic disease as of December 2015 and was thus "always destined to receive the systemic treatments for metastatic disease." Dkt. 420 at 607:22–608:1, 610:10–612:13, 620:25–621:10. While this opinion potentially relates in part to the time period following the first trial, it also covers a significant amount of time (more than two years) *before* the first trial, as Mr. Dean first began systemic cancer treatments in November 2016. Dkt. 419 295:13–24. These opinions not only should have been precluded under the law of the case doctrine and as violative of the scope of the mandate, they also should have been precluded under the framework set forth in the Court's April 4, 2024 Order. Yet, Dr. DeCastro was permitted to present his opinions over Plaintiff's objections and, it was further error for the Court to refuse the curative instruction Plaintiff proffered to attempt to rectify some of the prejudice caused by Dr. DeCastro's testimony as to causation. Dkt. 420 at 554:13–561:13; Dkt. 422 at 911:8–915:17.

Allowing this type of testimony on causation and liability[1] was destined to confuse the jury. *See Guzman*, 689 F.3d at 747 (holding that "put[ting] liability in issue . . . likely confused the jury by converting this damages-only trial into one about liability"). So, too, was the bifurcated framework that split the case into two distinct time periods and improperly required Plaintiff to re-establish causation for the second (post-2019 Trial) time period. Indeed, the jury's verdict—which awarded damages for post-2019 Trial mental and emotional pain and suffering but $0 for physical pain and suffering or any other category of damages, including almost $1 million in medical expenses that was not disputed by any other evidence in the case, for that time period—clearly

---

[1] Many additional examples of the Court's improper admission of evidence tending to challenge liability are discussed in Section II(B), *infra*.

shows that it **was** confused as to proximate cause. *See Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 827–28 (7th Cir. 2010) (reversing denial of motion for new trial where plaintiffs "were prejudiced by the use of a verdict form that may have resulted in a lower damage award").

Equally prejudicial in and of itself was that the Court significantly changed its rulings with respect to the scope and admissibility of causation and liability evidence several times before trial and then, during trial, inconsistently restricted and allowed such evidence. As noted above, the Court initially stated it would "ensure that Defendants d[id] not wrongfully reinject the issue of negligence liability—specifically causation—into the proceedings," Dkt. 331 at 6, and in its April 4, 2024 Order, the Court elaborated that, at least for the pre-2019 Trial time period, the parties would "be restricted to re-presenting the evidence from the first trial," Dkt. 363 at 4. But, by the time of the August 6, 2024 pre-trial conference just a week before trial, the Court had reversed course, and now declined to exclude evidence that "might be a clear contest or denial of liability," Dkt. 413 at 40:6–11. The Court also indicated that it would, contrary to its prior ruling, allow Defendants to introduce new testimony including irrelevant testimony about liability and the pre-2019 Trial time period. Dkt 413 at 39:6–15; Dkt. 423 at 16:22–17:5; 24:16–25:15. At trial, however, despite opening the floodgates to substantial amounts of improper evidence challenging liability and causation evidence at trial (such as Dr. DeCastro's and Dr. Ritz's testimony and Defendants' designations of Dr. Nawoor's, Dr. Einwohner's, Dr. Severino's, and Dr. Racenstein's testimony), the Court restricted Plaintiff from retrying its liability case (which Plaintiff was not fully prepared to do in any event given the Court's prior rulings that Defendants would not be permitted to challenge liability) or from introducing important contrary testimony (for example testimony from Dr. Metwalli and Dr. Kosierowski) because it related to liability. Dkt. 419 at 500:15–17; Dkt. 421 at 692:7–693:5; 865:17–878:3. These shifting parameters created a moving

target and prejudiced Plaintiff's ability to prepare for trial and present her case. *See Burton*, 994 F.3d at 814–15 (reversing denial of motion for new trial where district "court's last-minute, legally incorrect ruling left [the parties] scrambling to adapt to . . . newly enlarged theory of liability" and "deprived the[m] of the opportunity to build an appropriate" case). Indeed, if the Court had indicated at the outset of the remand proceedings that it was going to permit evidence amounting to "a clear contest or denial of liability," or even that it was going to require Plaintiff to re-prove proximate causation, Plaintiff likely would have made different strategic decisions with respect to the type of discovery she sought—both fact and expert—as well as the witnesses she called to testify and the other evidence she offered at trial.

In fairness to the Court, drawing the line on liability and causation testimony was surely not an easy task, but this issue could have and would have been avoided altogether had the Court appropriately precluded Defendants from challenging proximate causation and liability, as Plaintiff requested in her summary judgment motion. The above-discussed errors violated the law of the case and the scope of the Seventh Circuit's mandate, and permitted the introduction of evidence that undoubtedly confused the jury and impacted its damages award to Plaintiff.

## II. <u>Additional Evidentiary Errors Prejudiced Plaintiff And Resulted In An Unfair Trial.</u>

A new trial is warranted "if . . . evidentiary errors had a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Burton*, 994 F.3d at 812. Here, the Court made at least five such errors that individually and cumulatively warrant a new trial, as described below.

### A. The Court Erred By Limiting Plaintiff From Presenting Evidence Concerning Mr. Dean's Condition And Treatment Before December 23, 2015.

The Court improperly denied Plaintiff's request to introduce certain designated excerpts of Dr. Kosierowski's testimony from the 2019 Trial and sustained Defendants' objections to a line of

questioning during Plaintiff's direct examination of Dr. Metwalli that would have established that, had Defendants properly monitored Mr. Dean for his recurrent kidney stones and other issues, Defendants would have in all likelihood caught Mr. Dean's cancer before he presented symptomatically with gross hematuria on December 23, 2015. *See, e.g.*, Dkt. 419 at 500:15–17; Dkt. 421 at 692:7–693:5; 865:17–878:3. These rulings were prejudicial to Plaintiff given that the proffered testimony from Dr. Kosierowski and the testimony from Dr. Metwalli would have (1) been highly relevant to damages and would have directly contradicted Defendants' argument that Mr. Dean's damages should be limited because his cancer was metastatic as of December 23, 2015, (2) showed that Mr. Dean's cancer could have and should have been caught at a time when Mr. Dean's cancer could have been cured or would have needed minimal intervention and limited or no systemic therapies, and (3) rebutted Defendants' argument that December 23, 2015 was "time zero" for damages, which the Court freely allowed Defendants to inject into the damages retrial. *See* Dkt. 401-1.

At trial, Defendants contended that Plaintiff's damages should be limited to December 23, 2015 (Defendants' "time zero") through Mr. Dean's death on April 3, 2022, and repeatedly objected to any evidence or testimony that related to matters before December 23, 2015 despite themselves introducing testimony about the pre-December 2015 time period, including in Dr. DeCastro's and Dr. Einwohner's examinations. For example, during the direct examination of Plaintiff's expert, Dr. Metwalli, Defendants objected to a line of questioning that would have established that, had Defendants properly monitored Mr. Dean for his recurrent kidney stones and other issues, Defendants would have in all likelihood caught Mr. Dean's cancer before he presented symptomatically with gross hematuria on December 23, 2015. According to Defendants, these opinions were "undisclosed" and "outside the scope of this case" and its applicable timeframe.

Dkt. 419 at 493:12–494:2. Not only are those representations inaccurate,[2] this case has never been limited to the time period from December 23, 2015 onwards.

Indeed, Defendants' own experts at the first trial, Dr. Kosierowski and Dr. Racenstein, both expressly raised the issue of Defendants' negligence in terms of monitoring Mr. Dean's kidney issues in the years leading up to his presentation with gross hematuria on December 23, 2015. Dr. Racenstein testified at length about prior scans in connection with Defendants' treatment of Mr. Dean's recurrent kidney issues, including a CT scan performed in August 2014, which showed "abnormality with regard to the right kidney" (the same one Mr. Dean eventually developed cancer in), and a CT scan performed on July 3, 2015, which showed a mass on Mr. Dean's right kidney that "correspond[ed] with exactly the same area" as the mass subsequently identified in the February 2016 renal ultrasound. Dkt. 202 at 1085:2–8, 1100:15–1101:4. Dr. Kosierowski stated that "renal cell cancer . . . doesn't pop up over night. It's not a disease that comes on quickly. It's a disease that's there for a while. That's why, in my heart, I knew that if we reviewed all the past imaging studies [i.e., scans that pre-dated December 23, 2015], that this cancer was there but missed." Dkt. 202 at 937:13–18. This testimony shows that Defendants should have detected Mr. Dean's cancer prior to December 23, 2015, but missed it because they were not properly paying attention to the warning signs in the past imaging studies. As such, this testimony would have directly rebutted Defendants' "time zero" theory and their argument that their actions made no difference in the course of Mr. Dean's disease because his cancer was purportedly metastatic as of

---

[2] Dr. Metwalli's opinion that Defendants should have detected Mr. Dean's cancer prior to December 23, 2015 was explicitly disclosed in his original September 6, 2019 report issued prior to the first trial. There, Dr. Metwalli discussed "imaging performed in about a year before his first complaints of bloody urine on December 23, 2015" and stated, "if [a] tumor was there in the previous [i.e., meaning prior to December 23, 2015] imaging studies and missed, then defendants failed in their duty to detect and treat Mr. Dean's cancer at an earlier date than originally thought. Moreover, I would expect a patient with Mr. Dean's history of kidney stones, as detailed in his medical records, to have had multiple imaging studies done over the years, which would reveal more about the nature of his prison physicians' negligence." Dkt. 395 at 3.

December 23, 2015 when he first presented with gross hematuria. The Court's limitation of this evidence was improper and inconsistent with the negligence verdict, which did not in any way restrict Defendants' liability in this case to December 23, 2015 forward. *See Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (finding district court's "bright line exclusion" of evidence pre-dating a specific time "created an arbitrary barrier to evidence that [the party] should have been permitted to present at trial").

Contrary to Defendants' suggestion, Plaintiff's complaint did ***not*** limit this case to December 23, 2015. While the complaint obviously mentions the December 23, 2015 date because that is the date on which Mr. Dean presented symptomatically, there is nothing in the complaint that suggests that Defendants' negligence was limited to only things occurring after this period or that Plaintiff intended to so limit her claim. Nor would such a limitation on timeframe make logical sense. To the contrary, the complaint makes clear that Plaintiff alleged that "Mr. Dean's cancer could have, and should have, been detected long before it advanced to this stage." Dkt. 72 ¶ 2.[3] Both Dr. Metwalli and Dr. DeCastro in their respective reports—and Dr. DeCastro in his trial testimony—make clear that there is no medical evidence suggesting that December 23, 2015 is "time zero." The Court allowed Defendants to make such an assertion but limited Plaintiff's opportunity to fully and fairly rebut this argument, including through Dr. Metwalli's and Dr. Kosierowski's testimony. Dkt. 421 at 698:9–23.

### B.   The Court Erred By Permitting Defendants To Present Evidence Tending To Challenge The Established Liability Findings.

As this Court has explained, "[i]n a trial for damages, a court commits reversable error by allowing the defense to 'attempt to inject into the trial evidence and arguments tending to disclaim

---

[3] Moreover, it would be unreasonable to require that the complaint specifically mention the pre-2015 scans and treatment regarding Mr. Dean's kidney issues because evidence regarding that time period was largely not produced to Plaintiff until the eve of the 2019 Trial.

their liability.'" Dkt. 331 at 9 (quoting *Guzman v. City of Chi.*, 689 F.3d 740, 746 (7th Cir. 2012)). Contrary to that statement, however, the Court ultimately permitted Defendants to introduce hours of testimony rebutting their liability. This evidence should have been excluded because (1) it was not relevant to Plaintiff's damages, (2) it went directly against the Court's prior rulings, and (3) it improperly allowed Defendants to relitigate the negligence findings made by the prior jury.

The jury at the 2019 Trial was properly instructed that, in order to reach a verdict for Plaintiff on the negligence claims against Defendants, it needed to find that Plaintiff had proven that Defendants: (1) "acted or failed to act in one of the ways claimed by Plaintiff and that in so acting, or failing to act, Defendant was professionally negligent," (2) "Plaintiff was injured," and (3) "Defendant's professional negligence was a proximate cause of the injury to Plaintiff." Dkt. 182 at 32. The jury found for Plaintiff on the negligence claims, *see* Dkt. 180 at 1, and, as this Court previously noted, "Defendants did not challenge any aspect of the jury's negligence determinations on appeal," Dkt. 363 at 3. Given the prior jury's negligence findings, Defendants should not have been allowed to introduce testimony that tended to rebut those negligence findings or in any way call into question the scope of Defendants' liability or the propriety of their actions whatsoever.

Yet, Defendants continuously were permitted to present evidence and argument intended to cast doubt on—and, indeed, to rebut—the previous jury's finding on Defendants' negligence. For example, despite acknowledging that "most all of" Defendants' examination of Dr. Einwohner would "accomplish nothing toward establishing damages," Dkt. 423 at 16:23–25, the Court allowed Defendants to introduce over an hour of testimony from Dr. Einwohner, who indeed said nothing about damages but instead read through her medical records in an obvious effort to defend

her assessment and treatment of Mr. Dean. Dkt. 421 at 80:21–23; 845:2–855:1[4]. Defendants elicited similar testimony from Dr. Nawoor. *See e.g.,* Dkt. 419 at 303:20–305:17. The Court also improperly permitted Defendants to call Dr. Ritz, a Wexford executive with no personal involvement with Mr. Dean's care and no knowledge about his damages, to defend Wexford's collegial review process, which the prior jury found caused delays in Mr. Dean's diagnosis and treatment. Dkt. 421 at 740:20–25. Defendants also were allowed to introduce testimony from Dr. Severino, who made excuses for the various delays in Mr. Dean's care, such as that the egregious delay in getting Mr. Dean to surgery months after he was diagnosed was just an unavoidable result of physicians' busy schedules. Dkt. 421 at 862:22–23[5]; *see also* Dkt. 416 at 57–8. Although the Court had previously recognized "there may not be a lot of relevance" to this testimony, the Court allowed it anyway. Dkt. 423 at 25:2–3. None of this testimony was relevant in any way to damages and it was unfairly prejudicial to Plaintiff and confusing to the jury, inviting it to reconsider or, at a minimum, question the scope or extent of the prior jury's liability finding. The Court should not have allowed this testimony from Dr. Einwohner, Dr. Nawoor, Dr. Ritz, and Dr. Severino.

### C. The Court Erred By Refusing To Allow Dr. Metwalli to Rebut Dr. DeCastro's Testimony.

The Court improperly limited Plaintiff's ability to fully and fairly rebut Dr. DeCastro's testimony on the ground that Plaintiff was aware of Dr. DeCastro's opinions and had had an opportunity to ask "rebuttal questions while [Dr. Metwalli was] on . . . direct examination." Dkt. 421 at 677:19-20. However, it was prejudicial to require Plaintiff to preemptively address Dr. DeCastro's opinions on Dr. Metwalli's direct examination when Dr. DeCastro's testimony had not been completed. Moreover, Dr. DeCastro's report included six opinions, yet he presented these

---

[4] Designated testimony to be filed on the docket.
[5] Designated testimony to be filed on the docket.

opinions to the jury in a combined and altered manner that included only four opinions in different language. Plaintiff should have been afforded an opportunity to address Dr. DeCastro's opinions in the form and manner in which they were introduced at trial, even if those opinions were ultimately not beyond the scope of his report.

> D.    **The Court Erred By Permitting Defendants To Present Dr. Einwohner By Video Deposition Because She Was Not Unavailable.**

After the Court granted Plaintiff leave to take her deposition prior to the 2024 Trial, Defendants (without leave of Court) conducted their own lengthy direct examination of Dr. Einwohner during that deposition. The Court then permitted Defendants to present that videotaped examination of Dr. Einwohner at trial, which was contrary to the Court's prior ruling that Defendants would "be restricted to re-presenting the evidence from the first trial" and that Dr. Einwohner's deposition "address only matters subsequent to the jury verdict entered 12/17/2019" (which Defendants' examination of Dr. Einwohner clearly did not do). Dkt. 363 at 4, 9. Although Dr. Einwohner testified in person at the 2019 Trial, Defendants did not elicit any testimony from her in support of their case at that time.

As a general matter, a "party's own deposition is not admissible as substantive evidence when the deponent has testified at trial." *Interstate Restoration, LLC v. Marriott Int'l, Inc.*, 2023 WL 7162917, at *5 (D. Colo. Oct. 31, 2023). Defendants claimed that Dr. Einwohner was unavailable for the 2024 Trial because she resides outside the Court's 100-mile subpoena range. However, while Fed. R. Civ. P. 32(a)(4) generally permits the use of depositions in court proceedings for witnesses who cannot be subpoenaed because they are more than 100 miles away, such testimony is expressly prohibited where, as here, "the witness's absence was procured by the party offering the deposition." A party who willfully absents themselves from trial on the basis of being outside the Court's subpoena range can properly be considered to have "procured his own

absence." *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) (rejecting use of deposition because party residing abroad had "procured his own absence" by declining to return to the United States for trial). Dr. Einwohner's residence has not changed since the 2019 Trial and, thus, she clearly procured her own absence by refusing to appear at the 2024 Trial.

Dr. Einwohner also did not meet the standard for demonstrating she has any "illness" that prevented her from travelling to Peoria to testify and the Court did not make any findings in that regard prior to allowing Defendants to introduce her testimony by deposition. Fed. R. Civ. P. 32(a)(4)(C). Although Dr. Einwohner submitted a note from her therapist stating that she suffers from anxiety, her therapist is not a medical doctor who is capable of making a medical diagnosis or providing a medical opinion that her anxiety prevents her from testifying. Moreover, Dr. Einwohner's excuse was clearly belied by the fact that she allegedly had anxiety since "August 1998" yet she testified at the 2019 Trial and never previously disclosed this condition as an alleged impediment to testifying. Dkt. 340. For these reasons, and those set forth in Plaintiff's Motion in Limine, Dkt. 387, Defendants did not show that Dr. Einwohner met the standard for unavailability under Rule 32(a)(4) and should not have been permitted to present her testimony via video deposition at trial.

    **E.**    **The Court Erred By Permitting Prejudicial Questioning Regarding Plaintiff's Wrongful Death Lawsuit And Did Not Provide A Sufficient Curative Instruction Concerning The Same.**

The Court improperly allowed Defendants to question Plaintiff regarding her separate wrongful death action and "separate request for damages there." Dkt. 418 at 218:12–16. Reference to Plaintiff's separate lawsuit was highly improper and prejudicially increased the likelihood of confusion on the jury about the kinds of damages it could and should award in this case.

The Court stated that it would issue a curative instruction to "fix" any issues created by

Defendants' questioning, Dkt. 418 at 218:12–16, and ultimately gave the following instruction:

> You heard testimony about Mrs. Dean's injuries related to Mr. Dean's death, and that she has filed a separate lawsuit seeking to recover damages for those injuries. The only issue for you to decide here is the amount of damages, if any, Mr. Dean himself suffered as a result of Defendants' established negligence in diagnosing and treating his cancer. You must not consider the injuries Mrs. Dean or any other person may have experienced as a result of Defendants' negligence. Those matters are not part of this trial. Only Mr. Dean's damages are at issue.

Dkt. 409 at 23. The curative instruction was prejudicial because it did not properly state the law regarding Plaintiff's right as Mr. Dean's surviving spouse to pursue a wrongful death claims under 740 ILCS 180/1 and did not adequately inform the jury of the mechanism by which Mr. Dean would recover his own damages in the lawsuit (*i.e.*, through Plaintiff acting as the executor of his estate). As a result of Defendants' questioning and this instruction, there was a high likelihood that the jury would have been confused as to who could recover what damages (if any) and through which lawsuit. Instructions to the jury must contain correct legal statements that convey the relevant legal principles **in full**. *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003). Here, however, the jury did not receive fulsome instructions, which prejudiced Plaintiff and undoubtedly influenced the jury's damages award.

## III.    The Court Erred By *Sua Sponte* Removing "Disability" As A Category of Damages.

A court's failure to "submit all material issues to the jury" constitutes an abuse of discretion that, where prejudicial, requires a new trial. *U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 318 (7th Cir. 1988). Here, the Court erred by altering the parties' proposed verdict forms to remove disability as a category of damages, thereby declining, without basis, to submit this category of damages to the jury. Neither party requested this change be made, and it was prejudicial to Plaintiff.

At the 2019 Trial, Mr. Dean was awarded $100,000 for past and future disability/loss of normal life/diminished life expectancy. Dkt. 180. At the 2024 Trial, the jury was not given the

opportunity to award damages for disability, and awarded $0 for loss of normal life and diminished life expectancy. Dkt. 404. The jury reasonably could have concluded that Mr. Dean's anxiety, blood clots, and months of uncontrolled metastatic disease was disabling while he was incarcerated; likewise, it could have concluded that the effect of his cancer and the side effects he suffered from his treatments was disabling in the time period after he was released from prison. Precluding the jury from considering and awarding damages for disability suffered by Mr. Dean was prejudicial and warrants a new trial. *See Happel,* 602 F.3d at 827–28 (reversing denial of motion for new trial where plaintiffs "were prejudiced by the use of a verdict form that may have resulted in a lower damage award").

## IV.    The Damages Award Was Grossly Inadequate And Contrary To the Prior Jury's Findings.

A new trial should be granted when the damages are insufficient and inconsistent with substantial justice. *Shick v. Illinois Dep't of Hum. Servs.*, 307 F.3d 605, 611 (7th Cir. 2002). Here, the jury's verdict was grossly inadequate and clearly demonstrates mistake and/or misconception of the law or evidence on the part of the jury, such that Plaintiff's damages should be tried anew. *See, e.g., Thomas v. Stalter*, 20 F.3d 298, 303 (7th Cir. 1994) (holding that a jury award of zero damages was irreconcilable with its finding of liability); *Kmec v. Port Authority Trans Hudson Corp.*, 818 F. Supp. 2d 553 (E.D.N.Y. 2011) ($25,000 award for future pain and suffering shocked the judicial conscience and constituted a denial of justice); *Gardner v. Vogel*, 237 F. Supp. 119 (E.D. Pa. 1964) ($2,200 award warranted new trial on damages when evidence showed medical expenses in excess of $2,800).

As evidenced by the prior jury's findings, Plaintiff clearly established that Mr. Dean sustained damages as a result of Defendant's negligence and that Defendants' negligence proximately caused Mr. Dean's physical and emotional pain, past and future disability and loss of

normal life, and future medical expenses. *See* Dkt. 180. As noted throughout, these findings were not challenged by Defendants on appeal and were unaltered by the Seventh Circuit's mandate.

The 2024 jury was tasked only with determining a reasonable computation of damages. Given the prior jury's verdict, Plaintiff was entitled to recover compensatory damages for the loss of normal life, disability, and reasonable and necessary medical care and supplies. Yet, the 2024 jury awarded $0 for loss of physical pain and suffering post-2019, normal life, diminished life expectancy, and medical expenses—all categories of damages that the prior jury determined, and the Seventh Circuit affirmed, were proximately caused by Defendants' negligence. *See Naiditch*, 512 N.E.2d at 1040; *see also* Dkt. 404. The 2024 jury did not necessarily have to agree with the amounts awarded by the 2019 jury, but the 2019 verdict that Plaintiff was entitled to at least ***some*** compensation for these damages categories was, in fact, binding on the 2024 jury. If the 2024 jury had properly adhered to the liability findings from the first trial, it simply could not have awarded $0 in any of these categories.

These $0 awards not only contradict the findings of the 2019 jury, but they are also contrary to the manifest weight of the evidence. Plaintiff submitted invoices amounting to over $900,000 for medical care and supplies, as well as substantial testimony regarding the physical pain and suffering Mr. Dean endured following his release from prison, the significant loss of normal life he suffered as a result of Defendants' negligence, and the severe disability he was left with from the time of his release until his death. Moreover, as Plaintiff's expert Dr. Metwalli testified, Mr. Dean's life expectancy was no doubt cut short due to the delays of Defendants—the very delays that led to the liability finding in the first instance. All of this evidence was undisputed.

The fact that the 2024 jury awarded damages for emotional pain and suffering for the post-2019 Trial period, but no damages for physical pain and suffering, medical expenses, loss of

normal life, or diminished life expectancy is an internal contradiction that shows that it either disregarded the 2019 jury's liability findings or did not adequately understand the scope of liability that was found at the prior trial or what, if anything, it was charged with determining with respect to proximate causation. Either way, the verdict is not consistent with the 2019 verdict which established Plaintiff's entitlement to some compensation for the categories of damages identified in the verdict.

**V.**     **The Cumulative Effect of the Errors Described Above Warrants a New Trial.**

Even were this Court to determine that each of the errors described above were substantially harmless, a new trial is nevertheless warranted on the grounds that the cumulative effect of these errors deprived Plaintiff of a fair trial. *See Barber*, 725 F.3d at 715. Taken together, these errors improperly converted what was intended to be a damages-only retrial into a full contest of liability, which prejudiced Plaintiff because she was not permitted to put on the full scope of evidence that was introduced at the first trial and was limited in introducing evidence relevant to liability which rebutted Defendants' arguments.

**CONCLUSION**

For the reasons set out above, Plaintiff respectfully requests that this Court grant her motion for a new trial on damages.

Dated: September 17, 2024

Respectfully Submitted,

*/s/ Skyler J. Silvertrust*
Craig C. Martin
Skyler J. Silvertrust
Jeremy H. Salinger
Chloe E. Holt
Elizabeth P. Astrup
Kennon R. Wales
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle St., Suite 5000
Chicago, IL 60654
(312) 728-9000
cmartin@willkie.com
ssilvertrust@willkie.com
jsalinger@willkie.com
cholt@willkie.com
eastrup@willkie.com
kwales@willkie.com

Joel T. Pelz
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
jpelz@jenner.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 17, 2024, the foregoing **Plaintiff's Memorandum in Support of Her Motion for a New Trial Pursuant to Rule 59** was filed and served on all counsel of record via the CM/ECF system.

*/s/ Skyler J. Silvertrust*
Skyler J. Silvertrust
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle St., Suite 5000
Chicago, IL 60654
(312) 728-9000
ssilvertrust@willkie.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(4)(b)(1)</u>

I hereby certify that the foregoing **Plaintiff's Memorandum in Support of Her Motion for a New Trial Pursuant to Rule 59** contains 6,758 words, and thus complies with Local Rule 7.1(B)(4)(b)(1)'s requirement that a memorandum in support a motion does not contain more than 7000 words.

*/s/ Skyler J. Silvertrust*
Skyler J. Silvertrust
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle St., Suite 5000
Chicago, IL 60654
(312) 728-9000
ssilvertrust@willkie.com